1  Tina Wolfson, SBN 174806
   twolfson@ahdootwolfson.com
2  **AHDOOT & WOLFSON, PC**
3  1016 Palm Avenue
   West Hollywood, California 90069
4  Tel: 310-474-9111; Fax: 310-474-8585

5  Nick Suciu III (*Pro Hac Vice* Application Forthcoming)     Jonathan Shub, SBN 237708
   nicksuciu@bmslawyers.com                                     jshub@seegerweiss.com
6  **BARBAT, MANSOUR & SUCIU PLLC**                             **SEEGER WEISS, LLP**
7  434 West Alexandrine #101                                   1515 Market Street
   Detroit, Michigan 48201                                      Philadelphia, Pennsylvania 19102
8  Tel: (313) 303-3472                                          Tel: (215) 564-1300; Fax: (215) 851-8092

9  Counsel for Plaintiff,
   MARTIN MEE

10

11                      **UNITED STATES DISTRICT COURT**

12                      **NORTHERN DISTRICT OF CALIFORNIA**

13                              **San Francisco Division**

14
   MARTIN MEE, individually and on behalf of all          Case No.
15 others similarly situated,
                                                          **CLASS ACTION COMPLAINT**
16                             Plaintiff,
                                                          JURY TRIAL DEMANDED
17          v.
                                                          **1. Violations of California Consumers Legal**
18 I A NUTRITION, INC., a Connecticut corporation,        **Remedies Act, Cal. Civ. Code § 1750, *et seq.***
19                             Defendant.                 **2. Violations of California False Advertising**
                                                          **Law, Cal. Bus. & Prof. Code § 17500, *et seq.***
20
                                                          **3. Violation of California Unfair Competition**
21                                                        **Law, Cal. Bus. & Prof. Code § 17200, *et seq.***
22
                                                          **4. Unjust Enrichment**
23
                                                          **5. Breach of Express Warranty**
24

25

26

27

28

                              CLASS ACTION COMPLAINT

Plaintiff Martin Mee ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by his undersigned attorneys, upon personal knowledge as to himself, upon information and belief, and based upon the investigation of his Counsel as to the remaining allegations, alleges as follows:

**INTRODUCTION**

1.      This is a civil class action brought individually by Plaintiff and on behalf of all persons and entities in the United States and the state of California ("Class Members"), who purchased the dietary supplements Inner Armour Mass Peak Whey Hydrolysate Enhanced and Nitro Peak Whey Hydrolysate Enhanced (the "Products") manufactured by Defendant I A Nutrition, Inc. ("Defendant").

2.      The whey protein industry is a growing and extremely competitive business environment.  The market for protein products "is expected to grow by 62% to reach US$7.8 billion in 2018."  *See* http://www.euromonitor.com/sports-nutrition-in-the-us/report (last visited Nov. 10, 2014).

3.      However, the price of wholesale whey protein keeps increasing and is usually purchased for roughly $15-$18/kilo, making the profit margins on whey protein powder products very low.

4.      Defendant designed, manufactured, warranted, advertised, and sold the Products throughout the United States, including in the state of California.

5.      In an effort to reduce protein-manufacturing costs, Defendant adds cheaper free form amino acids and non-protein ingredients to increase the nitrogen content of the Products' protein powder.  Nitrogen is the "tag" used by a common protein content test to determine the amount of protein in a product; but this is neither a direct measure of the actual protein content in a product nor a measure of the type of nitrogen containing compounds in a product.

6.      The act of adding non-protein ingredients to fake a higher protein content through a higher nitrogen content is commonly referred to as "protein-spiking", "nitrogen-spiking" or "amino-spiking."   Such "spiking" was at the center in the 2007 pet food scandal, which lead to domestic recalls of pet foods, and the 2008 Chinese milk powder scandal, when melamine, a nitrogen-rich chemical, was added to raw materials to fake high protein contents.

CLASS ACTION COMPLAINT

7.     As a result of Defendant's practices, the consumer is left with products that contain less whey protein than Defendant represented.

8.     This practice has been condemned by the American Herbal Products Association (AHPA), an organization of dietary supplement manufacturers, which has issued a standard for manufacturers for measuring the True Protein content of their products which:

a)     Defines protein as "a chain of amino acids connected by peptide bonds" for labeling purposes;

b)     The use of calculations to include only proteins that are "chains of amino acids connected by peptide bonds; and

c)     To exclude any "non-protein nitrogen-containing substances" when counting total protein content.

*See* www.ahpa.org/Default.aspx?tabid=441 (last visited Nov. 10, 2014).

9.     General Nutrition Centers ("GNC"), one of the largest distributors in the United States of whey protein products, has publicly criticized protein spiking, claiming it to be misleading to consumers.  According to GNC, consumers cannot be sure that they are getting 100 percent protein in their products because companies don't always show how they figure total grams of protein per serving. www.gnclivewell.com/realprotein.

10.     Despite the knowledge that "protein-spiking" is misleading to consumers, Defendant continues to advertise, distribute, label, manufacture, market, and sell the Product in a misleading and deceptive manner in order to increase its sales and maximize its profits.

## PARTIES

11.     During the Class period commencing four years before the date of this filing, class members in California and throughout the United States purchased the Products through the Vitamin Shoppe  and numerous other brick and mortar and online retail stores.  Plaintiff and class members suffered an injury in fact caused by the false,  fraudulent, unfair, deceptive and misleading practices set forth in this Complaint.

12.     Plaintiff Martin Mee is a resident of the City of San Francisco, California, and purchased the Products from the Vitamin Shoppe located at 1430 Van Ness Ave, San Francisco, CA 94109 for his own use during the four years preceding the filing of this complaint.

13.     Defendant I A Nutrition, Inc. is incorporated in the State of Connecticut, with a principal place of business address at 83 White Oak Drive, Berlin, Connecticut 06037.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed class members exceed $5,000,000[1] and because Defendant is a citizen of a different state from the members of the Classes.

15.     This Court has personal jurisdiction over Defendant because it regularly conducts business in this District.

16.     Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

17.     Intradistrict Assignment: Pursuant to Civil Local Rules 3-2(c) a substantial part of the events or omissions which give rise to the claims occurred in San Francisco County, and it is therefore appropriate to assign this action to the San Francisco Division.

## FACTUAL ALLEGATIONS

### The Differences Between Whey Protein & Free Form Amino Acids

18.     Whey is a complete protein source, which means it contains all the essential amino acids the human body needs to build protein-based compounds such as muscle tissue, skin, fingernails, hair and enzymes. Daily protein needs depend on one's size, gender and activity levels, although they likely amount to somewhere between 46 grams and 56 grams. For elite athletes, daily protein requirements are well over 100 grams, a need that is difficult to fulfill with simply ingesting food. Others may also need to supplement their protein intake for reasons of ill-health.

---

[1] Defendant's Products are sold through numerous different online and brick/mortar retailers, including GNC, Vitamin Shoppe, and Bodybuilding.com.  There are likely tens of thousands of class members composing the proposed classes with tens of millions of dollars spent on the Products due to the far reaching distribution channels and high consumer demand for whey protein products.

CLASS ACTION COMPLAINT

19.     Whey protein powder is especially rich in branched-chain amino acids -- leucine, isoleucine and valine -- which are metabolized directly within the muscles as opposed to being processed in the liver first.

20.     The 2005 dietary reference intake (DRI) guidance from the National Academy of Sciences clearly defines protein as macromolecules with links of amino acids, and does not mention free-form amino acids or creatine.  Although amino acids are the building blocks of protein, they do not have the same beneficial effects of whole protein when they are free-form, and not part of an actual protein partly because of the way protein is digested and absorbed by the body.  Several studies have shown that protein is absorbed more effectively than free-form amino acids.[2]

21.     Accordingly, at least one study was conducted to determine whether the effects of whey protein ingestion on muscle protein accrual are due solely to its constituent essential amino acid content. The study was a comparison of three trial groups. The first provided intact whey protein (whey protein powder). The other two trials provided either the individual essential amino acids (i.e. free-form) or the individual non-essential amino acids found in whey.  The researchers determined that whey protein ingestion improves skeletal muscle protein accrual through mechanisms that are beyond those attributed to its essential amino acid content.[3]

22.     Yet another study found that "the lack of recovery after immobilization-induced atrophy during ageing is due to an 'anabolic resistance' of protein synthesis to amino acids during rehabilitation."  The study's results "highlight a novel approach to induce muscle mass recovery following atrophy in the elderly by giving soluble milk protein or high protein diets."[4]

23.     Thus, one review study the authors concluded that, "the bound form of an EAA [essential amino acid] may be more efficiently utilized than when delivered in its free-form."[5]

---

[2] *See, e.g.*, Di Pasquale MG. Amino Acids and Proteins for the Athlete: The Anabolic Edge, Second Edition.  Boca Raton, FL: CRC Press; 2008:190.

[3] Katsanos C, *et al*. Whey protein ingestion in elderly results in greater muscle protein accrual than ingestion of its constituent essential amino acid content. Nutr. Res. Oct. 2008; 28(10):651-658.

[4] Magne H, *et al*. Contrarily to whey and high protein diets, dietary free leucine supplementation cannot reverse the lack of recovery of muscle mass after prolonged immobilization during ageing. J. Physiol. Apr 15, 2012; 590(Pt 8): 2035-2049.

[5] Terada T, Inui K. Peptide transporters: structure, function, regulation and application for drug delivery. Curr Drug Metab. 2004;5:85-94.

4

**Defendant's Misleading Labeling of Mass-Peak Whey Hydrolysate Enhanced**

24.     Defendant prominently features "whey protein", the name of the ingredient sought by millions of American consumers, in the very name of the product, "Mass Peak Whey Hydrolysate Enhanced":



25.     Defendant represents the product to contain 66 grams of protein on the front of the label but reveals on the back of the label, in the Supplement Facts section that it contains 50 grams of protein:

CLASS ACTION COMPLAINT

### MASS-PEAK™ by Inner Armour®

**Suggested use:** As a dietary supplement, mix 4 scoops with 14-16 oz of water or milk depending on your desired consistency.  Use approximately 3.5-4oz of liquid for each scoop of **MASS-PEAK™.**  Additional servings may be used to meet your daily calorie and nutritional requirements.

| Supplement Facts | | | | |
|---|---|---|---|---|
| Serving Size: 4 Scoops (174g) | | | Servings Per Container: approximately 23 | |
| Amount Per Serving | | % Daily Value | | % Daily Value |
| | with Water | | with 2 cups Whole Milk** | |
| Calories | 680 | | 980 | |
| Calories from Fat | 120 | | 260 | |
| Total Fat | 13 g | 20%** | 29 g | 45%** |
| Saturated Fat | 0 g | 0%** | 9 g | 45%** |
| Trans Fat | 0 g | | 0 g | |
| Cholesterol | 0 mg | 0%** | 50 mg | 17%** |
| Calcium | 232 mg | 23%** | 783 mg | 78%** |
| Sodium | 450 mg | 19%** | 660 mg | 28%** |
| Potassium | 810 mg | 23%** | 1450 mg | 41%** |
| Total Carbohydrate | 98 g | 33%** | 121 g | 40%** |
| Dietary Fiber | 6 g | 24%** | 6 g | 24%** |
| Sugars | 9 g | † | 33 g | † |
| Protein | 50 g | 100%** | 66 g | 132%** |

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

**MASS-PEAK™ #1 Rated Weight Gainer'**

**Carbo MASS™:** Branched and Linear Chain Carbohydrate Restoration Complex (containing alpha-(1,4) linked Glucose Polymers), Carbo-Peak™ Glucose and Glycogen Spiking Complex [containing Amylase (Hydrolytic Carbohydrate Maximizing Enzyme Complex)], Glucose Transport and Lean Tissue Support Complex (containing Chromium Picolinate and Cinnulin-PF® (Aqueous Cinnamon Extract) (Bark)).

**ProNitro 7™:** Grade A Full Spectrum Bioactive Whey Protein Complex (containing Whey Protein Concentrate, Whey Protein Isolate and Hydrolyzed Whey Protein Isolates with naturally occurring critical bioactive compounds including di, tri and oligo peptides, beta-lactoglobulin, alpha-lactalbumin, serum albumin, and immunoglobulins), Glycine, Taurine, BCAAs (Leucine, Isoleucine, Valine), Micellar Casein Phosphoprotein Complex (containing Alpha, Beta and Kappa Casein), Milk Protein Isolate (containing 80% Casein and 20% Whey protein fractions), Amino-Peak™ Amino Acid Spiking Polypeptide Complex [containing Peptidase (Proteolytic Protein Maximizing Enzyme Complex)].

**Omega 3-MCT™:** Safflower (naturally containing CLA (conjugated linoleic acid), Flax Seed Powder [containing omega 3 (alpha-linolenic acid (ALA)), omega 6 (linoleic acid (LA)), omega 9 (oleic acid (OA)) and lignans], MCT's (Medium Chain Triglycerides).

Other Ingredients: Cocoa, Natural and Artificial Flavors, Xanthan gum, Salt, Silicon Dioxide, Sucralose® and Acesulfame Potassium.

†Daily value not established.
'as glutamic acid

**2 servings with whole milk provides 132,000mg of Amino Acids including:  24g Glutamine'; 25g BCAAs (Leucine, Isoleucine and Valine).

26.     However, Defendant's claimed total protein count of 50 grams of protein per serving, in the product, is not exclusively derived from whey proteins but also includes, for the purposes of "protein-spiking": several free form amino acids,  including Alanine, Trytophan, L-Glycine, and Taurine.

27.     Once these "protein spiking" agents are removed from the formula of analysis, and the "bound" amino acid count is determined, the true content of whey protein in the product can be determined.

28.     After scientific testing of the Product,  the actual total content per serving of whey protein is approximately 18.986 grams  (as  calculated  from  the  total  bonded  amino  acids)  as opposed  to  50  grams  of protein claimed by Defendant for their "Whey Protein" product.  *See* Exhibit A.

29.     The representations that the Product contains the 66 grams of protein advertised on the front of the package, or the 50 grams disclosed in the "Supplement Facts" on the back of the label, is

material and false and/or likely to mislead a reasonable consumer when, in fact, it contains no more that 19 grams of whey protein.

**Defendant's Misleading Labeling of Nitro Peak Whey Hydrolysate Enhanced**

30.     Defendant prominently features "whey protein", the name of the ingredient sought by millions of American consumers, in the very name of the product, "Nitro Peak Whey Hydrolysate Enhanced":



31.     Defendant represents the product to contain 48 grams of protein on the front of the label, but reveals that it contains 24 grams of protein per scoop on the "Supplement Facts" section on the back of the label:

7

## NITRO-PEAK™ by Inner Armour®

**Directions:** As a dietary supplement, mix 1 scoop with 5-6 oz of water or milk depending on your desired consistency. Use approximately 5-6 oz of liquid for each scoop of **NITRO-PEAK**™.  Additional servings may be used to meet your daily protein requirements.

| Supplement Facts | | |
|---|---|---|
| Serving Size: 1 Scoop (36g) | | |
| Servings Per Container: approximately 55 | | |
| Calories 140 | Calories from Fat 30 | |
| Amount Per Serving | | % Daily Value |
| Total Fat | 3 g | 5%** |
| Saturated Fat | 0.5 g | 3%** |
| *Trans* Fat | 0 g | |
| Cholesterol | 30 mg | 10%** |
| Calcium | 101 mg | 10%** |
| Sodium | 85 mg | 4%** |
| Potassium | 120 mg | 3%** |
| Total Carbohydrate | 7 g | 2%** |
| Dietary Fiber | 1 g | 4%** |
| Sugars | 3 g | † |
| Protein | 24 g | 48%** |

**NITRO-PEAK™ #1 Rated Protein Powder***

**ProNitro 7™:** Grade A Full Spectrum Bioactive Whey Protein Complex (containing Whey Protein Concentrate, Whey Protein Isolate and Hydrolyzed Whey Protein Isolates with naturally occurring critical bioactive compounds including di, tri and oligo peptides, beta-lactoglobulin, alpha-lactalbumin, serum albumin, and immunoglobulins), Glycine, Taurine, BCAAs (Leucine, Isoleucine, Valine), Micellar Casein Phosphoprotein Complex (containing Alpha, Beta and Kappa Casein), Milk Protein Isolate (containing 80% Casein and 20% Whey protein fractions), Amino-Peak™ Amino Acid Spiking Polypeptide Complex [containing Peptidase (Proteolytic Protein Maximizing Enzyme Complex)], Lactase.

Other Ingredients: Cocoa (processed with Alkali), Fructose, Natural and Artificial Flavors, Xanthan Gum, Salt, Silicon Dioxide and Sucralose®.

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.
†Daily value not established.

¹as glutamic acid

**2 servings with water provides 48,000mg of Amino Acids including: 8.2g Glutamine¹; 9.7g BCAAs (Leucine, Isoleucine and Valine).

32.     However, Defendant's claimed total protein count of 48 grams represented on the front of the label, or 24 grams per scoop represented on the back of the label in the "Supplement Facts" sections, is not exclusively derived from whey proteins but also includes, for the purposes of "protein-spiking": several free form amino acids, including Alanine, Trytophan, L-Glycine and Taurine.

33.     Once these "protein spiking" agents are removed from the formula of analysis, and the "bound" amino acid count is determined, the true content of whey protein in the product can be determined.

34.     After scientific testing of the product, the actual total content per serving of whey protein is approximately 12.761 grams (as calculated from the total bonded amino acids) as opposed to 48 grams of protein claimed by Defendant on the front of the label or 24 grams of protein claimed by Defendant on the back of the label for "Whey Protein" product.  *See* Exhibit B.

35.     The representations that the Product contains the 48 grams of protein advertised on the front of the package, or the 24 grams disclosed in the "Supplement Facts" on the back of the label, is

material and false and/or likely to mislead a reasonable consumer when, in fact, it contains no more than 13 grams of whey protein.

36.     Although the back labels of both products mention *some* free form amino acids, by bame, such as Glycine and Taurine, Defendant does not explain that these ingredients make up a large portion of the claimed protein content.  Rather, by calling the product "whey protein" and representing the protein content without revealing the spiking, Defendant purposefully misleads the consumer into thinking that the entire claimed protein content is whey protein.

37.      The FDCA prohibits this type of misleading labeling in food:

> "The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling."

21 C.F.R. § 101.18(b)

38.     In violation of 21 C.F.R. § 101.18(b), Defendant misleads consumers by referencing whey protein, including in the name of the Products, but never disclosing the limited amount of whey protein that the Products actually deliver or disclosing that the Products' protein content is only fractionally whey protein.

39.     A reasonable consumer looking at the name of the Products and the claimed protein content is misled into thinking that the grams of protein per serving claimed by Defendant for the Whey Protein Products are derived exclusively from the Whey Protein.

40.     This false and misleading product names, and the Supplement Facts section, taken together, misled the Plaintiff and reasonable consumers into believing that the protein content of the Products is derived solely from whey protein.

41.     Plaintiff and Class Members were in fact misled by Defendant's representations regarding the true nature of the protein content and value.

CLASS ACTION COMPLAINT

42. The difference between the Products promised and the Products sold is significant. The amount of actual protein provided, and the measure of protein per serving, has real impacts on the benefits provided to consumers by the Products, and the actual value of the Products.

**Alanine and Tryptophan Are Contained In But Not Listed As Ingredients in the Products**

43. Based on the laboratory results, the spiking free-form amino acids Alanine (3.36 grams) and Tryptophan (1.24 grams) are contained in the Product, but not declared in the labeling of Mass Peak Whey Hydrolysate Enhanced. *See* Exhibit A.

44. Based on the laboratory results, the spiking free-form amino acids Alanine (2.58 grams) and Tryptophan (1.11 grams) are contained in the Product, but not declared in the labeling of Nitro Peak Whey Hydrolysate Enhanced. *See* Exhibit B.

**Defendant's False and Misleading Claims Regarding the Amount of Glutamine and Branched Chain Amino Acids in the Products**

45. The labels on Both Product labels claim that the Products contain the free form amino acids L-Leucine, L-Valine, and L-Isoleucine ("BCAA's"). However, scientific testing revealed that neither product contains these free form amino acids, making the Products labeling false and misleading. *See* Exhibits A and B.

46. Defendant claims, on the front of the product label, that it contains 24 grams of Glutamine and BCAA's in the product Mass Peak Whey Hydrolysate Enhanced. However, based on scientific testing, the product contains only 3.659 grams of Glutamine and BCAA's. *See* Exhibit A.

47. The front label of Nitro Peak Whey Hydrolysate Enhanced states that it contains 18 grams of Glutamine and BCAA's in the product. However, based on scientific testing, the product contains only 5.06 grams of Glutamine and BCAA's. *See* Exhibit B.

48. The FDA promulgated regulations for compliance with the FDCA and DSHEA at 21 C.F.R. 101, *et seq.* These regulations require all ingredients to be listed on the label of dietary supplements sold to the public. 21 C.F.R. 101.4.

49. Defendant failed to disclose the ingredients Alanine and Tryptophan in the labeling of their Products, making them misbranded. Defendant's false and misleading claims contained herein are in violation of 21 C.F.R. § 101.18(b), making the Products misbranded.

50.     Defendant's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food

51.      (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular".

52.     California prohibits the misbranding of food in a way which parallels the FDCA through the "Sherman Law", Cal. Health & Saf. Code § 109875, *et seq*. The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular." *Id*.

53.     The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA," as the food labeling regulations of California Cal. Health & Saf. Code, § 110100, subd. (a).

54.     Further, as explained above, Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "A food shall be deemed to be misbranded—False or misleading label [i]f its labeling is false or misleading in any particular."

55.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

56.     Plaintiff and Class Members would not have purchased the Products, or would have not paid as much for the Products had they known the truth about the mislabeled and falsely advertised Products.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action individually and as representatives of all those similarly situated pursuant to Rule 23 F.R.C.P. on behalf of the class and subclass ("the Classes"). The Classes are defined as follows:

> **National Class:**  All persons in the United States who purchased the
> Products at any time during the four years before the date of filing of this
> Complaint to the present.
>
> **California Subclass:**  All persons in the State of California who
> purchased the Product at any time during the four years before the date of
> filing of this Complaint to the present.

58.     Excluded from the Classes are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors.  Also excluded are the judge to whom this case, any member of the judge's immediate family, and  the courtroom staff.

59.     The Classes are so numerous that joinder of all members is impracticable.  On information and belief, the Classes have more than 10,000 members.  Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

60.     There are numerous questions of law and fact common to Plaintiff and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

    a.     The true nature of the protein content in the Products;

    b.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

    c.     Whether Defendant's actions violate California's law against unfair and deceptive acts or practices, Business and Professions Code §17200, *et seq.*;

    d.     Whether Defendant's actions violate California's law against false advertising, Business and Professions Code §17500, *et seq.*;

    e.     Whether Defendant's actions violate California's Consumer Legal Protection Act, Civil Code §1750, *et seq.*;

    f.     Whether Defendant was Unjustly Enriched at the expense of the Plaintiff and Class Members; and

    g.     Whether Defendant Breached an Express Warranty to Plaintiff.

61.     Plaintiff's claims are typical of the claims of the Classes.  Plaintiff's claims, like the claims of the Classes, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

62.     Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained competent and capable attorneys with significant experience and complex and class action litigation, including consumer class actions.  Plaintiff and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.  Neither

1   Plaintiff nor their counsel has interests that are contrary to or that conflict with those of the proposed

2   Classes.

3       63.     Defendant has engaged in a common course of conduct toward Plaintiff and members

4   of the Classes.  The common issues arising from this conduct that affect Plaintiffs and members of the

5   Classes predominate over any individual issues.  Adjudication of these common issues in a single

6   action has important and desirable advantages of judicial economy.

7       64.     A class action is the superior method for the fair and efficient adjudication of this

8   controversy.  Class-wide relief is necessary to compel Defendant to keep such adulterated and

9   misbranded products out of the market and to compensate those who have mislead into purchase of the

10  Products.  The interests of individual members of the Classes in individually controlling the

11  prosecution of separate claims against Defendant are small because the damages in an individual

12  action are small.  Management of these claims is likely to present significantly fewer difficulties than

13  are presented in many class claims because Defendant acted or failed to act on grounds generally

14  applicable to the Classes.  Class treatment is superior to multiple individual suits or piecemeal

15  litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication,

16  provides a forum for small claimants, and deters illegal activities. There will be no significant

17  difficulty in the management of this case as a class action.

18      65.     Defendant has acted on grounds generally applicable to the Classes, thereby making

19  final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a

20  class wide basis.

21  **<u>FIRST CAUSE OF ACTION</u>**

22  **Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et. seq.***

23  **(On Behalf of the California Subclass Members)**

24      66.     Plaintiff incorporates each preceding paragraph as if fully set forth herein.

25      67.     Plaintiff and each member of the Class is a "Consumer" as that term is defined by Cal.

26  Civ. Code § 1761(d).

27      68.     The Products are a "Good" as that term is defined by Cal. Civ. Code § 1761(a).

28      69.     Defendant is a "Person" as defined by Cal. Civ. Code § 1761(c).

13

70.     The transaction(s) involved here are "Transaction(s)" as defined by Cal. Civ. Code § 1761(e).

71.     Plaintiff and members of the Class are Consumers who purchased the Products for personal use within the applicable statute of limitations period.

72.     Plaintiff has standing to pursue this cause of action because Plaintiff has suffered injury-in-fact and has lost money or property as a result of Defendant's actions as set forth here.

73.     Plaintiff and Class members purchased the Products in reliance on Defendant's labeling and marketing claims.

74.     Defendant's practices constitute violations of Cal. Civ. Code § 1770 in at least the following respects:

(a)     in violation of Section 1770(a)(2), Defendant misrepresented the source of the Products' protein as whey, when they are also spiked with free form amino acids;

(b)     in violation of Section 1770(a)(5), Defendant represented that the Products have characteristics and benefits (whey protein per serving) that they do not have (because they contain less whey protein per serving than indicated);

(c)     in violation of Section 1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade (whey protein per serving), when they are of another (containing less whey protein per serving than indicated);

(d)     in violation of Section 1770(a)(9), Defendant has advertised the Products as containing a certain amount of whey protein per serving with the intent not to sell them as advertised; and

(e)     in violation of Section 1770(a)(16), Defendant has represented that the Products were supplied in accordance with previous representations (whey protein per serving), when in fact they were not (because they contain less whey protein per serving than indicated).

75.     Defendant knew or should have known that their representations of fact are material and likely to mislead consumers.

76.     Defendant's practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her

14

CLASS ACTION COMPLAINT

detriment.  Like Plaintiff, members of the Class would not have purchased the Products had they known the true amount of whey protein in the Products.

77.     Plaintiff and members of the Class have been directly and proximately damaged by Defendants' actions.

78.     In conjunction with filing this Complaint, Plaintiff's Counsel mailed to Defendant, by certified mail, return receipt requested, the written notice required by Civil Code §1782(a).  Should Defendant fail to respond within thirty days, Plaintiff will amend to seek damages under the Consumer Legal Remedies Act.

79.     Defendant has engaged in, and continue to engage in, business practices in violation of the Consumer Legal Remedies Act, Civ. Code §1750, et seq. by continuing to make false and misleading representations on their labeling of the Products.

80.     These business practices are misleading and/or likely to mislead Consumers and should be enjoined.

## SECOND CAUSE OF ACTION

**Violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.***

**(On Behalf of the California Subclass Members)**

81.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

82.     Plaintiff and the Class have standing to pursue a cause of action for false advertising under Bus. & Prof. Code §17500, et seq. because Plaintiff and members of the Class have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

83.     Defendant advertised, marketed, and otherwise disseminated misleading information to the public through the product labels.

84.     Defendant continues to disseminate such statements.

85.     Defendant's statements are misleading.

86.     Defendant knows that these statements are misleading, or could have discovered their misleading nature with the exercise of reasonable care.

87.     Plaintiff and Class members relied on Defendant's marketing and labeling.

88.     Defendant's actions violate Cal. Bus. & Prof. Code § 17500, et seq.

CLASS ACTION COMPLAINT

89.     As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and Class members who paid for the Products. Therefore, Defendant has been unjustly enriched.

90.     Plaintiff and Class members seek injunctive relief, restitution, and disgorgement of Defendant's ill-gotten gains as provided for by Cal. Bus. & Prof. Code §17535.

91.     Plaintiff and Class members seek injunctive relief to compel Defendant from continuing to engage in these wrongful practices in the future. No other adequate remedy at law exists. If an injunction is not ordered, Plaintiff and Class members will suffer irreparable harm and/or injury.

### THIRD CAUSE OF ACTION

### Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

### (On Behalf of the California Subclass Members)

92.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

93.     Plaintiff and the Class have standing to pursue a cause of action for false advertising under Bus & Prof. Code §17200, et seq. because Plaintiff and members of the Class have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

94.     Defendant's actions as described herein constitute unfair competitions within the meaning of Bus. & Prof. Code §17200, in that Defendant has engaged in deceptive business practices by falsely advertising the content of whey protein in the Products.

95.     Defendant's actions as described herein constitute unfair competition within the meaning of Bus. & Prof. Code §17200, in that Defendant has engaged in unlawful, unfair and deceptive business practices by violating California's Sherman Food Drug & Cosmetic Act and California's Consumer Legal Remedies Act.

96.     Defendant's actions as described herein constitute unfair competition within the meaning of Bus. & Prof. Code §17200, on the additional grounds that Defendant has failed to properly label the Products in accordance with 21 C.F.R. 101, et seq.

97.     Defendant's actions also constitute unfair competition within the meaning of Bus. & Prof. Code §17200, in that Defendant has made unfair, deceptive, untrue or misleading statements in advertising mediums, including the labels, in violation of Bus. & Prof. Code §17500.

98.     Defendant's actions have caused economic injury to Plaintiff and Class members. Plaintiffs and Class members would not have purchased the Products had they known the true nature of the whey protein content.

99.     Pursuant to Bus. & Prof. Code §17203, Plaintiff and Class members seek an injunction enjoining Defendant from continuing to market, advertise, and sell the Products without first complying with federal and state law and to prevent Defendant from continuing to engage in unfair competition or any other act prohibited by law.

100.     Plaintiff and Class members also seek an order requiring Defendant to make full restitution and disgorgement of their ill-gotten gains of all money wrongfully obtained from Plaintiff and Class members as permitted by Bus. & Prof. Code §17203.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of the Classes)

108.     Plaintiff incorporates the preceding factual allegations as if fully set forth herein.

109.     Plaintiff and Class Members conferred benefits on Defendant by purchasing the Products.

110.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchase of the Products.  Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and Class Members because they would have not purchased the Products, or would not have paid as much for them, if the true facts would have been known.

111.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty

### (On Behalf of the Classes)

112.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

17

113.   Plaintiff, and each member of the Classes formed a contract with Defendant at the time Plaintiff and the other Class members purchased the Products.  The terms of the contract includes the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.  This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

114.   Defendant purport through its advertising, labeling, marketing and packaging to create an express warranty that the Product contained specific amounts of whey protein and specific amounts of Glutamine and BCAA's.

115.   Plaintiff and the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

116.   Defendant breached express warranties about the Products and its qualities because Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises described above.  Plaintiff and the Class Members would not have purchased the Products had they known the true nature of the Products' ingredients and what the Products did and did not contain.

117.   As a result of Defendant's breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

**PRAYER FOR RELIEF**

Plaintiff requests for the following relief:

A.   Certification of the proposed National Class;

B.   Certification of the proposed California Subclass;

D.   Appointment of Plaintiff as class representative;

E.   Appointment of the undersigned counsel as counsel for the Classes;

F.   A declaration that Defendant's actions complained of herein violate the state of California consumer protection statutes;

G.   A declaration that Defendant was Unjustly Enriched;

H.   A declaration that Defendant Breached an Express Warranty to Plaintiff;

I.   An order enjoining Defendant from engaging in the unlawful conduct set forth herein;

J.   An order compelling Defendant to conduct corrective advertising;

K.   An award to Plaintiff and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

L.   Leave to amend this Complaint to conform to the evidence presented at trial; and

M.   Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Dated:  November 13, 2014

Respectfully submitted,
**AHDOOT & WOLFSON, PC**

Tina Wolfson
1016 Palm Avenue
West Hollywood, CA 90069
Tel: (310) 474-9111
Fax: (310) 474-8585
Email: twolfson@ahdootwolfson.com

Nick Suciu III (*Pro Hac Vice* Application Forthcoming)
**BARBAT, MANSOUR & SUCIU PLLC**
434 West Alexandrine #101
Detroit, MI 48201
Tel: (313) 303-3472
Email: nicksuciu@bmslawyers.com

Jonathan Shub
**SEEGER WEISS, LLP**
1515 Market Street
Philadelphia, PA 19102
Tel: (215) 564-1300
Email: jshub@seegerweiss.com

Counsel for Plaintiff,
Martin Mee

19

CLASS ACTION COMPLAINT

## AFFIDAVIT OF TINA WOLFSON

I, Tina Wolfson, declare as follows:

1.     I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiff Martin Mee ("Plaintiff") in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.     Based on my research and personal knowledge, Defendant I A Nutrition, Inc. ("Defendant") does business within the County of San Francisco and Plaintiff purchased Defendant's products within the County of San Francisco, as alleged in the Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 13th day of November, 2014 in West Hollywood, California that the foregoing is true and correct.


Tina Wolfson

CLASS ACTION COMPLAINT

# EXHIBIT A



10005 Muirlands Blvd., Suite G | Irvine, CA 92618
Phone: (949) 419-0288 | Fax: (949) 419-0294
www.chromadex.com

# Process Report

| | | | |
|---|---|---|---|
| Customer: | Barbat, Mansour & Suciu PLLC | Report Number: | CDXA-PR-166-00 |
| Address (City, State): | Detroit, MI | Project Number: | ORD68576 |
| Purchase Order: | N/A | Date Received: | 29 Sep 14 |
| Date of Report: | 27-Oct-14 | Test Location: | Boulder, CO |

| | |
|---|---|
| Assay: | Analysis of Inner Armour Mass-Peak Sample from Barbat, Mansour & Suciu PLLC |
| Part Number: | PRJ-CONSOL-RPT; CDA-00100666-ATR; CDA-00100140-ARS; CDA-00100197-ATR |

**Prepared By:** Sylesh Venkataraman, Ph.D        27-Oct-14
Sr. Director, Laboratory                           Date

**Reviewed By:** Aron Erickson                      27-Oct-14
Director, Lab Operations                            Date

**Approved By:** Sarah Garthe
Digitally signed by Sarah Garthe
DN: cn=Sarah Garthe, o=ChromaDex
Analytics, ou=Quality Assurance,
email=SarahG@chromadex.com, c=US
Date: 2014.10.27 14:44:03 -06'00'        27-Oct-14
Quality Assurance                                Date

*Signed original on file at CDXA*

This product analysis is subject to our "Standard Terms and Conditions for the Purchase and Sale of ChromaDex Products and or Services," a copy of which has been provided to our client and is incorporated herein by this reference. As more specifically set forth therein, this product analysis is for the benefit of our client only, may not be relied upon by any other party without our prior written consent, relates solely to the sample(s) provided to us by our client and therefore cannot be applied to any other material or sample. Unless otherwise noted, samples were received in acceptable condition and analyzed as received. This document may not be printed in part without the explicit permission of ChromaDex.

## *SUMMARY*

- ### *ABSTRACT*

    The Sample was received from Barbat, Mansour & Suciu PLLC for a multitude of analyses.

    1)  Inner Armour Mass-Peak (Lot# 183859201010; ChromaDex sample# CDXA-14-5984)

- ### *INTRODUCTION*

    The sample from Barbat, Mansour & Suciu PLLC was analyzed for Free and Total amino acid content and Taurine content.

- ### *DISCUSSION*

    A summary of the results are included below in Table 1.  Table 2 lists the individual amino acids from the total and free amino acids analyses.

**Table 1; CDXA-14-5984**

| Analysis | CDXA-14-5984 (mg/serving 173g) |
|---|---|
| Total Amino acids | 29856 |
| Total Free Amino acids | 12110 |
| Total Bound Amino acids | 18986 |
| Taurine | 2151 |

This product analysis is subject to our "Standard Terms and Conditions for the Purchase and Sale of ChromaDex Products and or Services," a copy of which has been provided to our client and is incorporated herein by this reference.  As more specifically set forth therein, this product analysis is for the benefit of our client only, may not be relied upon by any other party without our prior written consent, relates solely to the sample(s) provided to us by our client and therefore cannot by applied to any other material or sample. Unless otherwise noted, samples were received in acceptable condition and analyzed as received. This document may not be printed in part without the explicit permission of ChromaDex.

Table 2 – CDXA-14-5984

| Analyte | Units | Total Amino Acids | Free Amino Acids | Bound Amino acids |
|---|---|---|---|---|
| Aspartic acid | mg/serving | 1760 | ND | 1760 |
| Glutamic acid | mg/serving | 3890 | ND | 3890 |
| Serine | mg/serving | 991 | ND | 991 |
| Histidine | mg/serving | 360 | ND | 360 |
| Glycine | mg/serving | 9500 | 7510 | 1990 |
| Threonine | mg/serving | 910 | ND | 910 |
| Arginine | mg/serving | 1170 | ND | 1170 |
| Alanine | mg/serving | 1480 | 3360 | -1880 |
| Tyrosine | mg/serving | 754 | ND | 754 |
| Cystine | mg/serving | 146 | ND | 146 |
| Valine | mg/serving | 1050 | ND | 1050 |
| Methionine | mg/serving | 434 | ND | 434 |
| Phenylalanine | mg/serving | 772 | ND | 772 |
| Isoleucine | mg/serving | 969 | ND | 969 |
| Leucine | mg/serving | 1640 | ND | 1640 |
| Lysine | mg/serving | 1420 | ND | 1420 |
| Proline | mg/serving | 2610 | ND | 2610 |
| Asparagine | mg/serving | | ND | |
| Glutamine | mg/serving | | ND | |
| Tryptophan | mg/serving | | 1240 | |
| Hydroxyproline | mg/serving | | ND | |
| | | | | |
| **Total** | mg/serving | 29856 | 12110 | 18986 |
| Serving Size = 173g | | | | |

- **REFERENCES**

  1) CDXA-ATR-6697-00; Amino acids Base Panel of 21
  2) CDXA-ATR-6692-00; Taurine by HPLC
  3) Sub 12 Report# 1094536-0 Total Amino acids by Profile by HPLC

## REVISION HISTORY

Revision Number        Document/Changes

00                     New report

This product analysis is subject to our "Standard Terms and Conditions for the Purchase and Sale of ChromaDex Products and or Services," a copy of which has been provided to our client and is incorporated herein by this reference.  As more specifically set forth therein, this product analysis is for the benefit of our client only, may not be relied upon by any other party without our prior written consent, relates solely to the sample(s) provided to us by our client and therefore cannot be applied to any other material or sample. Unless otherwise noted, samples were received in acceptable condition and analyzed as received. This document may not be printed in part without the explicit permission of ChromaDex.

# EXHIBIT B



10005 Muirlands Blvd., Suite G  |  Irvine, CA 92618
Phone: (949) 419-0288  |  Fax: (949) 419-0294
www.chromadex.com

# Process Report

| | | | |
|---|---|---|---|
| Customer: | Barbat, Mansour & Suciu PLLC | Report Number: | CDXA-PR-165-00 |
| Address (City, State): | Detroit, MI | Project Number: | ORD68576 |
| Purchase Order: | N/A | Date Received: | 29 Sep 14 |
| Date of Report: | 27-Oct-14 | Test Location: | Boulder, CO |

Assay: Analysis of Inner Armour NitroPeak Sample from Barbat, Mansour & Suciu PLLC

Part Number: PRJ-CONSOL-RPT; CDA-00100666-ATR; CDA-00100140-ARS; CDA-00100197-ATR

**Prepared By:** <u>Sylesh Venkataraman, Ph.D</u>     27-Oct-14
Sr. Director, Laboratory     Date

**Reviewed By:** **Aron Erickson**     27-Oct-14
Director, Lab Operations     Date

**Approved By:** Sarah Garthe
Digitally signed by Sarah Garthe
DN: cn=Sarah Garthe, o=ChromaDex
Analytics, ou=Quality Assurance,
email=SarahG@chromadex.com, c=US
Date: 2014.10.27 14:39:51 -06'00'     27-Oct-14
Quality Assurance     Date

*Signed original on file at CDXA*

This product analysis is subject to our "Standard Terms and Conditions for the Purchase and Sale of ChromaDex Products and or Services," a copy of which has been provided to our client and is incorporated herein by this reference. As more specifically set forth therein, this product analysis is for the benefit of our client only, may not be relied upon by any other party without our prior written consent, relates solely to the sample(s) provided to us by our client and therefore cannot be applied to any other material or sample. Unless otherwise noted, samples were received in acceptable condition and analyzed as received. This document may not be printed in part without the explicit permission of ChromaDex.

## *SUMMARY*

- **ABSTRACT**

  The Sample was received from Barbat, Mansour & Suciu PLLC for a multitude of analyses.

  1) Inner Armour NitroPeak (Lot# 183859201580; ChromaDex sample# CDXA-14-5983)

- **INTRODUCTION**

  The sample from Barbat, Mansour & Suciu PLLC was analyzed for Free and Total amino acid content and Taurine content.

- **DISCUSSION**

  A summary of the results are included below in Table 1.  Table 2 lists the individual amino acids from the total and free amino acids analyses.

Table 1; CDXA-14-5983

| Analysis | CDXA-14-5983 (mg/serving 36g) |
|---|---|
| Total Amino acids | 18581 |
| Total Free Amino acids | 6930 |
| Total Bound Amino acids | 12761 |
| Taurine | 3005 |

This product analysis is subject to our "Standard Terms and Conditions for the Purchase and Sale of ChromaDex Products and or Services," a copy of which has been provided to our client and is incorporated herein by this reference.  As more specifically set forth therein, this product analysis is for the benefit of our client only, may not be relied upon by any other party without our prior written consent, relates solely to the sample(s) provided to us by our client and therefore cannot by applied to any other material or sample. Unless otherwise noted, samples were received in acceptable condition and analyzed as received. This document may not be printed in part without the explicit permission of ChromaDex.

Table 2 –CDXA-14-5983

| Analyte | Units | Total Amino Acids | Free Amino Acids | Bound Amino acids |
|---|---|---|---|---|
| Aspartic acid | mg/serving | 1220 | ND | 1220 |
| Glutamic acid | mg/serving | 2520 | ND | 2520 |
| Serine | mg/serving | 756 | ND | 756 |
| Histidine | mg/serving | 223 | ND | 223 |
| Glycine | mg/serving | 4540 | 3240 | 1300 |
| Threonine | mg/serving | 652 | ND | 652 |
| Arginine | mg/serving | 857 | ND | 857 |
| Alanine | mg/serving | 986 | 2580 | -1594 |
| Tyrosine | mg/serving | 504 | ND | 504 |
| Cystine | mg/serving | 125 | ND | 125 |
| Valine | mg/serving | 738 | ND | 738 |
| Methionine | mg/serving | 301 | ND | 301 |
| Phenylalanine | mg/serving | 547 | ND | 547 |
| Isoleucine | mg/serving | 652 | ND | 652 |
| Leucine | mg/serving | 1140 | ND | 1140 |
| Lysine | mg/serving | 1080 | ND | 1080 |
| Proline | mg/serving | 1740 | ND | 1740 |
| Asparagine | mg/serving | | ND | |
| Glutamine | mg/serving | | ND | |
| Tryptophan | mg/serving | | 1110 | |
| Hydroxyproline | mg/serving | | ND | |
| | | | | |
| **Total** | mg/serving | 18581 | 6930 | 12761 |
| Serving Size = 36g | | | | |

- **REFERENCES**

   1) CDXA-ATR-6697-00; Amino acids Base Panel of 21
   2) CDXA-ATR-6692-00; Taurine by HPLC
   3) Sub 12 Report# 1094535-0 Total Amino acids by Profile by HPLC

## REVISION HISTORY

| Revision Number | Document/Changes |
|---|---|
| 00 | New report |

This product analysis is subject to our "Standard Terms and Conditions for the Purchase and Sale of ChromaDex Products and or Services," a copy of which has been provided to our client and is incorporated herein by this reference. As more specifically set forth therein, this product analysis is for the benefit of our client only, may not be relied upon by any other party without our prior written consent, relates solely to the sample(s) provided to us by our client and therefore cannot be applied to any other material or sample. Unless otherwise noted, samples were received in acceptable condition and analyzed as received. This document may not be printed in part without the explicit permission of ChromaDex.