1  Tina Wolfson, SBN 174806
   twolfson@ahdootwolfson.com
2  Theodore Maya, SBN 223242
   tmaya@ahdootwolfson.com
3  **AHDOOT & WOLFSON, PC**
   1016 Palm Avenue
4  West Hollywood, California 90069
   Tel: 310-474-9111; Fax: 310-474-8585
5
   Additional Counsel on Signature Page
6
   Counsel for Plaintiffs,
7  MARTIN MEE and JUNIOR HERMIDA

8

9

10

11

12

13

14
                    UNITED STATES DISTRICT COURT
15
        NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION
16

17

18  MARTIN MEE and JUNIOR HERMIDA,        ) CASE NO. 3:14-cv-05006
    individually and on behalf of all others  )
19  similarly situated,                    )
                                           )
20                                         ) **OPPOSITION TO DEFENDANT'S**
                          Plaintiffs,      ) **MOTION TO DISMISS**
21                                         )
         v.                                )
22                                         )
    I A NUTRITION, INC., a Connecticut     ) Hearing Date:   May 8, 2015
23  corporation,                           ) Hearing Time:  1:30 p.m.
                                           ) Action Filed:    November 13, 2014
24                        Defendant.       )
                                           ) Hon. Maxine M. Chesney
25                                         )
                                           )
26  _____       )

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  ALLEGATIONS IN THE FIRST AMENDED COMPLAINT .................................. 3

III. ARGUMENT .................................................................................................... 5

      A.    Standard of Review ..................................................................................... 5

      B.    Plaintiffs' Claims Are Not Preempted. ........................................................ 6

              1.    Plaintiffs' Claims Concern Areas of
                     Defendant's Labels Not Subject to Preemption. ............................. 7

              2.    Plaintiffs' Claims Are Entirely Consistent with
                     Federal Law. ..................................................................................... 9

      C.    The Doctrine of Primary Jurisdiction Does Not Apply. ............................. 12

      D.    Plaintiffs' Claims Under State Consumer Protection Statutes
             Are Properly Pled, as the Products' Overall Labeling Is
             Likely to Deceive a Reasonable Consumer ................................................. 14

      E.    The Unjust Enrichment Claim Is Valid and Adequately
             Alleged ...................................................................................................... 20

      F.    The Breach of Warranty Count Should Not Be Dismissed ....................... 21

IV.  CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page(s)**

*Ackerman v. Coca-Cola Co.*,
No. CV-09-0395, 2010 WL 2925955, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ................................................................................................................. passim

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ....................................................................................................6

*Astiana v. Ben & Jerry's Homemade, Inc.*,
C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ............................21

*Bohac v. Gen. Mills, Inc.*,
2014 U.S. Dist. LEXIS 41454 (N.D. Cal. Mar. 26, 2014).....................................22

*Bronson v. Johnson & Johnson, Inc.*,
No. C 12-04184 CRB, 2013 WL 1629191, 2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013) ..............................................................................................................9

*Bruton v. Gerber Products Co.*,
961 F. Supp. 2d 1062 (N.D. Cal. 2013) ...............................................................20

*Chacanaca v. Quaker Oats Co.*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...............................................................13

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010)............................................................................7

*Chavez v. Nestle USA, Inc.*,
511 Fed. Appx. 606 (9th Cir.2013)........................................................................13

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*,
450 U.S. 311 (1981)................................................................................................6

*Cipollone v. Liggett Group*,
505 U.S. 504 (1992)...........................................................................................7, 27

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) ..............................................................................13

*Food Labeling: Revision of the Nutrition and Supplement Facts Labels*, 79 C.F.R. 11879
(March 3, 2014) .....................................................................................................13

*Garrison v. Whole Foods Mkt. Group, Inc.*,
13-CV-05222-VC, 2014 WL 2451290, 2014 U.S. Dist. LEXIS 75271 (N.D. Cal. June 2, 2014)................................................................................................................21

*Ham v. Hain Celestial Group, Inc.*,
  2014 U.S. Dist. LEXIS 141157 (N.D. Cal. Oct. 3, 2014) ...................................................26

*Hansen v. Norfolk & W. Ry.*,
  689 F.2d 707 (7th Cir.1982) ...............................................................................................12

*Hawaiian Airlines, Inc. v. Norries*,
  512 U.S. 246 (1994) ...............................................................................................................6

*Henderson v. Gruma Corp.*, No. CV 10-04173 AHM AJWX, 2011 WL 1362188 at *12
  2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ......................................................8

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011) ...............................................................15, 19, 22

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ...............................................................................................15

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
  955 F. Supp. 2d 1311 (S.D. Fla. 2013) .........................................................12, 13, 21

*Johnson v. Triple Leaf Tea, Inc.*,
  2014 U.S. Dist. LEXIS 134111 (N.D. Cal. Sept. 23, 2014) .............................................21

*Jones v. ConAgra Foods, Inc.*,
  912 F. Supp. 2d 889 (N.D. Cal. 2012) .............................................................................21

*Jones v. Rath Packing Co.*,
  430 U.S. 519 (1977) ................................................................................................................6

*Lam v. Gen. Mills, Inc.*,
  859 F. Supp. 2d 1097 (N.D. Cal. 2012) ...........................................................................19

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) ........................................................................ 7, 12-13

*Marty v. Anheuser-Busch Cos.*,
  43 F. Supp. 3d 1333 ..................................................................................15, 25, 26

*Matrixx Initiatives, Inc. v. Siracusano*,
  131 S.Ct. 1309 (2011) ............................................................................................................6

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ................................................................................................................6

*Parks Sch. of Bus. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) .................................................................................................5

*Rikos v. P&G*,
  782 F. Supp. 2d 522 (S.D. Ohio 2011) ...............................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rodarte v. Philip Morris, Inc.*,
 2003 U.S. Dist. LEXIS 25067, 2003 WL 23341208 (C.D. Cal, June 23, 2003) ...................22

*Starr v. Baca*,
 652 F.3d 1202 (9th Cir. 2011) ...............................................................................................6

*Viggiano v. Hansen Natural Corp.*
 944 F.Supp. 2d 877 (C.D. Cal. 2013) ...................................................................................18

*Vital v. OneWorld Co.*,
 No. 12-cv-00314-CJC-MLG, 2012 U.S. Dist. LEXIS 186203 (C.D. Cal. Nov. 30,
 2012) (Mot. at 11) ..................................................................................................................11

*Williams v. Gerber Prods. Co.*,
 552 F.3d 934 (9th Cir. 2008) ....................................................................................... *passim*

*Wilson v. Frito-Lay N. Am., Inc.*,
 961 F. Supp. 2d 1134 (N.D. Cal. Apr. 1, 2013) ...................................................................15

### STATE CASES

*Bronco Wine Co. v. Jolly*
 33 Cal. 4th 943 (2004) .............................................................................................................6

*Colgan v. Leatherman Tool Grp., Inc.*,
 135 Cal. App. 4th 663 (2006) ...............................................................................................16

*Farm Raised Salmon Cases*
 42 Cal. 4th 1077 (2008 ............................................................................................................7

*Kasky v. Nike, Inc.*,
 27 Cal. 4th 939 (2002) ...........................................................................................................14

*Leoni v. State Bar*,
 39 Cal. 3d 609 (1985) ......................................................................................................14, 20

*Linear Tech. Corp. v. Applied Materials, Inc.*,
 61 Cal. Rptr. 3d 221 (Cal. Ct. App. 2007) ..........................................................................15

*McKell v. Washington Mut., Inc.*,
 49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006) ..........................................................................15

*Nagel v. Twin Labs., Inc.*,
 109 Cal. App. 4th 39, 134 Cal. Rptr. 2d 420 (2003) ...........................................................16

*Podolsky v. First Healthcare Corp.*,
 50 Cal.App.4th 632 (1996) ....................................................................................................15

*Schnall v. Hertz Corp.*,
 78 Cal. App. 4th 1144 (2000) ...............................................................................................15

*Searle v. Wyndham Int'l, Inc.,*
    102 Cal.App.4th 1327 (2002) ...................................................................................15

## FEDERAL STATUTES

21 U.S.C. § 343 ............................................................................................ *passim*

## STATE STATUTES

Cal. Civ. Code § 1791.2 .............................................................................................21

Cal. Com. Code § 2313 ..............................................................................................21

## RULES

Fed. R. Civ. P. 12 .........................................................................................................5

## REGULATIONS

21 C.F.R. §101.9 .........................................................................................................11

21 C.F.R. § 101.18 ....................................................................................................9, 11

21 C.F.R. § 101.36 .....................................................................................................10

21 C.F.R. § 101 ...........................................................................................................12

## OTHER AUTHORITIES

Alex Morrell, *Lawsuits Say Protein Powders Lack Protein, Ripping Off Athletes* ......................10

CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 5:17 (4th ed. 2004) ...........................................................................................................16

# I. INTRODUCTION

This case is about the misleading labels of Inner Armour Mass Peak Whey Hydrolysate Enhanced, Nitro Peak Whey Protein Hydrolysate Enhanced, Casein Peak, Whey Protein, and Super Quad Protein (collectively, the "Products"), which were designed by Defendant IA Nutrition, Inc. ("Defendant") to induce reasonable consumers to pay an inflated price for products that contain substantially less complete proteins than are represented, and which do not deliver the many health benefits associated with consumption of complete proteins.

Defendant's practice of "protein spiking," whereby it adds or substitutes cheap and less beneficial ingredients into its protein powders to inflate the Products' protein content calculation, has been widely criticized as causing consumers to be misled about products' actual protein content, and has enabled Defendant to enhance its profit margins at the expense of unsuspecting consumers.

Federal law permits Defendant to test the Products' protein content, as stated on the Supplement Facts section of the Products' labels, in the manner it does. However, contrary to Defendant's position in its Motion to Dismiss (the "Motion"), Defendant is *not* immune from liability for falsely and misleadingly labeling and marketing the Products on *other* portions of the Products' labels. Federal preemption is very narrow and both federal and state law prohibit Defendant from using labels that are false or misleading in any particular.

It is undisputed that the "protein" content Defendant displays in the Supplement Facts section of the Products' labels does not refer to *complete* proteins, which are fundamentally different from the free-form amino acid and other non-protein spiking agents that Defendant includes in the Products. Studies show that complete proteins provide substantially greater health benefits than the ingredients on which the Products' "protein" content was calculated. When any reasonable consumer is deciding to purchase the Products based on the label, he or she expects the protein content to be comprised of complete (actual) proteins, not non-protein ingredients. Quite simply, federal preemption does not give Defendant *carte blanche* to misrepresent the Products' complete protein content on the Products' labels.

Defendant could have avoided a false advertising claim while manufacturing the Products in the identical manner if it had refrained from affirmatively misrepresenting the Products' complete protein content on the front of the Product labels, and refrained from deceptively describing the protein "Complexes" and "Blends" in the Ingredients section of the labels as consisting solely of complete proteins without reference to the spiking agents.  However, Defendant chose to label the Products deceptively, perhaps believing that the risk of liability was low enough to make its misleading labeling and marketing, and the associated higher profits and lower manufacturing costs, worth the risk.  Defendant went too far, and this lawsuit is a direct consequence.  Unsuspecting consumers who purchased the Products paid an inflated price and received fewer health benefits than they would reasonably expect from the Products' misleading labels, and those consumers are entitled to relief under the state law causes of action asserted herein.

While at various places in its Motion Defendant defends its labels on the basis that they display protein content measured with the nitrogen testing model allowed under federal regulations (21 C.F.R. § 101.9(c)(7)), Defendant never asserts — and cannot assert — that its protein claims on the front of its labels are not misleadingly high.  As even Defendant must admit, claims such as those appearing on front of the "Mass-Peak Whey Hydrolysate Enhanced" Product displayed in the FAC, claiming that the Product delivers "66g Protein," are simply not true.  FAC ¶ 23.  Defendant admits that such claims rely on individual amino acids in addition to the complete protein included in the Product,[1] and thus Defendant impliedly appears to admit that such claims overstate the true protein content of this and the other Products described in the FAC.  Clearly, Plaintiffs' state a false advertising claim, as well as a claim for breach of warranty based on Defendant's false statements regarding the Products' protein content.

Defendant portrays its labeling practices as conforming with federal regulations, when those practices actually violate the applicable regulations and law, including federal law requiring that Defendant's labels be "truthful and not misleading."  21 USCS § 343(r)(6).  Far

---

[1]     *E.g.*, Mot. at 1 ("Product protein calculations are based on nitrogen as a proxy for protein."); *id.* at 3-4 ( "[A]mino acids [are] included in Products in addition to the amino acids which are part of the 'complete' proteins").

from challenging "an established agency norm" (Mot. at 2), Plaintiffs' claims are aimed at deceptive conduct that violates federal and state law.  Because Plaintiffs' claims would not impose standards higher than or different from those imposed by federal regulations, they are not preempted.

Finally, none of the materials referenced in Defendant's Motion indicate that the FDA is likely to take any action that might allow Defendant to continue falsely labeling the Products in the manner alleged.  Accordingly, there is no reason to stay the case under the primary jurisdiction doctrine.  Defendant's Motion should be denied.

## II.  ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Complete protein sources contain all the essential amino acids one needs to build protein-based compounds such as muscle tissue, skin, fingernails, hair and enzymes.  They are especially rich in branded-chain amino acids, which are metabolized directly within one's muscles as opposed to being processed in the liver first.  FAC ¶¶ 17-18.  Plaintiffs' First Amended Complaint references five of Defendant's Products: Inner Armour Mass Peak Whey Hydrolysate Enhanced, Nitro Peak Whey Hydrolysate Enhanced, Casein Peak, Whey Protein, and Quad Protein. FAC ¶¶ 1, 23, 29, 35, 40, 45.

Defendant designed the Products' front labels to communicate to consumers that the Products' touted protein content is comprised solely of complete proteins.  FAC ¶ 56.  However, scientific testing reveals that the Products contain substantially less complete protein per serving than is represented on the front of the labels.  FAC ¶¶ 27, 33, 38, 43, 50; FAC Ex. A-E. This is because Defendant engages in what is commonly referred to as "protein-spiking."  FAC ¶ 8.

Protein spiking is a misleading practice that manipulates the apparent protein content of a product.  To explain, nitrogen is the "tag" used in common methods of calculating protein content, and the amount of nitrogen in a protein powder supplement is normally a reliable indicator of the powder's actual protein content.  FAC ¶ 3.  But that is not the case where, as here, the manufacturer "spikes" its product with *non-protein* sources of nitrogen, such as free-form amino acids and creatine monohydrate.  FAC ¶¶ 3, 5, 8.  Defendant spikes the Products with free-form amino acids and other non-protein ingredients (including L-Leucine, L-

Isoleucine, Alanine, Trytophan, Glycine, Taurine, and the non-amino acid creatine

monohydrate), which are cheaper and less beneficial than complete proteins (FAC ¶¶ 25, 31, 36,

41, 48), and this manufacturing practice enables Defendant to both reduce its manufacturing

costs and inflate the Products' claimed protein content at the expense of consumers.  FAC ¶¶ 5,

8.  The practice has been condemned by the American Herbal Products Association ("AHPA"),

which recently issued a standard for manufacturers for measuring the true protein content of their

products.  FAC ¶ 6.  The practice also has been publicly criticized by General Nutrition Centers,

Inc. ("GNC"), one of the largest distributors of protein products in the United States, because it

misleads consumers who are unaware of the actual protein content of the spiked products they

purchase. FAC ¶ 7.  The consequence of Defendant's protein spiking is that consumers pay for a

product that delivers less actual protein than they would reasonably expect.[2]  FAC ¶ 5.

Plaintiffs do not allege that the Defendant uses an improper testing method to calculate its

protein content as displayed in the Supplement Facts sections of the Products' labels, but that the

Products bear other misleading label claims regarding the source of the protein content.  FAC ¶¶

56-57.

All of the Products are deceptively named, in violation of 21 C.F.R. § 101.18(b) and 21

USCS § 343(r)(6).  FAC  ¶ 54.  For instance, Defendant prominently features "Whey

Protein" — the complete protein sought by millions of American consumers —  in the very

name of its "Nitro Peak Whey Protein Hydrolysate Enhanced" Product.  FAC  ¶ 29.  Then

Defendant includes only complete proteins under its description of the "Grade A Full Spectrum

Bioactive Whey Protein Complex" contained in the Product, and does not include various

spiking agents the Product contains (including Glycine, Taurine, Leucine, Isoleucine, and

Valine) within this "Complex."  FAC  ¶ 30.

Similarly, Defendant prominently features "Whey" in the very name of the Product

called "Mass Peak Whey Hydrolysate Enhanced."  FAC  ¶ 23.  Then Defendant includes only

_____

[2]      Furthermore, the Products do not contain the claimed amount of protein, even with the free-form amino acids calculated into the total protein count: Mass Peak - 29.856g total amino acids (50g protein label claim), Nitro Peak - 18.581g total amino acids (24g protein label claim), Casein Peak - 15.7g total amino acids (24g protein label claim), Whey Protein - 14g total amino acids (24g protein label claim), and Super Quad Protein - 17.5g of total amino acids (24g protein label claim).  FAC Ex. A-E.

complete proteins, and does not include the spiking agents, under its description of the "Grade A Full Spectrum Bioactive Whey Protein Complex" contained in the Product.  FAC ¶ 24. Defendant prominently features "Casein" protein — a complete protein —  in  the  very  name  of the  Product it calls "Casein Peak."  FAC ¶ 35.  Then Defendant includes only complete proteins under its description of the "Grade A Full Spectrum Bioactive Micellar Casein Phospoprotein Complex" contained in the Product, and does not include the spiking agents within this "Complex."  FAC ¶ 35.  Defendant prominently features "Whey Protein"  in  the  very  name  of the  Product it calls  "Whey Protein," which also includes spiking agents.  FAC ¶ 40.  Defendant represents that the Product it calls "Super Quad Protein" is comprised of four ("Quad") different complete proteins.  FAC ¶ 45.  Then Defendant lists four ("quad") different complete proteins, but omits the spiking agents, in its description of the "Ultra Pure Extended Release Whey Protein Blend" contained in the Product.  FAC ¶ 45.

Defendant's false and misleading names for the Products,  and its misleading descriptions of the "Complexes" and "Blends" they contain in the Ingredients sections of its labels, taken together, mislead consumers into believing that the protein content of the Products is derived solely  from complete proteins.  FAC ¶ 57.

Based on these allegations, Plaintiffs' First Amended Complaint asserts that the classes should be certified and that Defendant should be held liable for violations of California and Florida's consumer protection acts (First through Fourth Causes of Action), unjust enrichment (Fifth Cause of Action), and breach of express warranty (Sixth Cause of Action).  FAC ¶¶ 85-119.

## III.  ARGUMENT

### A.    Standard of Review

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the light[] most favorable to the nonmoving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Ultimately, the Court may not dismiss a complaint in which the plaintiff has alleged "sufficient factual matter… to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal,* 129 S.Ct. 1937,

1949 (2009).

Such factual plausibility exists when the facts pled "raise[s] a reasonable expectation that discovery will reveal evidence" of wrongdoing and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1312 (2011). Accordingly, the Ninth Circuit holds that the allegations only need to "give fair notice" of the plaintiff's legal and factual claims "to enable the opposing party to defend itself effectively" in a way "that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B.     Plaintiffs' Claims Are Not Preempted.**

Courts recognize a strong presumption against preemption that may be overcome only by "clear and manifest" congressional intent to the contrary.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *Hawaiian Airlines, Inc. v. Norries*, 512 U.S. 246, 252 (1994).  A party seeking preemption of state law thus bears a heavy burden, for "preemption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co*., 450 U.S. 311, 317 (1981) (citation omitted); *see also Bronco Wine Co. v. Jolly* 33 Cal. 4th 943, 956 (2004) ("The party who claims that a state statute is preempted by federal law bears the burden of demonstrating preemption.").  This approach "provides assurance that the 'federal-state balance' will not be disturbed unintentionally by Congress or unnecessarily by the courts." *Jones v. Rath Packing Co*., 430 U.S. 519, 525 (1977) (citation omitted).

Consumer protection laws such as California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), Consumers Legal Remedies Act ("CLRA"), and Florida's Deceptive and Unfair Trade Practices Act are within the states' historic police powers and therefore are subject to the presumption against preemption. *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, 2010 U.S. Dist. LEXIS 73156 at *20 (E.D.N.Y. July 21, 2010); *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008).  In light of this presumption, any

ambiguity as to whether claims are preempted must be resolved in favor of Plaintiff. However, no such ambiguity exists.

The FDCA's Nutrition Labeling and Education Act (NLEA) includes a preemption provision that explicitly "disavows any implied preemption," stating that it "'shall not be construed to preempt any provision of State law, unless such provision is expressly preempted . . . .'" *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009) (quoting Pub. L. No. 101-535, § 6(c)(1) (21 U.S.C. § 343-1 note)). And the NLEA only expressly preempts state law covering the same subject but "not identical to" federal requirements. 21 U.S.C. § 343-1(a)(1)-(5). Thus, state law claims are not preempted "(1) if the plaintiffs' claims seek to impose requirements that are identical to those imposed by the FDCA; or (2) if the requirements plaintiffs seek to impose are not with respect to claims of the sort" explicitly referenced in § 343-1(a). *Ackerman*, 2010 U.S. Dist. LEXIS 73156 at *21. The list of federal misbranding provisions that preempt state law conspicuously omits section 403(a), which prohibits labeling that is "false or misleading in any particular." 21 U.S.C. § 343(a). Accordingly, states remain free to challenge deceptive labeling that is not specifically authorized by one of the federal misbranding provisions that is given preemptive effect (in this case, section 343(q)), or in a manner identical to any federal law that is given preemptive effect. *See also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 370 (N.D. Cal. 2010) ("The express preemption provision of the FDCA contained in section 343–1 therefore does not preempt the claims arising from false or misleading labels regulated by section 343(a).").

"Further, breach of warranty claims are generally not preempted because they are not requirements "'imposed under State law," but rather imposed by the warrantor.'" *Ackerman*, 2010 WL 2925955, 2010 U.S. Dist. LEXIS 73156 at *23 (quoting *Cipollone v. Liggett Group*, 505 U.S. 504, 525-26 (1992)).

### 1. Plaintiffs' Claims Concern Areas of Defendant's Labels Not Subject to Preemption.

The Products' Supplement Facts section of the label, which states the grams of protein per serving, is the only aspect of the label that could possibly be subject to federal preemption. *See* 21 U.S.C. § 343-1(a)(4). However, Plaintiffs have not alleged that the protein grams per

7

serving appearing in the Products' Supplement Facts section of the labels are created using the wrong testing method.  Instead, Plaintiffs have alleged misrepresentations appearing **elsewhere** on the labels regarding the Products' **complete** protein content that mislead reasonable consumers to believe that the grams of complete protein per serving in the Products are higher than they in fact are.

Specifically, as discussed above, Defendant features the name of a complete protein predominantly in the names of four of the Products: Inner Armour Mass Peak Whey Hydrolysate Enhanced, Nitro Peak Whey Protein Hydrolysate Enhanced, Casein Peak, and Whey Protein.  In the fifth Product, Super Quad Protein, a reasonable consumer would believe that the protein content was comprised of four ("Quad") different complete proteins.  Further, all of the Products contain a complete protein "complex" or "blend," each of which Defendant describes as containing only complete proteins listed within parentheses.  A reasonable consumer, looking at the Products' names and at the "complex" or "blend" listed in the Ingredients, would believe that these complete proteins are the sources of the listed protein content, thus making the Product labels false and misleading.

Courts have upheld similar claims in the face of the same preemption arguments asserted by Defendant here.  *See, e.g.*, *Ackerman*, 2010 WL 2925955 at *12-13, 2010 U.S. Dist. LEXIS 73156 at *24, 48 (finding no preemption of claim based on defendant's use of "a product name that references only two of vitaminwater's ingredients, omitting the fact that there is a key, unnamed ingredient in the product," and that "[t]he potential for confusion is heightened by the presence of other statements in vitmainwater's labeling"); *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM AJWX, 2011 WL 1362188 at *12, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) (holding claim not preempted where the "label said 'GUACAMOLE' twice as large as 'FLAVORED DIP,' [and] prominently displayed pictures of avocados on the front of the jar," and "a reasonable consumer could understand the product to be real guacamole, rather than a dip containing less than two percent avocado powder"); *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191 at *11, 2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013) (holding claim not preempted where "Defendants put the phrase 'like those found in

fruits and vegetables'" next to pictures of antioxidant-rich berries, and a "reasonable consumer might think that the antioxidants in Splenda Essentials are derived from berries, rather than ascorbic acid and synthetically created vitamins.  A consumer might also incorrectly believe [the product] has the same health benefits as consuming real fruit.").

Defendant's preemption arguments **solely** concern the protein content claim in the Supplement Facts section of its labels, which disclose information required by FDA regulations. However, Plaintiffs' claims primarily are based on misrepresentations, which mislead consumers about the Products' complete protein content.  Defendant prominently labels its Product Mass-Peak Whey Hydrolysate Enhanced, as depicted and described in the FAC, as having **more** protein than is claimed on the Supplement Facts section, and Plaintiffs further allege that even the numbers appearing on the Supplement Facts section are inflated.  (*E.g.*, FAC ¶ 23 (depicting front of Defendant's 8.8-lb package of "Mass-Peak Whey Hydrolysate Enhanced" Product with claim of "66g Protein"); *id.* ¶¶ 25-27 (describing how same Product contains only 18.986 grams of whey protein); *id.* ¶ 28 ("The representations that the Product contains the 66 grams of protein advertised on the front of the package is material and false and/or likely to mislead a reasonable consumer when, in fact, it contains no more than 19 grams of whey protein.").[3]  Such labels are not allowed by federal regulations, and claims based upon them are not preempted.

## 2. Plaintiffs' Claims Are Entirely Consistent with Federal Law.

Plaintiffs' claims — even with respect to the Supplement Facts sections of Defendants' labels, which inflate the amount of protein in the Products even accounting for the spiking agents — do not conflict with, and are consistent with, Federal regulations governing the Supplement Facts sections.  Insofar as Plaintiffs' state law claims would impose requirements "identical to" federal requirement, they are not preempted.  21 U.S.C. § 343-1(a)(1)-(5); *see also, e.g., Ackerman*, 2010 U.S. Dist. LEXIS 73156 at *21 (quoting and applying same rule).

Federal regulations allow protein content to be calculated through nitrogen testing, but do not endorse or allow Defendant's use of non-protein, nitrogen-containing ingredients to inflate

---

[3]     As described in detail above, all of the Products contain far less protein then claimed in the Supplement Facts section even with the free amino acids calculated into the protein content, as shown through testing.

the claimed protein content.  21 C.F.R. § 101.9(c)(7).  While Defendant cites this regulation

(allowing calculation of protein content through nitrogen testing), it fails to cite another

regulation declaring that: "Protein shall not be declared on labels of products that, other than

ingredients added solely for technological reasons, contain only individual amino acids."  21

C.F.R. § 101.36(b)(2)(i).[4]  This regulation explicitly prohibits declaring that the individual amino

acids Defendant includes in the Products constitute complete protein.  And these two sections,

read in concert with one another and in concert with the FDCA's general prohibitions against

misleading labeling (21 U.S.C. § 343(a) (prohibiting food labeling that is "false or misleading in

any particular"); 21 USCS § 343(r)(6) (requiring any advertising statement made in connection

with a dietary supplement be "truthful and not misleading")), prohibit the conduct alleged here.

While Defendant may not legally be obligated to test the protein content per serving

appearing in the Supplement Facts section of its labels in a different manner, it *is* legally

obligated to refrain from deceptively marketing the protein content of the Products elsewhere on

the labels or elsewhere as complete protein.  *Id.*

Defendant does not contend that the various amino acids that it touts as complete

"protein" on the challenged labels are included in the Products "solely for technological

reasons." 21 C.F.R. § 101.36(b)(2)(i).  Rather, Defendant contends that these amino acids "are

included because they have a number of unique properties that consumers find important," never

mind that the Products are labeled prominently and primarily for their purported whole protein

content.  (Mot. at 4.)  The FDA recognizes that Product names touting one ingredient but failing

to mention others (here, the free-form amino acid spiking agents that falsely inflate the claimed

protein content) can be misleading.  21 C.F.R. § 101.18(b) ("The labeling of a food which

contains two or more ingredients may be misleading by reason (among other reasons) of the

designation of such food in such labeling by a name which includes or suggests the name of one

---

[4]      Similarly, the FDA has stated its "expectation for proper nutrition labeling is that firms
will evaluate the protein content from actual protein sources—not other nitrogen-containing
ingredients such as individual amino acids."  Alex Morrell, *Lawsuits Say Protein Powders Lack
Protein, Ripping Off Athletes*, Forbes (Mar. 12, 2015), *available at*
<http://www.forbes.com/sites/alexmorrell/2015/03/12/lawsuits-say-protein-powders-lack-
protein-ripping-off-athletes/> (last visited April 7, 2015) (quoting FDA press officer Jennifer
Dooren).

1  or more but not all such ingredients, even though the names of all such ingredients are stated

2  elsewhere in the labeling."); *Ackerman*, 2010 U.S. Dist. LEXIS 73156 at *48 (quoting same and

3  holding claim not preempted).

4          Defendant misleadingly suggests that Plaintiffs are arguing Defendant should measure

5  the protein content of its Products using methods used by the American Herbal Products

6  Association ("AHPA"), instead of using nitrogen testing allowed by FDA regulations.  (Mot. at

7  10.)  However, Plaintiffs cite the AHPA's standards in the FAC as support for the proposition

8  that Defendant's use of nitrogen testing is deceptive, regardless of the fact that non-deceptive

9  nitrogen testing is allowed by FDA regulations.  (FAC ¶ 6.)  Defendant's prominent

10  advertising — including through claims placed directly on the front of the Products' labels

11  separate and apart from the Supplement Facts statement — is deceptive and prohibited by the

12  Federal law cited above, including 21 U.S.C. § 343(a) and § 343(r)(6), and this false advertising

13  is actionable under the state consumer protection statutes advanced by Plaintiffs.  Nitrogen

14  testing is not the problem here; the problem is Defendant's use of misleading label claims.

15          Defendant cites *Vital v. OneWorld Co.*, No. 12-cv-00314-CJC-MLG, 2012 U.S. Dist.

16  LEXIS 186203, at *16 (C.D. Cal. Nov. 30, 2012) (Mot. at 11), for the proposition that Plaintiffs'

17  claims should be dismissed because they do not allege that testing on which they rely was

18  performed in accordance with 21 C.F.R. §101.9(g)(2).  But *Vital* was a summary judgment

19  decision considering levels of sodium and magnesium (apparently as displayed in the Nutrition

20  Facts section of the product labels at issue in that case), and in no way suggests that Plaintiffs'

21  FAC — including allegations about false claims appearing on the front of the label separate and

22  apart from any allegations concerning the Products' protein content contained within the

23  Supplement Facts sections of Defendant's labels — can be dismissed at this early stage on the

24  basis that it does not include allegations regarding testing in precise conformity with 21 C.F.R.

25  § 101(g)(2).

26          Finally, because Defendant's preemption argument relies on the contention that

27  Defendant tests the protein levels claimed in the Supplement Facts sections of its labels in

28  accordance with such regulations, Defendant relies on factual issues not properly before the

Court on this Motion to Dismiss.  Defendant's declaration in support of its Motion fails to substantiate Defendant's contention that it calculates protein content in accordance with this or any other federal regulation.  Defendant wrongly argues that Plaintiffs' state law claims are preempted because they impose requirements different from these federal regulations, but Defendant has not even established that the protein levels set forth in the Supplement Facts sections of its labels are calculated in accordance with federal law, and for this additional reason Defendant cannot argue that Plaintiffs' state law claims would impose standards different from the federal regulations.  Most importantly, Plaintiffs' claims are based on false and misleading label claims, not the testing method used by Defendant.  False or misleading claims are not preempted.

Defendant's preemption arguments lack merit, and its Motion to Dismiss should be denied.

**C.    The Doctrine of Primary Jurisdiction Does Not Apply.**

The doctrine of primary jurisdiction may be invoked where both the courts and a regulatory body have jurisdiction over a given dispute, the courts determine that a particular case would more properly be decided by the regulatory body, and the parties would not be prejudiced by deferral to that regulatory body.  There can be no dispute that staying Plaintiffs' claims under the primary jurisdiction doctrine would unfairly prejudice Plaintiffs in that it would, in effect, foreclose their right to any relief whatsoever.  *See In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1348 (S.D. Fla. 2013) (declining to apply primary jurisdiction doctrine and reasoning that cases cannot be dismissed under that doctrine when dismissal when "'a party may be prejudiced by a dismissal'") (quoting *Hansen v. Norfolk & W. Ry.*, 689 F.2d 707, 714 (7th Cir.1982)); *see also, e.g.*, *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) (declining to apply primary jurisdiction doctrine and reasoning that "every day courts decide whether conduct is misleading"); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) ("[I]t would be neither necessary nor appropriate to invoke the primary jurisdiction doctrine here, especially in that it is unclear what form of relief plaintiffs might hope to obtain from referral to

the [FDA].  Defendant's motion to for judgment on the pleadings on the basis of primary

jurisdiction must therefore be denied.").

> [T]he primary jurisdiction doctrine "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit," but instead "is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency."

*In re Horizon Organic Milk*, 955 F. Supp. 2d at 1349 (quoting *Clark v. Time Warner Cable*, 523

F.3d 1110, 1114 (9th Cir. 2008)).

Application of the primary jurisdiction doctrine is inappropriate where there is no

indication that the agency to which deferral is urged is likely to regulate or somehow permit the

alleged false advertising claims in the immediate future.  *Id.* at 1349-50 ("'[T]he FDA has shown

virtually no interest in regulating DHA in this context.'") (quoting *Chavez v. Nestle USA, Inc.*,

511 Fed. Appx. 606, 607 (9th Cir.2013)) ("Where, as here, the doctrine is invoked at the motion

to dismiss stage, the question is 'whether the complaint plausibly asserts a claim that would *not*

implicate the doctrine.'") (citation omitted)); *see also Rikos v. P&G*, 782 F. Supp. 2d 522, 530

(S.D. Ohio 2011) ("[C]ourts have declined to apply the primary jurisdiction doctrine when the

party seeking agency referral does not provide evidence that 'the FDA has actually taken any

interest in investigating the claims or issues presented here.'") (citation omitted).

In support of its argument that this action should be stayed indefinitely under the primary

jurisdiction doctrine, Defendant points to the FDA publication entitled *Food Labeling: Revision

of the Nutrition and Supplement Facts Labels*, 79 F.R. 11879 (March 3, 2014) (Docket No. FDA-

2012-N-1210) (cited in Mot. at 12) (hereinafter, the "FDA Publication").  However, nothing in

this FDA Publication indicates that the FDA is likely to alter the federal legal landscape

described in the preceding section regarding preemption.  A thorough review of the FDA

Publication reveals nothing to suggest the FDA is likely to take some action altering the federal

regulations cited above in any meaningful manner, or to take some other action that might affect

the outcome of this case anytime soon.

Contrary to Defendant's assertion that "the precise issue Plaintiffs complain of is

1  currently being evaluated by FDA as part of its rulemaking process," the FDA Publication

2  Defendant cites does not indicate the FDA is likely to alter regulations including those

3  concerning nitrogen testing for protein,[5] and the FDA cannot alter the FDCA's basic

4  requirements that Defendant's labels be "truthful and not misleading."  21 USCS § 343(r)(6).

5        In further support of its primary jurisdiction argument, Defendant also quotes, without

6  citation, the AHPA.  These quotes, appearing on page 13 of Defendant's Motion, are *not* from

7  the FDA Publication cited on the previous page and in no way suggest that the FDA is about to

8  take some action that could affect the outcome of this case.

9        Because Defendant cannot show that the FDA is likely to issue any regulation that would

10  allow it to continue making false protein claims concerning its Products, there is no reason

11  whatsoever for this Court to stay the case under the primary jurisdiction doctrine in order to

12  allow the FDA to take such an action.  Again, Defendant's Motion should be denied.

13 **D.    Plaintiffs' Claims Under State Consumer Protection Statutes Are Properly Pled, as**

14        **the Products' Overall Labeling Is Likely to Deceive a Reasonable Consumer**

15        The California and Florida consumer protection statutes invoked in the FAC require

16  allegations showing that a reasonable consumer is likely to be deceived by the representations in

17  question.  *See, e.g., Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

18  Accordingly, "these laws prohibit 'not only advertising which is false, but also advertising

19  which[,] although true, is either actually misleading or which has a capacity, likelihood or

20  tendency to deceive or confuse the public.'"  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)

21  (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)).  In other words, an advertisement may

22  be deceptive or misleading even if it contains no statement that is literally false; it is sufficient

23  that the advertisement is likely to deceive or mislead a reasonable consumer.  *See, e.g., Marty v.*

24  *Anheuser-Busch Cos.*, 43 F. Supp. 3d 1333, 1340-42 (S.D. Fla. 2014) (holding, for purposes of

25  New York, Florida, and California consumer fraud statutes, that plaintiffs' allegations, though

26  based on their own assumptions rather than what the labelling and packaging actually stated,

27

28 _____

[5]      *See* FDA Publication at 11913, *available at* <http://www.gpo.gov/fdsys/pkg/FR-2014-03-03/pdf/2014-04387.pdf> (last visited April 7, 2015).

14

adequately supported a finding that defendant's representations were likely to deceive a reasonable consumer).  Not surprisingly then, given the fact-sensitive nature of this inquiry, the question of whether particular act or business practice is deceptive "is generally a question of fact which requires 'consideration and weighing of evidence from both sides'" and which, accordingly, is not appropriate for determination on a motion to dismiss.  *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 236 (Cal. Ct. App. 2007) (quoting *McKell v. Washington Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (Cal. Ct. App. 2006)); *see also Williams*, 552 F.3d at 938-939; *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011).

The UCL's coverage has been described as "sweeping," and its standard for wrongful business conduct is "intentionally broad" to allow "courts maximum discretion to prohibit new schemes to defraud."  *In re First Alliance Mortg. Co.,* 471 F.3d 977, 995 (9th Cir. 2006) (*citing Cel–Tech Comm.,* 20 Cal.4th at 180; *Searle v. Wyndham Int'l, Inc.*, 102 Cal.App.4th 1327 (2002)). To state a cause of action under the "fraudulent" prong of the UCL, "a plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question."  *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144, 1167 (2000).  "Instead, it is only necessary to show that members of the public are likely to be deceived."  *Podolsky v. First Healthcare Corp.,* 50 Cal.App.4th 632, 648 (1996).

Both the CLRA and FAL also adopt a standard similar to the UCL's fraudulent prong.  *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1144 (N.D. Cal. Apr. 1, 2013) ("False advertising and unfair or fraudulent business practices claims under the UCL, FAL or CLRA are governed by the "reasonable consumer" test.").  Thus, Plaintiff adequately states a cause of action under the UCL, CLRA, and FAL if he adequately alleges "that members of the public are likely to be deceived" by Defendant's labeling practices.  *Id.*

Conduct that is "likely to mislead a reasonable consumer" violates the CLRA.  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, (2006) (quoting *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 134 Cal. Rptr. 2d 420, 431 (2003)).  A "reasonable consumer" is "the ordinary consumer acting reasonably under the circumstances," who "is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture. . . ." *Id.*

(citing 1A CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 5:17 (4th ed. 2004)); *Ackerman*, 2013 U.S. Dist. LEXIS 184232 at *18-19.

Here, Plaintiffs allege that Defendant's marketing and labeling of the Products, taken as a whole, are likely to deceive a reasonable consumer into believing the protein content represented therein derives from the real protein source indicated.  As discussed above, Defendant features the name of a complete protein predominantly in the names of four of the Products: Inner Armour Mass Peak Whey Hydrolysate Enhanced, Nitro Peak Whey Protein Hydrolysate Enhanced, Casein Peak, and Whey Protein.  In the fifth Product, Super Quad Protein, a reasonable consumer would believe that the claimed protein content was derived from four different complete proteins.  Nowhere do these Products' names focus on the spiking agents.

Defendant responds that it does not expressly represent the Products' protein content as "pure whey protein" or in terms of whey protein per serving (Mot. at 14) but, as the above authorities establish, such literal falsity is not required; it is enough where, as here, deceptive representations to the same effect might reasonably be inferred.  Defendant's contention that its use of the term "enhanced" and its references to "protein*s*" (plural) undermines the reasonableness of Plaintiffs' interpretation of its labeling (*id.* at 16) is likewise without merit.  Touting a product's "enhancement" with some designer ingredient is a common practice in the extremely competitive supplement industry, but the logical interpretation of such claims is that such ingredients promote the product's general function, for example, by helping the body break down or absorb a greater portion of the per-serving real protein content indicated on the label.  Defendant's position that a reasonable consumer would understand "enhanced" to mean that a significant portion of Products' claimed protein content actually consists of free form amino acids and non-protein ingredients defies common sense.  Defendant's use of the term "enhanced" only makes its labels more misleading.

Similarly unavailing is Defendant's argument that the additional protein provided when the Products are mixed with milk would alert a reasonable consumer that the real proteins referenced in the Products' names and labeling comprise only about half of their prominently-indicated protein content.  (Mot. at 14.)  Logically, the additional 16 grams of protein provided

by milk do not consist solely of whey protein, but to expect consumers to note this inconsistency and to understand it to negate the much more definitive representations to the contrary on the Products' packaging is far from reasonable.

Defendant further deceives consumer by conspicuously describing only complete proteins in the "Complexes" and "Blends" listed in the Ingredient section, and omitting reference to the spiking agents. As a result, it is easy to understand how a reasonable consumer looking at these claims would be misled to believe that the protein content of the Products are derived exclusively from *complete* proteins.

Defendant's reliance on the Products' ingredient lists also is misplaced. A manufacturer cannot "mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Williams*, 552 F.3d at 939.[6] A reasonable consumer expects that an ingredient list contains more detailed information about the product confirming, not disclaiming, the other representations on the packaging. *Id.* at 939-40.[7]

Thus, Defendant cannot label the Products in a manner strongly suggesting that they contain specific amount of real protein and render this representation non-deceptive via a single, fine-print item in a lengthy ingredient list. Even if this practice was generally permissible, how Defendant's inclusion of "Amino-Peak Amino Acid Spiking Polypeptide Complex" would alert a reasonable consumer to the true nature of the Products' protein content is unclear. (Mot. at 14-15.) This ingredient is not readily identifiable as a source of the Product's claimed protein content and, to the extent Defendant highlights this ingredient to suggest a reasonable consumer is aware of "protein spiking" and should examine potential supplement purchases for evidence thereof, Defendant cites nor can Plaintiffs find any authority that would place so high a burden of

---

[6] Defendant commits the exact type of acts described by the *Williams* court. However, Defendant goes even further by placing on consumers the burden of understanding of how the Federal regulatory scheme allows for nitrogen testing of the protein content to be displayed in the Supplement Facts section of Product labels, and how such testing can result in inflated numbers if free-form amino acids are included in the Products. Unlike *Williams*, a reasonable consumer would gain no more knowledge regarding the true protein content when looking to the back of the labels — rather, he or she likely would be further misled.

[7] These same principles apply with equal force to nutritional panels. *See Ackerman*, 2010 WL 2925955 at *16 ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [a product's] labeling and marketing.") (citing *Williams*, 552 F.3d at 939-40).

knowledge and investigation on consumers.

The cases Defendant does cite are clearly distinguishable.  In *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013), plaintiff alleged that defendant soda manufacturer used an "all natural flavors" label to mislead consumers into believing that its diet soda contained no artificial ingredients, when in fact it contained artificial sweeteners and flavor enhancers.  *Id.* at 882.  Though decided on preemption grounds, the court noted, in *dicta*, that the facts of this case did "amount to the rare situation," *Williams*, 552 F.3d at 939, where a representation could be declared not deceptive as a matter of law because "even a cursory review" of the soda's packaging—noting multiple clearly artificial ingredients and clearly labeling it as a *diet* soda (which reasonable consumers understand as necessarily containing artificial sweeteners)—would definitively have dispelled plaintiff's overbroad reading of the "all natural flavors" claim.  *Viggiano*, 944 F. Supp. 2d at 892 n.38.

Yet, these principles from *Viggiano* and similar "all natural" cases cited therein are ill-suited to the very different claims, Products, and labeling at issue here.  First, Defendant's argument that the Products' front labels are definitively accurate (Mot. at 15), is a question of fact very much contested by the FAC.  Unlike *Viggiano*, this case does not involve the misinterpretation of a single representation, nor is there an applicable FDA regulation specifically approving this type of labeling, so Defendant's attempt to avail itself of any degree of additional deference given to representations that are literally true is overstated.

But even if the Product's front labeling *was* literally accurate (which it is not), Defendant's position that any misinterpretations thereof would be dispelled by a "cursory review" of the Products' labeling as a whole is incorrect.  As discussed above, it is quite logical for reasonable consumer to assume that a protein supplement with a complete protein in its very name and prominently identified on its labeling contains only that type of protein, and the mere presence of the highly ambiguous term "enhanced" — which might just as (if not more) likely refer to the presence of an added beneficial agent such as digestive enzyme rather than lesser, substitute proteins — does not undermine the reasonableness of this interpretation.  Likewise, to expect a consumer to ascertain the purported inconsistency between this interpretation and the

18

Products' protein data with and without milk, and to do so with sufficient knowledge and certainty to cause them to reject this initial interpretation, would impose a burden of vigilance on consumers far exceeding any construction of the "reasonable consumer" standard.

Finally, Defendant's argument that its listing of amino acid "spiking" agents in the Products' ingredient lists would correct the aforementioned misinterpretations in the mind of a reasonable consumer is particularly problematic.  Neither the names of these ingredients nor any other aspects of the Products' packaging indicate that these are sources of the Products' claimed protein content.  Moreover, Defendant's omission of these ingredients from each Products' protein "complex" or "blend" (which a consumer might reasonably believe to be the sources of the Products' protein content) further obscures the fact that Defendant factors these ingredients into its per-serving protein data.  Thus, the Products' ingredient lists and other less prominent representations are not only wholly insufficient to dispel, but also in fact reinforce, the false impressions given by the Products' primary labeling.

In *Ackerman*, defendant's compliance with the FDA-mandated nutritional labeling regulations, which disclosed the amount of sugar in the vitaminwater products, did not eliminate the possibility that reasonable consumers may be misled.  *Id.*, 2010 U.S. Dist. LEXIS 73156, at *56.  The FDCA (as well as the UCL, FAL, and CLRA) is predicated on the specific understanding that labeling can be technically correct but still deceptive to a reasonable consumer.  *See, e.g.*, *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) ("A reasonable consumer might make certain assumptions about the type and quantity of fruit in the Fruit Snacks based on the statement 'made with real fruit,' [although 'objectively true'] along with other statements prominently featured on the products' packaging."); *see also In re Ferrero Litig.*, 794 F. Supp. 2d at 1115 (reasoning the UCL and  FAL "have been interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (citing *Leoni v. State Bar,* 39 Cal.3d 609, 626 (1985)).

Defendant's analogy to *Bruton v. Gerber Products Co.*, 961 F. Supp. 2d 1062, 1098 (N.D. Cal. 2013), is similarly inapt.  Defendant does not represent that the Products are "*made*

*with*" the specific real protein identified on their respective naming and/or labelling; it represents that they *are* that type of protein—that is, that their protein content is attributable to such real protein. Granted Defendant, unlike some other manufacturers (Mot. at 15-16), does not expressly warranty this fact but, as explained above, an advertisement may be deceptive or misleading even if it contains no statement that is literally false. *See, e.g., Marty*, 43 F. Supp. 3d at 1340-42. And, while the misinterpretations engendered by the Products' primary labeling might be dispelled by other representations clearly indicating a contrary meaning, Defendant's further descriptions of the Products and their ingredients fail to provide any such clarification and actually reinforce the overall misconceptions about the Products' content that a reasonable consumer is likely to draw.

In light of the foregoing, Plaintiffs have more than adequately alleged that Defendant's labeling of the Products is likely to deceive or mislead a reasonable consumer. And, contrary to Defendant's present arguments, the Products' nutritional information and other less prominent representations are wholly insufficient to dispel—and may in fact reinforce—the resulting misconceptions. Accordingly, Plaintiffs' claims under the California and Florida consumer protection statutes should not be dismissed.

**E.    The Unjust Enrichment Claim Is Valid and Adequately Alleged**

As an initial matter, Defendant's argument in this regard, addressing only the viability of unjust enrichment claims under California law, provides no basis for dismissal under Florida law, which clearly does recognize unjust enrichment as an independent cause of action. *See, e.g., Marty*, 43 F. Supp. 3d at 1349-51.[8]

Defendant's argument is also misstated with respect to California law. California Courts in this district remain split on the issue of whether unjust enrichment is truly a stand-alone cause of action. *See Garrison v. Whole Foods Mkt. Group, Inc*., 13-CV-05222-VC, 2014 WL 2451290 at *6, 2014 U.S. Dist. LEXIS 75271 at *21 (N.D. Cal. June 2, 2014). And, whether or not labelled as an independent "claim," an unjust enrichment count should not be dismissed where,

---

[8]    Moreover, Florida case law establishes that unjust enrichment claims, unlike other equitable remedies, remain available even where plaintiffs have an adequate remedy at law. *See In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig*., 955 F. Supp. 2d 1311, 1337 (S.D. Fla. 2013); *see also Marty*, 43 F. Supp. 3d at 1349.

as here, it sounds in quasi-contract.  *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 904

(N.D. Cal. 2012) (declining to dismiss an unjust enrichment claim in a similar case involving the

deceptive and misleading labelling of food products); *Astiana v. Ben & Jerry's Homemade, Inc.*,

C 10-4387 PJH, 2011 WL 2111796, at *11 (N.D. Cal. May 26, 2011) (same).

Granted, an unjust enrichment claim will fail if it simply mirrors a plaintiff's other

statutory and common law claims.  *Garrison*, 2014 WL 2451290, at *6.  However, such is not

the case here.  Plaintiffs' unjust enrichment count alleges entitlement to restitution based merely

on Defendant's retention of the benefits they conferred, *see* FAC ¶ 112, an act Plaintiffs allege to

be improper regardless of whether it breaches any warranty or violates any consumer protection

statute.  This impropriety can be assessed without reference to Plaintiffs' rights or Defendant's

liability under any statutory or common law.  Accordingly, Plaintiffs' unjust enrichment claim is

clearly not wholly duplicative of their other causes of action. Plaintiffs' unjust enrichment claim

is properly pled under Florida and California law and should not be dismissed.

## F.    The Breach of Warranty Count Should Not Be Dismissed

"Under California law, '[a]ny affirmation of fact or promise made by the seller to the

buyer which relates to the goods and becomes part of the basis of the bargain creates an express

warranty that the goods shall conform to the affirmation or promise.'" *Johnson v. Triple Leaf

Tea, Inc.*, 2014 U.S. Dist. LEXIS 134111, *12 (N.D. Cal. Sept. 23, 2014) (*quoting* Cal. Com.

Code § 2313(1)(a)).[9]  Accordingly, "[a] food label can create an express warranty." *Ham v. Hain

Celestial Group, Inc.*, 2014 U.S. Dist. LEXIS 141157, *12 (N.D. Cal. Oct. 3, 2014) (collecting

cases); *see also In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 (holding representations on

Nutella's packaging constituted an express warranty).  And as noted above, "breach of warranty

claims are generally not preempted because they are not requirements '"imposed under State

law," but rather imposed by the warrantor.'" *Ackerman*, 2010 U.S. Dist. LEXIS 73156 at *23

---

[9]     "California Commercial Code § 2313, which defines express warranty, applies to
'transactions in goods.' *See also* Cal. Civ. Code § 1791.2(a)(1) (defining an 'express warranty'
as '[a] written statement arising out of a sale to the consumer of a consumer good pursuant to
which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or
performance of the consumer good or to provide compensation if there is a failure in utility or
performance')."  *Bohac v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41454, *28 (N.D. Cal. Mar.
26, 2014).

21

(quoting *Cipollone*, 505 U.S. at 525-26).

To state a claim for breach of express warranty, Plaintiff need only allege that the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Bohac v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41454, *28-29 (N.D. Cal. Mar. 26, 2014) (*quoting Rodarte v. Philip Morris, Inc.*, 2003 U.S. Dist. LEXIS 25067, 2003 WL 23341208, *7 (C.D. Cal, June 23, 2003)).

Plaintiffs state a claim for breach of warranty. Plaintiffs allege Defendant makes false, inflated affirmations of fact regarding the complete protein content of their Products, that they relied on such representations, and that they were injured as a result. (*E.g.*, FAC ¶¶ 23-27, 114-119.) This claim should not be dismissed.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety. If the Court finds the FAC deficient in any way, Plaintiffs respectfully request leave to amend.

Dated: April 10, 2015                           Respectfully submitted,


                                                **AHDOOT & WOLFSON, PC**

                                                /s/ Tina Wolfson
                                                Tina Wolfson, SBN 174806
                                                twolfson@ahdootwolfson.com
                                                Theodore Maya, SBN 223242
                                                tmaya@ahdootwolfson.com
                                                1016 Palm Avenue
                                                West Hollywood, California 90069
                                                Tel: 310-474-9111; Fax: 310-474-8585

                                                Nick Suciu III (*Pro Hac Vice*)
                                                **BARBAT, MANSOUR & SUCIU PLLC**
                                                434 West Alexandrine #101
                                                Detroit, MI 48201
                                                Tel: (313) 303-3472
                                                Email: nicksuciu@bmslawyers.com

1

Jonathan Shub
**KOHN, SWIFT & GRAF, PC**
Philadelphia, PA 19107
Tel: (215) 238-1700
Email: jshub@kohnswift.com

2

3

4

Jordan L. Chaikin (*Pro Hac Vice*)
**Parker Waichman LLP**
27300 Riverview Center Blvd., Suite 101
Bonita Springs, FL 34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055
Email: jchaikin@yourlawyer.com

5

6

7

8

Counsel for Plaintiffs,
MARTIN MEE and JUNIOR HERMIDA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28