Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

Nick Suciu III (*Pro Hac Vice*)
nicksuciu@bmslawyers.com
**BARBAT, MANSOUR & SUCIU PLLC**
434 West Alexandrine #101
Detroit, Michigan 48201
Tel: (313) 303-3472

Counsel for Plaintiffs,
MARTIN MEE and
JUNIOR HERMIDA

Jordan L. Chaikin (*Pro Hac Vice*)
jchaikin@yourlawyer.com
**PARKER WAICHMAN LLP**
27300 Riverview Center Blvd, Suite 103
Bonita Springs, FL 34134
Tel: (239) 390-1000; Fax (239) 390-0055

Jonathan Shub, SBN 237708
jshub@kohnswift.com
**Kohn Swift & Graf, PC**
One South Broad Street, Suite 2100
Philadelphia, PA19107
Tel: (215) 238-1700; Fax (215) 238-1968

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### San Francisco Division

| | |
|---|---|
| MARTIN MEE and JUNIOR HERMIDA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>I A NUTRITION, INC., a Connecticut corporation,<br><br>        Defendant. | Case No. 14-CV-05006 MMC<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>**1. Violations of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.***<br><br>**2. Violations of California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.***<br><br>**3. Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***<br><br>**4. Violations of Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 *et seq.***<br><br>**5. Unjust Enrichment**<br><br>**6. Breach of Express Warranty** |

Plaintiffs Martin Mee and Junior Hermida (collectively, "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, through their undersigned attorneys, allege upon personal knowledge as to themselves, and upon information and belief and the investigation of their Counsel as to the remaining allegations, as follows:

## INTRODUCTION

1.      This is a civil class action brought individually by Plaintiffs and on behalf of all persons and entities in the United States and the states of California and Florida ("Class Members"), who purchased the Inner Armour dietary supplements Mass Peak Whey Hydrolysate Enhanced, Nitro Peak Whey Hydrolysate Enhanced, Casein Peak, and Quad Protein (the "Products") manufactured by Defendant I A Nutrition, Inc. ("Defendant").

2.      Defendant designed, manufactured, warranted, advertised, and sold the Products throughout the United States, including in the states of California and Florida.

3.      Defendant makes numerous false and misleading claims on the labels of the Products.

4.      These false and misleading claims include, but are not limited to, claims regarding protein content, sources of protein content, and levels of Glutamine and Branched Chain Amino Acids ("BCAAs").

5.      In an effort to reduce protein-manufacturing costs, Defendant adds cheaper free form amino acids and non-protein ingredients to increase the advertised "protein" of the Products.  This practice is frequently called "protein spiking".

6.      As a result of Defendant's practices, the consumer is left with a Product that contains less actual protein than Defendant represents.  The free-form amino acids and non–protein ingredients Defendant counts for purposes of its inflated protein content claims simply do not possess the benefits and nutritional value of actual protein.

7.      General Nutrition Centers ("GNC"), one of the largest distributors in the United States of complete protein products, has publicly criticized protein spiking, claiming it to be misleading to consumers.  According to GNC, consumers cannot be sure that they are getting 100 percent protein in

CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

their products because companies don't always show how they figure total grams of protein per serving. *See* www.gnclivewell.com/realprotein (last visited Nov. 10, 2014).

8.     Not only has GNC condemned this deceptive practice, but the United States Food and Drug Administration ("FDA") has as well:

> "FDA requires that dietary supplements be labeled in a manner that is truthful and not misleading. With regard to the labeling of protein content, FDA's expectation for proper nutrition labeling is that firms will evaluate the protein content from actual protein sources—not other nitrogen-containing ingredients such as individual amino acids—and label the products consistent with the results of such evaluations," said FDA press officer Jennifer Dooren.
>
> ***
>
> The FDA says actual protein is what counts, and loading up on nitrogen-rich ingredients to inflate protein claims doesn't meet their standards.

http://www.forbes.com/sites/alexmorrell/2015/03/12/lawsuits-say-protein-powders-lack-protein-ripping-off-athletes/ (last visited May 29, 2015).

9.     The Food, Drug, and Cosmetic Act ("FDCA") also recognizes that amino acids are simply not protein. Under 21 CFR 101.36(b)(2), a manufacturer is restricted from claiming a product has any protein content if the product only contains amino acids.

10.    Industry leaders, the FDA and FDCA, and actual acknowledge the scientific fact that the free-form amino acids Defendant adds to its Products simply are not protein.

11.    Despite the knowledge that protein spiking is misleading to consumers, Defendant continues to advertise, distribute, label, manufacture, market, and sell the Products in a misleading and deceptive manner in order to increase its sales and maximize its profits. Beyond protein spiking, Defendant also makes numerous misleading claims regarding the protein content of the Products, including inflated protein count claims on the front labels of the Products that exceed even the "spiked" counts claimed on the back labels.

12.    Further, Defendant looks to differentiate its Products by claiming heightened levels of the specific free-form amino acids Glutamine and BCAAs.

13.     During the Class period commencing four years before the date of this filing, class members in California, Florida, and throughout the United States purchased the Products through the Vitamin Shoppe and numerous other brick and mortar and online retail stores.  Plaintiffs and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth in this Complaint.

## PARTIES

14.     Plaintiff Martin Mee is a resident of the City of San Francisco, California, and purchased the Products from the Vitamin Shoppe located at 1430 Van Ness Avenue, San Francisco, CA 94109, for his own use during the four years preceding the filing of this complaint.

15.     Plaintiff Junior Hermida is a resident of the City of Naples, Florida, and purchased the Products from the Vitamin Shoppe located in Estero, Florida on November 11, 2014, for his own use during the four years preceding the filing of this complaint.

16.     Defendant I A Nutrition, Inc. is incorporated in the State of Connecticut, with its principal place of business at 83 White Oak Drive, Berlin, Connecticut 06037.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed class members exceed $5,000,000[1] and because Defendant is a citizen of a different state than some of the members of the Classes.

18.     This Court has personal jurisdiction over Defendant because it regularly conducts business in this District.

19.     Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

---

[1] Defendant's Products are sold through numerous different online and brick/mortar retailers, including GNC, Vitamin Shoppe, and Bodybuilding.com.  Given the far-reaching distribution channels and high consumer demand for whey protein products, there are likely tens of thousands of class members in the proposed classes with tens of millions of dollars spent on the Products.

20.     Intradistrict Assignment: Pursuant to Civil Local Rules 3-2(c) a substantial part of the events or omissions which give rise to the claims occurred in San Francisco County, and it is therefore appropriate to assign this action to the San Francisco Division.

## FACTUAL ALLEGATIONS

### The Differences Between Complete Protein & Free Form Amino Acids

21.     Whey, casein, and milk are complete protein sources, which means they contain all the essential amino acids the human body needs to build protein-based compounds such as muscle tissue, skin, fingernails, hair, and enzymes.  Daily protein needs depend on one's size, gender, and activity levels, but likely amount to somewhere between 46 grams and 56 grams.  For elite athletes, daily protein requirements often are well over 100 grams, a need that is difficult to fulfill by simply ingesting food.  Others may also need to supplement their protein intake for reasons of ill health.

22.     Whey, casein, and milk are especially rich in branched chain amino acids ("BCAAs") – leucine, isoleucine, and valine – which are metabolized directly within the muscles as opposed to being processed in the liver first.

23.     The 2005 dietary reference intake (DRI) guidance from the National Academy of Sciences clearly defines protein as macromolecules with links of amino acids, and does not mention free-form amino acids or creatine.  Although amino acids are the building blocks of protein, they do not have the same beneficial effects of whole protein when they are free-form, and not part of an actual protein, partly because of the way protein is digested and absorbed by the body.  Several studies have shown that complete protein is absorbed more effectively than free-form amino acids.[2]

24.     At least one study was conducted to determine whether the effects of whey protein ingestion on muscle protein accrual are due solely to its constituent essential amino acid content.  The study was a comparison of three trial groups.  The first provided intact whey protein (whey protein powder).  The other two trials provided either the individual essential amino acids (*i.e.*, free-form) or the individual non-essential amino acids found in whey.  The researchers determined that whey protein

---

[2] *See, e.g.*, Mauro G. Di Pasquale, *Amino Acids and Proteins for the Athlete: The Anabolic Edge*, Second Edition (2007).

ingestion improves skeletal muscle protein accrual through mechanisms that are beyond those attributed to its essential amino acid content.[3]

25. Another study found that "the lack of recovery after immobilization-induced atrophy during ageing is due to an 'anabolic resistance' of protein synthesis to amino acids during rehabilitation." The study's results "highlight a novel approach to induce muscle mass recovery following atrophy in the elderly by giving soluble milk protein or high protein diets."[4]

26. Thus, as concluded by the authors of another study, "the bound form of an [essential amino acid] may be more efficiently utilized than when delivered in its free-form."[5]

///

///

///

///

///

///

///

---

[3] Christos S. Katsanos, *et al.*, *Whey Protein Ingestion in Elderly Results in Greater Muscle Protein Accrual than Ingestion of Its Constituent Essential Amino Acid Content*, Nutr. Res. Oct. 2008; 28(10):651-658, *abstract available at* < http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2612691/> (last visited June 1, 2015).
[4] Magne H, *et al.*, *Contrarily to Whey and High Protein Diets, Dietary Free Leucine Supplementation Cannot Reverse the Lack of Recovery of Muscle Mass After Prolonged Immobilization During Ageing*, J. Physiol. Apr 15, 2012; 590(Pt 8): 2035-2049.
[5] Terada T, Inui K, *Peptide Transporters: Structure, Function, Regulation and Application for Drug Delivery*, Curr Drug Metab. 2004; 5:85-94.

CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

**Defendant's Misleading Labeling of Mass-Peak Whey Hydrolysate Enhanced**

27.     Defendant prominently features "whey protein", the name of the ingredient sought by millions of American consumers, in the very name of the Product, "Mass Peak Whey Hydrolysate Enhanced":



CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

28.     On the front label, Defendant represents that this Product contains 66 grams of protein, but the back of the label, in the Supplement Facts section, Defendant represents that the Product contains only 50 grams of protein per serving:



29.     In addition, Defendant's claimed total protein count of 50 grams of protein per serving is not exclusively derived from complete proteins but also includes, for the purposes of "protein-spiking," several free form amino acids including Alanine, Trytophan, L-Glycine, and Taurine.

30.     Plaintiffs and Class Members looking at the name and label of the Mass-Peak Whey Hydrolysate Enhanced Product believe that the protein content of the Product is solely derived from the complete proteins listed, not free-form amino acids that simply are not protein.

31.     Also, the portions of the Products' labeling prominently representing that the Product contains 66 grams of protein are material, false, and likely to mislead a reasonable consumer, given that this per-serving protein content assumes the consumer adds 2 cups of whole milk.  This addition of whole milk is only disclosed in the Supplement Facts section of the label, in sharp contrast to the "66g" claim prominently featured on both the front and side labels.  The product in fact does not contain 66 grams of protein per serving, as Defendant warrants.

32.     Further, Defendant claims, on multiple areas on the Product's label, that the Product contains 24 grams of Glutamine and BCAAs.  This misrepresentation is placed together with the "66g" protein claim.  Thereby, Plaintiffs and Class Members were lead to believe that there were 24 grams of Glutamine and BCAAs per serving, consistent with the "66g" protein claim.  However, unlike the large bolded font used several times on the label for the "24 grams of Glutamine and BCAAs" claim, Defendant only discloses that the "24 gram" claim is for two servings with the addition of 2 cups of whole milk in fine print located below the Supplement Facts section.

///

///

///

///

///

///

///

///

///

///

///

CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

1    **Defendant's Misleading Labeling of Nitro Peak Whey Protein Hydrolysate Enhanced**

2         33.      Defendant prominently features "whey protein," the name of the ingredient sought

3    by millions of American consumers, in the very name of the Product, "Nitro Peak Whey Protein

4    Hydrolysate Enhanced":



CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

34.     Defendant represents this Product contains 48 grams of protein on the front of the label, but represents that it contains 24 grams of protein per serving under the "Supplement Facts" section on the back of the label:

### NITRO-PEAK™ by Inner Armour®

**Directions:** As a dietary supplement, mix 1 scoop with 5-6 oz of water or milk depending on your desired consistency. Use approximately 5-6 oz of liquid for each scoop of **NITRO-PEAK**™.  Additional servings may be used to meet your daily protein requirements.

| Supplement Facts | | |
|---|---|---|
| Serving Size: 1 Scoop (36g) | | |
| Servings Per Container: approximately 55 | | |
| Calories 140 | Calories from Fat 30 | |
| Amount Per Serving | | % Daily Value |
| Total Fat | 3 g | 5%** |
| Saturated Fat | 0.5 g | 3%** |
| Trans Fat | 0 g | |
| Cholesterol | 30 mg | 10%** |
| Calcium | 101 mg | 10%** |
| Sodium | 85 mg | 4%** |
| Potassium | 120 mg | 3%** |
| Total Carbohydrate | 7 g | 2%** |
| Dietary Fiber | 1 g | 4%** |
| Sugars | 3 g | † |
| Protein | 24 g | 48%** |

**NITRO-PEAK™ #1 Rated Protein Powder***

**ProNitro 7**™: Grade A Full Spectrum Bioactive Whey Protein Complex (containing Whey Protein Concentrate, Whey Protein Isolate and Hydrolyzed Whey Protein Isolates with naturally occurring critical bioactive compounds including di, tri and oligo peptides, beta-lactoglobulin, alpha-lactalbumin, serum albumin, and immunoglobulins), Glycine, Taurine, BCAAs (Leucine, Isoleucine, Valine), Micellar Casein Phosphoprotein Complex (containing Alpha, Beta and Kappa Casein), Milk Protein Isolate (containing 80% Casein and 20% Whey protein fractions), Amino-Peak™ Amino Acid Spiking Polypeptide Complex [containing Peptidase (Proteolytic Protein Maximizing Enzyme Complex)], Lactase.

**Other Ingredients:** Cocoa (processed with Alkali), Fructose, Natural and Artificial Flavors, Xanthan Gum, Salt, Silicon Dioxide and Sucralose®.

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.
†Daily value not established.

*as glutamic acid

**2 servings with water provides 48,000mg of Amino Acids including: 8.2g Glutamine†; 9.7g BCAAs (Leucine, Isoleucine and Valine).

35.     However, Defendant's claimed total protein count of 48 grams represented on the front of the label, or 24 grams per scoop represented on the back of the label in the "Supplement Facts" sections, is not derived exclusively from whey proteins but also includes, for the purposes of "protein-spiking," several free form amino acids, including Alanine, Trytophan, L-Glycine and Taurine.

36.     Plaintiffs and Class Members looking at the name and the label of the Nitro-Peak Whey Protein Hydrolysate Enhanced Product believe that the Product's claimed protein content is derived solely from the complete proteins listed, not the free-form amino acids that are not protein.

37.     Defendant claims, directly above the ingredient list, that Nitro-Peak is the "#1 Rated Protein Powder."  Plaintiff and Class Members were deceived into believing that this Product was comprised of actual protein, not useless fillers.

CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

38.     The representation that the Product contains the 48 grams of protein advertised on the front of the package is material and false and/or likely to mislead a reasonable consumer.  Directly above the "48g Protein" claim on the front of the label, Defendant states that there are 50 servings per container.  A reasonable consumer, looking at these two claims in such close proximity would believe that the product contained 48 grams of protein per serving.  However, as vaguely indicated in fine print below the "Supplement Facts" panel, the "48g" claim actually refers to the protein content in *two* servings of the Product.  Defendant restates the misleading "48 gram" protein claim numerous times on the front of the label.

### Defendant's Misleading Labeling of Casein-Peak

39.     Defendant prominently features "casein" protein, a complete protein,  in  the  very  name of  the  Product,  "Casein Peak":



## Supplement Facts

**Serving Size:** 1 Scoop (33g)   **Servings Per Container:** approx. 55

Calories 129          Calories from Fat  18

| Amount/Serving | | % Daily Value |
|---|---|---|
| Total Fat | 2 g | 3%** |
| Saturated Fat | 1 g | 5%** |
| Trans Fat | 0 g | |
| Cholesterol | 40 mg | 13%** |
| Calcium | 150 mg | 15%** |
| Sodium | 80 mg | 3%** |
| Potassium | 100 mg | 3%** |
| Total Carbohydrate | 4.5 g | 2%** |
| Dietary Fiber | 1 g | 4%** |
| Sugars | 1 g | † |
| Protein | 24 g | 48%** |

**Percent Daily Values are based on a 2,000 calorie diet. Your diet values may be higher or lower depending on your calorie needs.
† Daily value not established.

**Ingredients: Casein PEAK™:** Grade A Full Spectrum Bioactive Micellar Casein Phosphoprotein Complex (containing Alpha, Beta and Kappa Casein with naturally occurring critical bioactive compounds including di, tri and oligo peptides, beta-lactoglobulin, alpha-lactalbumin, serum albumin, immunoglobulins and protein fractions), Natural Rapid Recovery Cascade Stimulator™ (containing CreaPure® creatine, whey protein isolate, glycine and taurine).

CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

40.     However, Defendant's claimed total protein count of 24 grams represented on the front of the label is not exclusively derived from casein proteins but also includes, for the purposes of "protein-spiking," several free form amino acids, including Glycine and Taurine, and the non-amino acid creatine monohydrate.

41.     The Product's name, along with the "24g" protein claim misleads consumers to believe that the product's protein content is derived exclusively from Casein proteins.

42.     Further, Defendant places the false and misleading claim, "24 grams of Micellar Alpha, Beta, and Kappa Caseins" on the label of the product and Defendant's website:



**CASEIN PEAK**

**PREMIUM MICELLAR CASEIN COMPLEX**

24g Slow digesting Protein
4.5g Carbs
Gluten Free
Natural rapid recovery cascade stimulator˜ (Creapure˙ [creatine monohydrate], whey protein isolate, glycine and taurine)
Only 1 gram of sugar

Casein has been shown in clinical studies to be the greatest muscle protecting protein due to its unique prolonged releasing action. This provides a steady sustained release of amino acids into the bloodstream lasting for several hours.˙

Amino acids such as Glycine and Taurine have been added to Casein Peak to help stimulate what is one of the most critical bodily processes for recovery and growth.

Casein Peak is loaded with Branched-Chain Amino Acids (BCAAs, particularly Leucine) and Glutamine which have been shown in clinical studies to help stimulate greater muscle protein synthesis. Every serving of Casein Peak promotes and protects bigger muscles with 24 grams of Micellar Alpha, Beta and Kappa Caseins. Scientists believe casein and these amino acids to be superior for protecting and building muscle size and strength.˙

Every delicious serving of CASEIN PEAK™ promotes and protects bigger muscles with 24 grams of Micellar Alpha, Beta and Kappa Caseins (BCAA and L-glutamine rich protein) enhanced with Natural Rapid Recovery Cascade Aminos. Scientists have found casein and these amino acids to be superior for protecting and building muscle size and strength.˙ The end result is that CASEIN PEAK™ protects and enhances your ability to produce "speed X strength", or power. And when it comes to performance, power is what defines a great athlete.˙

CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

43. These claims concern a specific amount of specific casein proteins, not the total protein content listed in the Supplement Facts section of the Product. The specific casein claims Defendant makes on the label of the Product constitute an express warranty to consumers.

**Defendant's Misleading Labeling of Super Quad Protein**

44. Defendant represents in the name of the Product, "Super Quad Protein," that the Product is comprised of four ("Quad") different complete proteins:



45. Defendant represents the Product to contain 27 grams of protein on the front of the label, but states on the back label, in the Supplement Facts section, that it contains 24 grams of protein per serving.

46.     Defendant also discloses the four complete proteins under the Supplement Facts section of the label: Ultra-Filtered Whey Protein Concentrate, Ultra-Filtered Whey Protein Isolate, Micellar Casein, and Milk Protein Isolate.

47.     A reasonable consumer would believe, by looking at the name of the Product and the Supplement Facts section of the label, that the four complete proteins listed by Defendant were the sole proteins comprising the "Quad Protein" Product, not the useless non-protein fillers.

48.     However, Defendant's claimed total protein count of 27 grams— represented alongside such claims on the front of the label, separate and apart from the required nutritional disclosures on the back-label "Supplement Facts" section—is not derived exclusively from the "Quad" proteins but also includes, for the purposes of "protein-spiking," several free form amino acids,  including Taurine, L-Glutamine, L-Leucine, and L-Isoleucine.

**Why These Representations are Misleading**

49.     Although the back labels of the Products mention by name *some* free form amino acids, such as Glycine and Taurine, as well as the non-amino acid Creatine Monohydrate, Defendant does not explain that these ingredients make up a large portion of the claimed protein content.  Rather, by its misleading naming of the Products and representation of protein content without revealing the inclusion of protein spiking ingredients, Defendant purposefully misleads the consumer into thinking that the entire claimed protein content is derived from complete proteins.

50.     Defendant had full knowledge that it was using free-form amino acids and other non-protein ingredients to boost its protein content claims, yet it omitted this material fact, to the detriment of the Plaintiffs and Class Members.

51.     Defendant actually separates the complete proteins under the Supplement Facts section of the Products from the spiking agents, thereby admitting that these spiking agents are not protein, even though they include them in the protein content claims.

52.     The FDCA prohibits this type of misleading labeling in food:

> The labeling of a food which contains two or more ingredients may be
> misleading by reason (among other reasons) of the designation of such

14

food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18(b)

53.     In violation of 21 C.F.R. § 101.18(b), Defendant misleads consumers by referencing whey, milk, casein, or combinations of these complete proteins (Quad proteins), including in the name of the Products, while wholly failing to disclose the limited amount of such complete protein(s) the Products actually deliver or that the Products' prominently stated protein content is only fractionally composed of such complete protein(s).

54.     A reasonable consumer looking at the Products' names and claimed protein content would likely be misled into thinking that the grams of protein per serving claimed by Defendant are derived exclusively from the complete proteins.

55.     The false and misleading Product names, and Supplement Facts sections, taken together, misled the Plaintiffs and other Class Members into believing that the protein content of the Products is derived solely from whey, casein, and milk proteins.

56.     Plaintiffs and other Class Members were in fact misled by Defendant's representations regarding the true nature of the protein content.

57.     The difference between the value of the Products as promised and the Products actually sold is significant.  The amount of actual protein provided, and the measure of protein per serving, have real impacts on the benefits consumers received from the Products and the Products' true and actual value.

58.     Defendant's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular."

59.     California prohibits the misbranding of food in a way which parallels the FDCA through the Sherman Law, Cal. Health & Saf. Code § 109875, *et seq*.  The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular." *Id*.

CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

60.     The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA," as the food labeling regulations of California Cal. Health & Saf. Code, § 110100, subd. (a).

61.     Defendant's deceptive statements also violate Florida Statutes § 500.11(1)(a), which also deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular."

62.     Further, federal statutes and regulations require that all ingredients added to a food product for their functional effect to be listed in descending order of predominance. *See* 21 U.S.C. § 343(i); 21 C.F.R. §§ 101.2, 101.4, 101.100(a)(3)(ii)(c). Failure to list an ingredient, or listing ingredients that are not contained in a product, shall render a food misbranded and therefore its sale will be deemed unlawful. 21 U.S.C. §§ 343(a), 331(a).

63.     The above laws, and all regulations enacted pursuant thereto, are incorporated into Florida and California law, through Florida Statute § 500.11(1)(a) and California's Sherman Law. Thus, a violation of federal food labeling laws is an independent violation of California and Florida law and is actionable as such.

64.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

65.     Plaintiffs and Class Members would not have purchased the Products, or would not have paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

## CLASS ACTION ALLEGATIONS

66.     Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the class and subclasses ("the Classes") defined as follows:

> **National Class:**  All persons in the United States who purchased the Products at any time from November 13, 2010, to the present.

> **California Subclass:**  All persons in the State of California who purchased the Products at any time from November 13, 2010, to the present.

**Florida Subclass:** All persons in the State of Florida who purchased the Products at any time during the four years from November 13, 2010, to the present.

67.     Excluded from the Classes are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned, any member of the judge's immediate family, and the courtroom staff.

68.     The Class Members are so numerous that joinder of all members is impracticable.  On information and belief, the Classes have more than 10,000 members.  Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

69.     There are numerous questions of law and fact common to Plaintiffs and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

    a.     The true nature of the protein content of the Products;

    b.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

    c.     Whether Defendant's actions violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*;

    d.     Whether Defendant's actions violate California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*;

    e.     Whether Defendant's actions violate California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

    f.     Whether Defendant's actions violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.;*

    g.     Whether Defendant was unjustly enriched at the expense of the Plaintiffs and Class Members; and

    h.     Whether Defendant breached its express warranties to Plaintiffs.

70.     Plaintiffs' claims are typical of the claims of the Classes.  Plaintiffs' claims, like the claims of the Classes, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

71.     Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs have retained competent and capable attorneys with significant experience and complex and class action litigation, including consumer class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Classes.

72.     Defendant has engaged in a common course of conduct toward Plaintiffs and members of the Classes.  The common issues arising from this conduct that affect Plaintiffs and members of the Classes predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

73.     A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide relief is necessary to compel Defendant to keep such adulterated and misbranded products out of the market and to compensate those who have been misled into purchasing the Products.  The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are limited because the damages in an individual action are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because Defendant acted or failed to act on grounds generally applicable to the Classes.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

74.     Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief appropriate on a class wide basis.

### FIRST CAUSE OF ACTION
**Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et. seq.*
(On Behalf of the California Subclass Members)**

75.     Plaintiffs incorporate each preceding factual allegation as if fully set forth herein.

76.     Plaintiff Mee and each member of the California Subclass is a "Consumer," as that term is defined by Cal. Civ. Code § 1761(d).

77.     The Products are a "Good," as that term is defined by Cal. Civ. Code § 1761(a).

78.     Defendant is a "Person," as defined by Cal. Civ. Code § 1761(c).

79.     The transaction(s) involved here are "Transaction(s)," as defined by Cal. Civ. Code § 1761(e).

80.     Plaintiff Mee and members of the California Subclass are Consumers who purchased the Products for personal use within the applicable statute of limitations period.

81.     Plaintiff Mee has standing to pursue this cause of action because he has suffered injury-in-fact and has lost money or property as a result of Defendant's actions as set forth here.

82.     Plaintiff Mee and California Subclass members purchased the Products in reliance on Defendant's labeling and marketing claims.

83.     Defendant's practices constitute violations of Cal. Civ. Code § 1770 in at least the following respects:

(a)     in violation of Section 1770(a)(2), Defendant misrepresented the source of the Products' protein as whey, casein, and/or milk proteins, when the Products are also spiked with free form amino acids;

(b)     in violation of Section 1770(a)(5), Defendant represented that the Products have characteristics and benefits (whey, casein, and/or milk protein per serving) that they do not have, because they contain less whey, casein, and/or milk protein per serving than indicated;

(c)     in violation of Section 1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade (whey, casein, and/or milk protein per serving), when they are of another (containing less whey, casein, and/or milk protein per serving than indicated);

(d)     in violation of Section 1770(a)(9), Defendant advertised the Products as containing a certain amount of whey, casein, and/or milk protein per serving with the intent not to sell them as advertised; and

(e)     in violation of Section 1770(a)(16), Defendant represented that the Products were supplied in accordance with previous representations (whey, casein, and/or milk protein per serving), when in fact they were not (because they contain less whey, casein, and/or milk protein per serving than indicated).

CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

74.     Defendant knew or should have known that its representations of fact were material and likely to mislead consumers.

75.     Defendant's practices, acts, and course of conduct in marketing and selling the Products were likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.  Like Plaintiff Mee, members of the California Subclass would not have purchased the Products had they known the true amount of whey, casein, and/or milk protein in the Products.

76.     Plaintiff Mee and members of the California Subclass have been directly and proximately damaged by Defendant's actions.

77.     In conjunction with filing this Complaint, Plaintiffs' Counsel mailed to Defendant, by certified mail, return receipt requested, the written notice required by Civil Code §1782(a), which Defendant received at least thirty days prior to filing this Amended Complaint.  Accordingly, Plaintiff Mee seeks monetary damages, including restitution and disgorgement, along with the other equitable relief requested.

78.     Defendant has engaged in, and continues to engage in, business practices in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, by continuing to make false and misleading representations on the Products' labels.

79.     These business practices are misleading and/or likely to mislead Consumers and should be enjoined.

## SECOND CAUSE OF ACTION
**Violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of the California Subclass Members)**

80.     Plaintiffs incorporate each preceding factual allegation as if fully set forth herein.

81.     Plaintiff Mee and the California Subclass have standing to pursue a cause of action for false advertising under the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL"), because Plaintiff Mee and members of the California Subclass have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

82.     Defendant advertised, marketed, and otherwise disseminated misleading information to the public through the product labels.

83.     Defendant continues to disseminate such statements.

84.     Defendant's statements are misleading.

85.     Defendant knew that these statements are misleading, or could have discovered their misleading nature with the exercise of reasonable care.

86.     Plaintiff Mee and the California Subclass members relied on Defendant's marketing and labeling.

87.     Defendant's actions violate the FAL.

88.     As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff Mee and the California Subclass members who paid for the Products.  Therefore, Defendant has been unjustly enriched.

89.     Plaintiff Mee and the California Subclass members seek injunctive relief, restitution, and disgorgement of Defendant's ill-gotten gains, as provided for by Cal. Bus. & Prof. Code § 17535.

90.     Plaintiff Mee and the California Subclass members seek injunctive relief to compel Defendant from continuing to engage in these wrongful practices in the future. No other adequate remedy at law exists. If an injunction is not ordered, Plaintiff Mee and California Subclass members will suffer irreparable harm and/or injury.

### THIRD CAUSE OF ACTION
**Violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*
(On Behalf of the California Subclass Members)**

91.     Plaintiffs incorporate each preceding factual allegation as if fully set forth herein.

92.     Plaintiff Mee and the California Subclass have standing to pursue a cause of action for false advertising under the Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq.* (the "UCL"), because Plaintiff Mee and members of the California Subclass have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

93.     Defendant's actions as described herein constitute unfair competition within the meaning of the UCL, in that Defendant has engaged in fraudulent business practices by falsely advertising the Products' complete-protein content.

94.     Defendant's actions as described herein constitute unfair competition within the meaning of the UCL, in that Defendant has engaged in illegal business practices by violating

21

California's Sherman Food, Drug, and Cosmetic Law and California's Consumers Legal Remedies Act.

95.     Defendant's actions as described herein constitute unfair competition within the meaning of the UCL, on the additional grounds that Defendant has engaged in illegal business practices by failing to properly label the Products in accordance with 21 C.F.R. 101, *et seq.*

96.     Defendant's actions also constitute unfair competition within the meaning of the UCL, in that Defendant has made unfair, deceptive, untrue, or misleading statements in advertising mediums, including the Product labels, in violation of the UCL.

97.     Defendant's actions have caused economic injury to Plaintiff Mee and the California Subclass members.  Plaintiff Mee and the California Subclass members would not have purchased the Products had they known the true nature of the Products' whey, casein, and/or milk protein content.

98.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff Mee and the California Subclass seek an injunction enjoining Defendant's continued marketing, advertisement, and sale of the Products without first complying with federal and state law, and barring Defendant from continuing to engage in unfair competition or any other act prohibited by law.

99.     Plaintiff Mee and the California Subclass also seek an order requiring Defendant to make full restitution and disgorgement of their ill-gotten gains of all money wrongfully obtained from Plaintiff Mee and California Subclass members, as permitted by Cal. Bus. & Prof. Code § 17203.

### FOURTH CAUSE OF ACTION
**Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*
(On Behalf of the Florida Subclass Members)**

100.     Plaintiffs incorporate each preceding factual allegation as if fully set forth herein.

101.     This action is brought on behalf of Plaintiff Hermida and the Florida Subclass members to secure redress for the unlawful, deceptive, and unfair trade practices perpetrated by Defendant.

102.     Plaintiff Hermida and the Florida Subclass Members are "consumers" and the transactions at issue in this complaint constitute "trade or commerce" as defined by Florida Statutes § 501.203(7) and (8), respectively.

103. The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 502.201, *et seq.* ("FDUTPA"), was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

104. Defendant's actions, as alleged herein, constitute affirmative acts or representations, including unconscionable commercial practices, deception, fraud, false pretense, false promise, and/or misrepresentation, and are therefore unlawful under FDUTPA.

105. When a FDUPTA claim is based on an affirmative act or representation, neither intent to deceive by Defendant, nor actual reliance by Plaintiff, need be shown.

106. Defendant's actions, as alleged herein, constitute knowing omissions and are therefore unlawful under FDUTPA.

107. Plaintiff Hermida and the Florida Subclass reasonably and justifiably relied on Defendant's deceptive, unfair, fraudulent conduct and misrepresentations, as alleged herein. Plaintiff Hermida and members of the Florida Subclass and the public were certain to be deceived because Defendant knowingly failed to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of the Products. Defendant's business practices in its advertising, marketing, packaging, labeling, and sale of the Products, as providing the represented amount of complete protein, constitute unconscionable, unfair, and deceptive acts or practices in violation of FDUPTA.

108. As a direct and proximate result of Defendant's unlawful acts and omissions, Plaintiff Hermida and the Florida Subclass have suffered an ascertainable loss of money or property, in that they would not have purchased the Products but for Defendant's material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Products.

109. Plaintiff Hermida and the Florida Subclass Members are entitled to compensatory damages, equitable and declaratory relief, costs, and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of the National Class)

110. Plaintiffs incorporate each preceding factual allegation as if fully set forth herein.

111.    Plaintiffs and National Class Members conferred benefits on Defendant by purchasing the Products.

112.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and National Class Members' purchase of the Products.  Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs and National Class Members because they would not have purchased the Products, or would not have paid as much for them, if the true facts would have been known.

113.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and the National Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the National Class Members for their unjust enrichment, as ordered by the Court.

## SIXTH CAUSE OF ACTION
### Breach of Express Warranty
### (On Behalf of the National Class)

114.    Plaintiffs incorporate each preceding factual allegation as if fully set forth herein.

115.    Plaintiffs, and each member of the National Class, formed a contract with Defendant at the time they purchased the Products.  The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.  These labeling, marketing, and advertising representations constitute express warranties, as they were the basis of Plaintiffs' and Class Members' bargains in purchasing the Products and became part of the standardized contract each entered into with Defendant through their respective purchases.

116.    Through its advertising, labeling, marketing, and packaging of the Products, Defendant expressly warranted that the Products contained specific amounts of whey, casein, and milk proteins, Glutamine, and BCAAs.

117.    Plaintiffs and the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

118.    Defendant breached these express warranties because Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises

24

described above. Plaintiffs and National Class Members would not have purchased the Products had they known the true nature of the Products' ingredients and what the Products did and did not contain.

119. As a result of Defendant's breach of warranty, Plaintiffs and National Class Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

## **PRAYER FOR RELIEF**

Plaintiffs request for the following relief:

A.    Certification of the proposed National Class;

B.    Certification of the proposed California Subclass;

C.    Certification of the proposed Florida Subclass;

D.    Appointment of Plaintiffs as class representatives;

E.    Appointment of the undersigned counsel as counsel for the Classes;

F.    A declaration that Defendant's actions complained of herein violate the consumer protection statutes of California and Florida;

G.    A declaration that Defendant was unjustly enriched;

H.    A declaration that Defendant breached its express warranties;

I.    An order enjoining Defendant from engaging in the unlawful conduct set forth herein;

J.    An order compelling Defendant to conduct corrective advertising;

K.    Awards of restitutionary, actual, statutory, and punitive damages;

L.    An award to Plaintiffs and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

M.    Leave to amend this First Amended Complaint to conform to the evidence presented at trial; and

N.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

1

## JURY DEMAND

2

Plaintiffs demand a trial by jury for all issues so triable.

3

4      Dated:  June 1, 2015                    Respectfully submitted,
                                              **AHDOOT & WOLFSON, PC**
5

6

7                                             Tina Wolfson
                                              1016 Palm Avenue
8                                             West Hollywood, CA 90069
                                              Tel: (310) 474-9111
9                                             Fax: (310) 474-8585
                                              Email: twolfson@ahdootwolfson.com
10

11                                            Nick Suciu III (*Pro Hac Vice*)
                                              **BARBAT, MANSOUR & SUCIU PLLC**
12                                            434 West Alexandrine #101
                                              Detroit, MI 48201
13                                            Tel: (313) 303-3472
                                              Email: nicksuciu@bmslawyers.com
14

15                                            Jonathan Shub, SBN 237708
                                              **Kohn Swift & Graf, PC**
16                                            One South Broad Street, Suite 2100
                                              Philadelphia, PA19107
17                                            Tel: (215) 238-1700
                                              Fax (215) 238-1968
18                                            jshub@kohnswift.com

19                                            Jordan L. Chaikin (*Pro Hac Vice*)
                                              **Parker Waichman LLP**
20                                            27300 Riverview Center Blvd, Suite 103
                                              Bonita Springs, FL 34134
21                                            Telephone: (239) 390-1000
                                              Facsimile: (239) 390-0055
22                                            Email:  jchaikin@yourlawyer.com

23

24                                            Counsel for Plaintiffs,
                                              Martin Mee and Junior Hermida
25

26

27

28

CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT

**AFFIDAVIT OF TINA WOLFSON**

I, Tina Wolfson, declare as follows:

1.       I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiffs Martin Mee and Junior Hermida in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.       Based on my research and personal knowledge, Defendant I A Nutrition, Inc. ("Defendant") does business within the County of San Francisco and Plaintiff Mee purchased Defendant's products within the County of San Francisco, as alleged in the Second Amended Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 1st day of June, 2015 in West Hollywood, California that the foregoing is true and correct.

_____
Tina Wolfson

CASE NO. 14-CV-05006 MMC; SECOND AMENDED CLASS ACTION COMPLAINT