Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
Theodore Maya, SBN 223242
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

Additional Counsel on Signature Page

Counsel for Plaintiffs,
MARTIN MEE and JUNIOR HERMIDA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MARTIN MEE and JUNIOR HERMIDA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>I A NUTRITION, INC., a Connecticut corporation,<br><br>Defendant. | CASE NO. 3:14-cv-05006-MMC<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date:  August 7, 2015<br>Hearing Time:  9:00 a.m.<br>Action Filed:    November 13, 2014<br><br>Hon. Maxine M. Chesney |

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

II.     ALLEGATIONS IN THE SECOND AMENDED COMPLAINT ............. 2

III.    ARGUMENT ........................................................................................... 4

        A.    STANDARD OF REVIEW ............................................................ 4

        B.    THE SECOND AMENDED COMPLAINT'S FALSE LABELING
              CLAIMS ARE NOT PREEMPTED ............................................... 5

              1.    The Labeling Claims for Mass-Peak and Nitro-Peak
                    Are Not Preempted Because They Are Based Solely
                    on Misleading Labeling Practices Barred by the
                    FDCA and Would Impose No New or Different
                    Labeling Requirements ....................................................... 5

              2.    Plaintiffs' Claims Regarding Casein Peak
                    Are Not Preempted Because FDA Testing is
                    Not Required for the Amino-Acid Content Claims
                    and is Immaterial to Plaintiffs' Other Misleading
                    Labeling Claims, Wherein the Ultimate Accuracy of
                    Defendant's Numerical Representations is Immaterial .................. 10

        C.    DEFENDANT'S LABELING IS LIKELY TO DECEIVE A
              REASONABLE CONSUMER .................................................... 11

              1.    The Consumer Protection Laws Plaintiffs Invoke. ........................ 11

              2.    Defendant's False Labels Violate These State Laws. ..................... 12

              3.    The Cases Defendant Cites Do Not Absolve It of
                    Liability for Its False Advertising Here. ........................... 14

        D.    THE UNJUST ENRICHMENT CLAIM IS VALID AND ADEQUATELY
              ALLEGED ................................................................................ 16

        E.    THE BREACH OF WARRANTY COUNT SHOULD NOT BE
              DISMISSED .............................................................................. 17

IV.     CONCLUSION ...................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Ackerman v. Coca-Cola Co.*,
No. CV-09-0395 (JG), 2010 WL 2925955, 2010 U.S. Dist. LEXIS 73156 at *23
(E.D.N.Y. July 21, 2010) ................................................................................... 11

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ........................................................................................ 4

*Astiana v. Ben & Jerry's Homemade, Inc.*,
C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ........................... 17

*Bohac v. Gen. Mills, Inc.*,
2014 U.S. Dist. LEXIS 41454 (N.D. Cal. Mar. 26, 2014) ............................... 17, 18

*Bruton v. Gerber Products Co.*,
961 F. Supp. 2d 1062 (N.D. Cal. 2013) ............................................................. 15

*Cipollone v. Liggett Group*,
505 U.S. 504 (1992) ..................................................................................... 10, 18

*Garrison v. Whole Foods Mkt. Group, Inc.*,
13-CV-05222-VC, 2014 WL 2451290, 2014 U.S. Dist. LEXIS 75271 (N.D. Cal. June
2, 2014) ...................................................................................................... 16, 17

*Gubala v. CVS Pharm., Inc.*,
14 C 9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015) ................................. 6, 9

*Ham v. Hain Celestial Group, Inc.*,
2014 U.S. Dist. LEXIS 141157 (N.D. Cal. Oct. 3, 2014) .................................... 17

*In re Ferrero Litig.*,
794 F. Supp. 2d 1107 (S.D. Cal. 2011) .................................................. 11, 15, 17

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ............................................................................. 11

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*,
955 F. Supp. 2d 1311 (S.D. Fla. 2013) .............................................................. 16

*Johnson v. Triple Leaf Tea, Inc.*,
2014 U.S. Dist. LEXIS 134111 (N.D. Cal. Sept. 23, 2014) .................................. 17

*Jones v. ConAgra Foods, Inc.*,
912 F. Supp. 2d 889 (N.D. Cal. 2012) ............................................................... 16

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lam v. Gen. Mills, Inc.*,
  859 F. Supp. 2d 1097 (N.D. Cal. 2012) (cited in Mot. at 8) ............................................ 14, 15

*Marty v. Anheuser-Busch Cos.*,
  43 F. Supp. 3d 1333 ...................................................................................................... 11, 16

*Matrixx Initiatives, Inc. v. Siracusano*,
  131 S.Ct. 1309 (2011) ............................................................................................................ 4

*Parks Sch. of Bus. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ................................................................................................. 4

*Rahman v. Mott's LLP*,
  No. 13-3482 SI, 2014 U.S. Dist. Lexis 147102 (N.D. Cal. Oct. 15, 2014) (cited in
  Mot. at 8) ............................................................................................................................. 14

*Rodarte v. Philip Morris, Inc.*,
  2003 U.S. Dist. LEXIS 25067, 2003 WL 23341208 (C.D. Cal, June 23, 2003) ................... 18

*Saeidian v. The Coca-Cola Co.*,
  2:09-cv-06309-SJO-JPR (C.D. Cal. July 6, 2015) ............................................................ 5, 9

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ............................................................................................... 4

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................. 10, 11, 14

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ............................................................................ 11, 12

**STATE CASES**

*Colgan v. Leatherman Tool Grp., Inc.*,
  135 Cal. App. 4th 663 (2006) ............................................................................................... 12

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ......................................................................................................... 10

*Leoni v. State Bar*,
  39 Cal. 3d 609 (1985) ..................................................................................................... 10, 15

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  61 Cal. Rptr. 3d 221 (Cal. Ct. App. 2007) ......................................................................... 11

*McKell v. Washington Mut., Inc.*,
  49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006) ......................................................................... 11

*Nagel v. Twin Labs., Inc.*,
  109 Cal. App. 4th 39, 134 Cal. Rptr. 2d 420 (2003) ............................................................. 12

*Podolsky v. First Healthcare Corp.*,
    50 Cal. App. 4th 632 (1996) ................................................................................ 11

*Schnall v. Hertz Corp.*,
    78 Cal. App. 4th 1144 (2000) .............................................................................. 11

*Searle v. Wyndham Int'l, Inc.*,
    102 Cal.App.4th 1327 (2002) .............................................................................. 11

**FEDERAL STATUTES**

21 U.S.C. § 343(r)(6) ................................................................................................ 2

**STATE STATUTES**

Cal. Civ. Code § 1791.2(a)(1) .................................................................................. 17

Cal. Com. Code § 2313(1)(a) .................................................................................. 17

California Commercial Code § 2313 ........................................................................ 17

**RULES**

Fed. R. Civ. P. 12 ...................................................................................................... 4

**REGULATIONS**

21 C.F.R. § 100.1(c)(4) .............................................................................................. 5

21 C.F.R. § 101.18 ..................................................................................... 5, 7, 9, 10

21 C.F.R. § 101.18(b) ................................................................................................ 2

21 CFR 101.9 ........................................................................................................... 10

21 CFR 101.9(g)(3)(i) .............................................................................................. 12

21 CFR 101.9(g)(3)(ii) ............................................................................................. 12

21 CFR 101.9(g)(4)(i) ......................................................................................... 12, 13

58 FR 2229-01 ........................................................................................................... 6

**OTHER AUTHORITIES**

CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 5:17 (4th ed.
    2004) ................................................................................................................... 12

iv

## I.   __INTRODUCTION__

This case is about the misleading labels of Inner Armour Mass Peak Whey Hydrolysate Enhanced, Nitro Peak Whey Protein Hydrolysate Enhanced, Casein Peak, Whey Protein, and Super Quad Protein (collectively, the "Products"), which were designed by Defendant IA Nutrition, Inc. ("Defendant") to induce reasonable consumers to pay an inflated price for products that contain substantially less protein, and other ingredients, than represented.

Federal law permits Defendant to test the Products' protein content, as stated on the Supplement Facts section of the Products' labels, in the manner it does.  However, contrary to Defendant's position in its Motion to Dismiss (the "Motion"), Defendant is *not* immune from liability for falsely and misleadingly labeling and marketing the Products on their labels.  Federal preemption is very narrow and both federal and state law prohibits Defendant from using labels that are false or misleading in any particular.  These false and misleading claims include, but are not limited to, claims regarding protein content, the sources of the protein content, and levels of Glutamine and Branched Chain Amino Acids ("BCAAs").  This case is not about the testing methods Defendant uses, but rather the false and misleading labeling of the Products.

The federal regulations concerning nitrogen-testing for protein content on which Defendant's preemption arguments rely do not speak to, much less insulate Defendant from liability for, Defendant's inflated protein claims on the Products' front labels.  Defendant cannot argue that these federal regulations allow it to misleadingly claim protein levels that add protein from whole milk (with respect to Defendant's Mass-Peak Whey Product), or double the serving size (with respect to Defendant's Nitro Peak Whey Product), based on its already inflated, spiked, claimed protein levels.  Defendant goes so far as to admit that its Super Quad Protein Product includes a "misprint" on the front label, but invokes another regulation that is entirely inapplicable to Defendant's protein powder Products to ineffectually argue that even this admittedly false statement cannot subject Defendant to liability.  (Motion at 9 n.11; *see* argument *infra* § III.C.2.)  All of the false label statements identified in the SAC are likely to deceive reasonable consumers and, thus, actionable.

No aspect of Plaintiffs' Second Amended Complaint ("SAC") is preempted, and Plaintiffs state claims upon which relief can be granted in each cause of action.  Defendant's Motion should be denied.

## II.     ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Plaintiffs do not allege that Defendant uses an improper testing method to calculate its protein content as displayed in the Supplement Facts sections of the Products' labels, but that the Products bear other misleading label claims regarding protein content, sources of the protein content, and levels of Glutamine and Branched Chain Amino Acids ("BCAAs").  SAC ¶¶ 11-12. These misleading claims are not based on the Defendant's manipulation of allowable testing methodology, but rather on specific false and misleading claims Defendant employs to manipulate consumers.

For instance, on the front label of its Super Quad Protein Product, Defendant claims that it contains "27g" of protein.  *Id*. ¶ 45.  In the Supplement Facts section on the back label, however, Defendant discloses that this Product contains only 24 grams of protein per serving — a figure that, though presumably calculated in accordance with the nitrogen-testing method endorsed in federal regulations, is inflated through "protein-spiking" — the addition of cheaper, free form amino acids that do not deliver the same benefits as whole protein that consumers naturally assume these figures represent. *Id*. ¶¶ 21-26, 48.

Defendant represents, on the front label of Mass-Peak Whey Hydrolysate Enhanced, that this Product contains 66 grams of protein. This material representation—repeated 4 times in bold print around the top of the label—is false and is likely to mislead a reasonable consumer as, in fact, the 66 grams of protein per serving is only reached if the consumer adds 2 cups of whole milk, a fact only disclosed much less prominently in the Supplement Facts section of the label. Therefore, the Product in fact does not contain 66 grams of protein per serving, as Defendant warrants.  *Id*. ¶ 31.  Further, Defendant also prominently and repeatedly represents, alongside the "66g protein" claim, that the Product contains 24 grams of Glutamine and BCAAs.  Plaintiffs and Class Members were lead to believe that there were 24 grams of Glutamine and BCAAs per serving, consistent with the "66g" protein claim.  However, not only does figure likewise take into

2

account the addition of whole milk, but, as Defendant only discloses in fine print below the Supplement Facts table, this "24g" representation actually represents what is contained in *two* servings—that is, in over 3/4 of a pound of the Product and a quart of whole milk. *Id.* ¶ 32.

Defendant represents, in bold lettering on the front label of Nitro-Peak Whey Protein Hydrolysate Enhanced, that this Product contains "48g Protein," a claim made alongside an equally prominent representation that the 4-pound container constitutes 50 servings of the Product. This material representation is false and/or misleading, as a reasonable consumer, looking at these two claims in such close proximity, would believe the Product provides 48 grams of protein per serving. However, as Defendant only discloses in fine print below the Supplement Facts table, this "48g Protein" representation actually represents what is contained in *two* servings of the Product, so the per-serving protein content Plaintiffs and Class Members actually received was just 24 grams. Defendant restates the misleading "48-gram" protein claim numerous times on the front of the label. *Id.* ¶ 38.

All of the Products are deceptively named, in violation of 21 C.F.R. § 101.18(b) and 21 USCS § 343(r)(6). For instance, Defendant prominently features "Whey Protein"—the complete protein sought by millions of American consumers—in the very name of its "Nitro-Peak Whey Protein Hydrolysate Enhanced" Product. SAC ¶ 33. Then, Defendant includes only complete proteins under its description of the "Grade A Full Spectrum Bioactive Whey Protein Complex" contained in the Product, and does not include various spiking agents the Product contains (including Glycine, Taurine, Leucine, Isoleucine, and Valine) within this "Complex." *Id.* ¶ 34.

Similarly, Defendant prominently features "Whey" in the very name of "Mass-Peak Whey Hydrolysate Enhanced." *Id.* ¶ 27. Then Defendant includes only complete proteins, and does not include the spiking agents, under its description of the "Grade A Full Spectrum Bioactive Whey Protein Complex" contained in the Product. *Id.* ¶ 28. Defendant prominently features Casein protein—a complete protein—in the very name of the Product "Casein Peak." *Id.* ¶ 39. Then Defendant includes only complete proteins under its description of the "Grade A Full Spectrum Bioactive Micellar Casein Phospoprotein Complex" contained in the Product, and

does not include the spiking agents within this "Complex." *Id*. Defendant prominently features "Whey Protein" in the very name of the Product it calls "Whey Protein," which also includes spiking agents. *Id*. ¶ 44. Defendant represents that the Product it calls "Super Quad Protein" is comprised of four ("Quad") different complete proteins. *Id*. ¶ 47. Then Defendant lists four ("quad") different complete proteins, but omits the spiking agents, in its description of the "Ultra Pure Extended Release Whey Protein Blend" contained in the Product. *Id*.

Defendant actually separates the complete proteins under the Supplement Facts section of all the Products from the spiking agents, thereby admitting that these spiking agents are not protein, even though it includes them in the protein content claims. *Id*. ¶ 53. Defendant's false and misleading names for the Products, and its misleading descriptions of the "Complexes" and "Blends" they contain in the Ingredients sections of its labels, taken together, mislead consumers into believing that the protein content of the Products is derived solely from complete proteins. *Id*. ¶ 51.

Based on these allegations, Plaintiffs' Second Amended Complaint asserts that the classes should be certified and that Defendant should be held liable for violations of California's and Florida's consumer protection acts (First through Fourth Causes of Action), unjust enrichment (Fifth Cause of Action), and breach of express warranty (Sixth Cause of Action). *Id*. ¶¶ 77-119.

### III.    <u>ARGUMENT</u>

### A. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the nonmoving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Ultimately, the Court may not dismiss a complaint in which the plaintiff has alleged "sufficient factual matter… to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

Such facial plausibility exists when the facts pled "raise[s] a reasonable expectation that discovery will reveal evidence" of wrongdoing and "allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1312 (2011). Accordingly, the Ninth Circuit holds that the allegations only need to "give fair notice" of the plaintiff's legal and factual claims "to enable the opposing party to defend itself effectively" in a way "that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## B. THE SECOND AMENDED COMPLAINT'S FALSE LABELING CLAIMS ARE NOT PREEMPTED

### 1. The Labeling Claims for Mass-Peak and Nitro-Peak Are Not Preempted Because They Are Based Solely on Misleading Labeling Practices Barred by the FDCA and Would Impose No New or Different Labeling Requirements

The FDCA's express preemption of non-"identical" state-imposed labeling requirements means that state laws may not impose obligations concerning the composition or labeling of food that differ from, or are not imposed by or contained in, applicable provisions of the FDCA. *See* 21 C.F.R. § 100.1(c)(4). Conversely, state laws are not preempted where they requirements or proscriptions mirror those of the FDCA. In addition to setting forth specific regulations concerning food labeling, the FDCA prohibits labeling that is "false or misleading in any material respect," *id.* § 343(a), and thus permits state causes of action based on false or misleading labeling.

The FDCA's prohibition of false and misleading labeling applies regardless of the specificity of FDA regulations concerning the product and labeling at issue. *See* Request for Judicial Notice ("RJN"), Exh. A, *Saeidian v. The Coca-Cola Co.*, 2:09-cv-06309-SJO-JPR, 7/6/15 Order at 8 (C.D. Cal.) ("While there are specific regulations regarding the labeling of juice-containing beverages, these regulations [still] operate in addition to, rather than in place of, the FDCA's prohibition of misleading labeling."). The FDCA's prohibition on misleading labels thus represents an acknowledgement that labeling may be misleading even if it complies with the FDCA's express labeling requirements.

Yet, the proposition underlying much of Defendant's Motion to Dismiss is that the labeling of its Products cannot be misleading if it complies with the FDCA. As an initial matter,

this simply is not correct, as the Products' naming and labeling directly violate FDA regulations concerning the misbranding of food.  As those regulations state:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18.

Defendant's labeling directly violates this regulation and, thereby, the FDCA's prohibition on misleading labeling.  Defendant misleads consumers by referencing whey, milk, casein, or combinations of these complete proteins in the names of its Products, although those Products in fact have been adulterated with substantial amounts of free-form amino acids and non-protein ingredients, which Defendant omits from its Products names in violation of the regulations on which Defendant bases its preemption argument.  *See id.*; *Gubala v. CVS Pharm., Inc.*, 14 C 9039, 2015 WL 3777627, at *5 (N.D. Ill. June 16, 2015) (finding similar claims not preempted). Defendant conspicuously omits any argument about this misleading aspect of its labels in its preemption analysis — because such claims clearly are not preempted.

In any event, even if Defendant did comply with all specific express requirements of the FDCA, it would still not be exempt from the FDCA's general requirement that its labeling not be false or misleading.

With respect to Mass-Peak Whey Protein Isolate and Nitro-Peak Whey Protein Hydrolysate Enhanced, Defendant focuses solely on its use of "with milk" protein figures.  Specifically, defendant argues that nothing in federal law requires it to state the Products' nutrition information in terms of "per serving" content and that the FDA in fact encourages use of "with milk" figures.  Motion at 6.  This argument is problematic in several respects.

The authority on which Defendant relies, a general policy statement by the FDA *encouraging* manufacturers to provide "as-prepared" nutrient information, is clearly not a nutrient labeling *requirement* entitled to preemptive force.  *See* Food Labeling; Serving Sizes, 58 Fed. Reg. 2229-01 (Jan. 6, 1993).

Even if this permission to use "as-prepared" nutrient information alongside the required "as-packaged" figures has some preemptive force, whether consumers actually "prepare" the Products in the manner Defendant contends is a question of fact not suitable for decision on this Motion to Dismiss.  And, furthermore, Defendant vastly overstates the scope of any preemptive force this policy statement possibly could have.  While 58 Fed. Reg. 2229-01 might preclude states from prohibiting or requiring "as-prepared" data in Products' nutrient content tables, it does not bear on the use of "as-prepared" figures in the manner used by Defendant — in isolation, without designating them as such, in a context where a reasonable consumer logically would construe them as relating to just the Product itself.  Defendant argues, in essence, that the FDA's allowance or encouragement of the disclosure of certain information in FDA-required nutrient content tables permits manufacturers to use that information in other labeling or marketing in any manner whatsoever, even if doing so is likely to mislead consumers. Defendant does not provide, nor can Plaintiffs find, any authority supporting this *carte blanche* to mislead consumers where FDA-permitted or encouraged data is involved.

Moreover, this broad construction cannot have been intended by the FDCA's drafters. Because the FDCA touches on almost all aspects of food and dietary supplement packaging, this construction would render the FDCA's general prohibition of false and misleading labeling effectively meaningless.   Following Defendant's reasoning, compliance with FDCA requirements regarding the listing of product ingredients would, by virtue of FDCA preemption, allow a manufacturer to mention those ingredients elsewhere in any manner, including naming the product based on some but not all of its ingredients.  But, as evidenced by 21 C.F.R. § 101.18, *supra*, preemption does not operate in such a manner.  In declaring certain labeling practices misleading regardless of whether they involve information subject to FDCA disclosure requirements, this regulation clearly establishes that a manufacturer still violates the FDCA where, as here, it uses FDCA-permitted information like "as-prepared" product information in a false and misleading manner.

Beyond these contentions, Defendant's preemption arguments regarding Mass-Peak and Nitro-Peak also are problematic in that they only address one of Plaintiffs' several misleading-

7

labeling allegations—an allegation that relates only to Mass-Peak.  *See* SAC ¶ 31.[1]  Plaintiffs adequately allege several other claims relating to the misleading labeling of these two Products that Defendant's preemption analysis ignores.  *See Id*. ¶¶ 27-38, 49-65.[2]

First, Plaintiffs also allege that the labeling of Mass-Peak and Nitro-Peak misleads consumers by touting nutrient-content figures that can only be provided by *multiple servings* of the Products.  The front labeling of Nitro-Peak includes the prominent representations "48g Protein – 18g Glutamine & BCAAs."  The "48g Protein" representation — again in large, bold lettering — is repeated nearby, just below an equally prominent representation that the container contains "50 servings" of the Product.  Accordingly, a reasonable consumer is led to believe that each such serving contains those nutrient amounts.  Only in small print, below the Supplement Facts on the Products' back label, is it revealed that these figures actually represent what is provided by *two* servings of the Product.  With respect to Mass-Peak, Defendant uses just one serving of the Product (albeit with whole milk) as a basis for its protein content claim, but, just above it, the equally prominent representation of "24g Glutamine & BCAAs" is based on *two* servings of the Product.  Only in a minute disclaimer included among other fine print on the back label is it revealed that, in order to receive this amount of Glutamine and BCAAs, one must consume two servings of the prepared Product, which amounts to over 3/4 of a pound (346g) of the Product itself and one quart of whole milk.  In all, to expect that a consumer would construe these representations, in their overall context, to refer to what is provided by multiple servings of the Product—in some cases, more than an average person could consume in a single sitting—is far from reasonable.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond

---

[1] Defendant's arguments in this regard, focusing solely on the permissibility of using "with milk" protein figures, are irrelevant with respect to Nitro-Peak, as that Product's Supplement Facts table and other labeling relate only to the product itself, *i.e.*, "as-packaged." *See* SAC ¶ 34.

[2] Though declaring that Plaintiffs' labeling claims with respect to these products a preempted because the seek to impose labeling requirements different than or in addition to those established by the FDA, *see* MTD at 4, this is merely a recitation of the FDCA's express preemptive scope, and Defendant what FDCA requirements these claims would violate or why they would do so. While Plaintiffs will refrain from guessing in these regards, they will summarize the labeling claims Defendant did not address and briefly explain why they are not preempted.

misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

Thus, even if inflating nutrient content representations by using multiple-serving data is not directly prohibited by the FDA, Defendant's implementation of this practice clearly is misleading and supports Plaintiffs' causes of action, which are identical to the FDCA's general ban on false and misleading labeling and thus not preempted. In addition, Plaintiffs' claims in this regard do not require compliance with the FDA 12-sample testing methodology, as these claims relate not to the ultimate accuracy of Defendant's calculations in the Supplement Facts section of its labels, but rather to the manner in which such figures are manipulated and presented on the front of the labels. The crux of this allegation is that representing nutrient content in this manner — using multiple-serving nutrient content figures, alongside servings-per-container representations, and only disclosing the true facts in fine print on the Products' back labels — is itself misleading, an issue that is entirely separable from and may be determined without reference to what the nutrient content numbers actually are and whether such numbers are accurate.

Second, Defendant also wholly fails to address Plaintiffs' even more straightforward labeling claim that Defendant represents these and the other Products as containing only the complete proteins prominently indicated in the Product names and on their labeling, when in fact this is not true. The names of these multiple-ingredient Products include or suggest the names of one or more but not all of their ingredients, a practice expressly deemed to be misleading by the FDA. *See* 21 C.F.R. § 101.18. In addition to being misleading in and of themselves, these misleading Product names also render misleading the nearby nutrient (protein) content representations that, when taken together with the Product names, reasonably appear to represent the content of the ingredient(s) (the complete proteins) in each Product's name.

These claims are likewise not preempted because Plaintiffs are not attempting to impose any labeling requirement different from or in addition to those mandated by the FDCA. *See Gubala*, 2015 WL 3777627, at *5. With respect to the Product names alone, Plaintiffs merely seek to require Defendant to comply with the FDCA's express requirements. *See id.* The same is

9

true with respect to Plaintiffs' claims based on the Product names and protein content representations together: Plaintiffs would not require supplement manufacturers to measure protein content differently or disclose more about the nature of the Products' proteins but would just require these specific Products to be labeled in a way rendering them not misleading, a result that might be reached merely by ordering compliance with 21 C.F.R. § 101.18 or mandating other Product-specific labeling changes unrelated to FDCA requirements. *Accord* RJN Exh. A, *Saeidian* Order at 8.

These claims also do not require FDA 12-sample testing as, likewise, they relate only to the Product names and other aspects of how Defendant presents information concerning the Products, rather than the ultimate accuracy of this information, and, in any event, Defendant concedes that its front-label protein content representations do not represent complete protein only.

> **2. Plaintiffs' Claims Regarding Casein Peak Are Not Preempted Because FDA Testing is Not Required for the Amino-Acid Content Claims and is Immaterial to Plaintiffs' Other Misleading Labeling Claims, Wherein the Ultimate Accuracy of Defendant's Numerical Representations is Immaterial.**

Plaintiffs do not concede that the 12-sample testing would be required to establish the falsity of the misrepresentations regarding the Product Casein Peak's precise content of Alpha, Beta, and Kappa caseins. The FDCA, under 21 CFR § 101.9, establishes testing methods for the total protein contained in a product, not the amount of specific proteins. Defendant's claim of the precise content of Alpha, Beta, and Kappa caseins is clearly misleading to consumers as Defendant is fully aware that it manufactures the Product to contain other nitrogen-rich ingredients that spike the total protein content of the Product.

Moreover, as in its preceding arguments, Defendant here again argues for dismissal of all claims relating to Casein Peak but only addresses one of Plaintiffs' multiple misleading labeling claims with respect thereto. Like the other Products, Casein Peak clearly designates a single (complete) protein ingredient, when in fact the Product contains multiple other protein and non-protein ingredients. As explained above, the FDA expressly declares this practice to be

misleading.  *See* 21 C.F.R. § 101.18.  Moreover, the FDCA only preempts requirements imposed by state law, not those established by private agreements, so Plaintiffs' breach of warranty claims cannot be preempted regardless of their consistency with the FDCA or whether Plaintiffs' testing complied with FDA requirements. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, 2010 U.S. Dist. LEXIS 73156 at *23 (E.D.N.Y. July 21, 2010) (quoting *Cipollone v. Liggett Group*, 505 U.S. 504, 525-26 (1992)).

## C.  DEFENDANT'S LABELING IS LIKELY TO DECEIVE A REASONABLE CONSUMER

### 1.  The Consumer Protection Laws Plaintiffs Invoke.

The California and Florida consumer protection statutes invoked in the SAC require allegations showing that a reasonable consumer is likely to be deceived by the representations in question.  *See, e.g., Williams*, 552 F.3d at 938.  Accordingly, "these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 951 (2002) (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)).  In other words, an advertisement may be deceptive or misleading even if it contains no statement that is literally false; it is sufficient that the advertisement is likely to deceive or mislead a reasonable consumer.  *See, e.g., Marty v. Anheuser-Busch Cos*., 43 F. Supp. 3d 1333, 1340-42 (S.D. Fla. 2014) (holding, for purposes of New York, Florida, and California consumer fraud statutes, that plaintiffs' allegations, though based on their own assumptions rather than what the labelling and packaging actually stated, adequately supported a finding that defendant's representations were likely to deceive a reasonable consumer).  Not surprisingly then, given the fact-sensitive nature of this inquiry, the question of whether particular act or business practice is deceptive "is generally a question of fact which requires 'consideration and weighing of evidence from both sides'" and which, accordingly, is not appropriate for determination on a motion to dismiss. *Linear Tech. Corp. v. Applied Materials, Inc*., 61 Cal. Rptr. 3d 221, 236 (Cal. Ct. App. 2007) (quoting *McKell v. Washington Mut., Inc*., 49 Cal. Rptr. 3d 227, 240 (Cal. Ct.

App. 2006)); *see also Williams*, 552 F.3d at 938-939; *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011).

California's Unfair Competition Law ("UCL") has been described as "sweeping," and its standard for wrongful business conduct is "intentionally broad" to allow "courts maximum discretion to prohibit new schemes to defraud." *In re First Alliance Mortg. Co.,* 471 F.3d 977, 995 (9th Cir. 2006) (*citing Cel–Tech Comm.,* 20 Cal. 4th at 180; *Searle v. Wyndham Int'l, Inc.*, 102 Cal. App.4th 1327 (2002)). To state a cause of action under the "fraudulent" prong of the UCL, "a plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question." *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144, 1167 (2000). "Instead, it is only necessary to show that members of the public are likely to be deceived." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 648 (1996).

Both the Consumer Legal Remedies Act ("CLRA") and False Advertising Law ("FAL") adopt a standard similar to the UCL's fraudulent prong. *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1144 (N.D. Cal. 2013) ("False advertising and unfair or fraudulent business practices claims under the UCL, FAL or CLRA are governed by the 'reasonable consumer' test."). Thus, Plaintiffs adequately state a cause of action under the UCL, CLRA, and FAL by alleging "that members of the public are likely to be deceived" by Defendant's labeling practices. *Id.*

Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, (2006) (quoting *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 134 Cal. Rptr. 2d 420, 431 (2003)). A "reasonable consumer" is "the ordinary consumer acting reasonably under the circumstances," who "is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture. . . ." *Id.* (citing 1A CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 5:17 (4th ed. 2004)); *Ackerman*, 2013 U.S. Dist. LEXIS 184232 at *18-19.

## 2. Defendant's False Labels Violate These State Laws.

Even Defendant cannot come up with plausible, much less legal, justifications for its

12

deceptive labels, admitting that one of these labels constitutes a "misprint." (Motion at 9 n.11.) Defendant attempts to absolve itself of liability even for this blatant falsehood by invoking a safe harbor contained in the FDA regulations for "nutrients, including protein, that are naturally-occurring in food and food ingredients rather than being added for fortification."[3] (*Id.*) However, Defendant's protein powders are the essence of "fortification," and none of the protein-spiking agents are "naturally occurring" in the Products — rather, as Plaintiffs allege: "In an effort to reduce protein-manufacturing costs, Defendant adds cheaper free form amino acids and non-protein ingredients to increase the advertised 'protein' of the Products." (SAC ¶ 5.) For "fortified" and "fabricated" "Class I" nutrients, such the Products and the protein-spiking agents Defendant adds to them, the actual protein content must be "at least equal to the value for that nutrient declared on the label." 21 CFR 101.9(g)(4)(i). Defendant's admission of this "misprint" is an admission that it violated the FDCA and, thus, California's Sherman Law, which in turn supports Plaintiffs' UCL, FAL, and CLRA claims.

Beyond just the Super Quad Product that Defendant admits is mislabeled in this manner, Plaintiffs fully allege that all of the challenged Products' front labels are deceptive. As discussed above, Defendant features the name of a complete protein predominantly in the names of three of the Products: Inner Armour Mass Peak Whey Hydrolysate Enhanced, Nitro Peak Whey Protein Hydrolysate Enhanced, and Casein Peak. In the fourth Product, Super Quad Protein — which Defendant admits includes the aforementioned "misprint" — a reasonable consumer would believe that the claimed protein content was derived from four different complete proteins. Nowhere do these Products' names include the spiking agents.

Defendant's inclusion of the word "enhanced" in two of the Products' names only

---

[3] Defendant refers to a regulation applicable only to "Class II" nutrients, which are defined as "[n]aturally occurring (indigenous) nutrients." 21 CFR 101.9(g)(3)(ii). "Class I" nutrients are defined as "Added nutrients in fortified or fabricated foods," which clearly describes the Products and the protein-spiking agents Defendant adds to them. 21 CFR 101.9(g)(3)(i). There is nothing "indigenous" or "naturally occurring" with respect to Defendant's purposeful inclusion of the protein-spiking agents in its Products, which are entirely "fabricated." For "Class I" nutrients, such the Products and the protein-spiking agents Defendant adds to them, the actual protein content must be "at least equal to the value for that nutrient declared on the label." 21 CFR 101.9(g)(4)(i).

increases the misleading nature of its front labels, and cannot absolve Defendant of liability here. Nothing in these Product names suggests that a significant portion of the highly touted protein content comes not from whey, casein, or the "quad" proteins, but from nitrogen-rich spiking agents.  And, as alleged in the SAC, these spiking agents in no way "enhance" the "beneficial effects of whole protein."  (SAC ¶ 23.)  Defendant's position that a reasonable consumer would understand "enhanced" to mean that a significant portion of Products' claimed protein content actually consists of free form amino acids and non-protein ingredients defies common sense. Defendant's use of the term "enhanced" only makes its labels more misleading.

Defendant argues: "There is a full list of ingredients that discloses the entire product formulation," and that "[t]he back Mass-Peak label has a 'Supplement Facts' panel that states, among other things, protein of 50 grams per serving when mixed with water or 66 grams when mixed with whole milk."  (Motion at 9.)  However, the Ninth Circuit specifically rejects such efforts by defendants in false advertising cases to rely on back labels to justify misleading statements on front labels.  *Williams*, 552 F.3d at 939 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

Defendant responds that it does not expressly represent the Products' protein content as "pure whey protein."  (Motion at 9.)  But this misses the mark; Defendant's front labels fail to give any indication that their touted protein content is derived in substantial part from useless fillers rather than the high-quality "whey" and "casein" the claim.

### 3.  The Cases Defendant Cites Do Not Absolve It of Liability for Its False Advertising Here.

The cases Defendant does cite are clearly distinguishable.  Because the deceptive nature of such labeling constitutes a question of fact, Defendant's reliance on summary judgment decisions such as *Rahman v. Mott's LLP*, No. 13-3482 SI, 2014 U.S. Dist. Lexis 147102 (N.D. Cal. Oct. 15, 2014) (cited in Motion at 8), is misplaced.

In *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1103 (N.D. Cal. 2012) (cited in Mot. at 8), and *Viggiano v. Hansen Natural* Corp., 944 F. Supp. 2d 877 (C.D. Cal. 2013) (cited in Mot.

14

at 10), FDA regulations specifically allowed the challenged "naturally flavored" labeling. *Viggiano* and similar "all natural" cases cited therein are ill-suited to the very different claims, Products, and labeling at issue here. First, Defendant's argument that the "Nothing on the front of the labels is inaccurate" (Motion at 9), is a question of fact very much contested by the SAC (and, indeed, controverted by Defendant's own admission of the "misprint" on its Super Quad Product). Unlike *Viggiano* and *Lam*, no FDA regulation specifically approves this type of labeling, so Defendant's attempt to avail itself of any degree of additional deference given to representations that are literally true is overstated.

Finally, Defendant's argument that its listing of amino acid "spiking" agents in the Products' ingredient lists would correct the aforementioned misinterpretations in the mind of a reasonable consumer is particularly problematic. Neither the names of these ingredients nor any other aspects of the Products' packaging indicate that these are sources of the Products' claimed protein content. Moreover, Defendant's omission of these ingredients from each Products' protein "complex" or "blend" (which a consumer might reasonably believe to be the sources of the Products' protein content) further obscures the fact that Defendant factors these ingredients into its per-serving protein data. Thus, the Products' ingredient lists and other less prominent representations are not only wholly insufficient to dispel, but also in fact reinforce, the false impressions given by the Products' primary labeling.

In *Ackerman,* defendant's compliance with the FDA-mandated nutritional labeling regulations, which disclosed the amount of sugar in the vitaminwater products, did not eliminate the possibility that reasonable consumers may be misled. *Ackerman*, 2010 U.S. Dist. LEXIS 73156, at *56. The FDCA (as well as the UCL, FAL, and CLRA) is predicated on the specific understanding that labeling can be technically correct but still deceptive to a reasonable consumer. *See, e.g.*, *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) ("A reasonable consumer might make certain assumptions about the type and quantity of fruit in the Fruit Snacks based on the statement 'made with real fruit,' [although 'objectively true'] along with other statements prominently featured on the products' packaging."); *see also In re Ferrero Litig.*, 794 F. Supp. 2d at 1115 (reasoning the UCL and FAL "have been interpreted broadly to

15

embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (citing *Leoni v. State Bar,* 39 Cal.3d 609, 626 (1985)).

Defendant's analogy to *Bruton v. Gerber Products Co.*, 961 F. Supp. 2d 1062, 1098 (N.D. Cal. 2013), is similarly inapt. (Mot. at 10.) Defendant does not represent that the Products are "*made with*" the specific real protein identified on their respective naming and/or labelling; it represents that they *are* that type of protein—that is, that their protein content is attributable to such real protein. Granted Defendant, unlike some other manufacturers (Mot. at 15-16), does not expressly warranty this fact but, as explained above, an advertisement may be deceptive or misleading even if it contains no statement that is literally false. *See, e.g., Marty*, 43 F. Supp. 3d at 1340-42. And, while the misinterpretations engendered by the Products' primary labeling might be dispelled by other representations clearly indicating a contrary meaning, Defendant's further descriptions of the Products and their ingredients fail to provide any such clarification and actually reinforce the overall misconceptions about the Products' content that a reasonable consumer is likely to draw.

Plaintiffs more than adequately allege that Defendant's labeling is likely to deceive and mislead a reasonable consumer. And, contrary to Defendant's arguments, the Products' nutritional information and other less prominent representations are wholly insufficient to dispel—and may in fact reinforce—the resulting misconceptions. Accordingly, Plaintiffs' claims under California and Florida's consumer protection laws should not be dismissed.

### D. THE UNJUST ENRICHMENT CLAIM IS VALID AND ADEQUATELY ALLEGED

As an initial matter, Defendant's argument regarding unjust enrichment addresses only California law. Florida law clearly recognizes unjust enrichment as an independent cause of action. *See, e.g., Marty*, 43 F. Supp. 3d at 1349-51.[4]

---

[4]   Moreover, Florida case law establishes that unjust enrichment claims, unlike other equitable remedies, remain available even where plaintiffs have an adequate remedy at law. *See In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*, 955 F. Supp. 2d 1311, 1337 (S.D. Fla. 2013); *see also Marty*, 43 F. Supp. 3d at 1349.

Moreover, Defendant's argument misstates California law.  California Courts in this district remain split on the issue of whether unjust enrichment is truly a stand-alone cause of action.  *See Garrison v. Whole Foods Mkt. Group, Inc*., 13-CV-05222-VC, 2014 WL 2451290 at *6, 2014 U.S. Dist. LEXIS 75271 at *21 (N.D. Cal. June 2, 2014).  And, whether or not labelled as an independent "claim," an unjust enrichment count should not be dismissed where, as here, it sounds in quasi-contract.  *See Jones v. ConAgra Foods, Inc*., 912 F. Supp. 2d 889, 904 (N.D. Cal. 2012) (declining to dismiss an unjust enrichment claim in a similar case involving the deceptive and misleading labelling of food products); *Astiana v. Ben & Jerry's Homemade, Inc*., C 10-4387 PJH, 2011 WL 2111796, at *11 (N.D. Cal. May 26, 2011) (same).

Granted, an unjust enrichment claim will fail if it simply mirrors a plaintiff's other statutory and common law claims.  *Garrison*, 2014 WL 2451290, at *6.  However, such is not the case here.  Plaintiffs' unjust enrichment count alleges entitlement to restitution based merely on Defendant's retention of the benefits they conferred, *see* FAC ¶ 112, an act Plaintiffs allege to be improper regardless of whether it breaches any warranty or violates any consumer protection statute.  This impropriety can be assessed without reference to Plaintiffs' rights or Defendant's liability under any statutory or common law.  Accordingly, Plaintiffs' unjust enrichment claim is clearly not wholly duplicative of their other causes of action. Plaintiffs' unjust enrichment claim is properly pled under Florida and California law and should not be dismissed.

### E.  THE BREACH OF WARRANTY COUNT SHOULD NOT BE DISMISSED

"Under California law, '[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.'" *Johnson v. Triple Leaf Tea, Inc.*, 2014 U.S. Dist. LEXIS 134111, *12 (N.D. Cal. Sept. 23, 2014) (*quoting* Cal. Com. Code § 2313(1)(a)).[5]  Accordingly, "[a] food label can create an express warranty." *Ham v. Hain*

---

[5]  "California Commercial Code § 2313, which defines express warranty, applies to 'transactions in goods.' *See also* Cal. Civ. Code § 1791.2(a)(1) (defining an 'express warranty' as '[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or to provide compensation if there is a failure in utility or performance')." *Bohac v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41454, *28 (N.D. Cal. Mar. 26, 2014).

17

*Celestial Group, Inc.*, 2014 U.S. Dist. LEXIS 141157, *12 (N.D. Cal. Oct. 3, 2014) (collecting cases); *see also In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 (holding representations on Nutella's packaging constituted an express warranty).  And as noted above, "breach of warranty claims are generally not preempted because they are not requirements '"imposed under State law," but rather imposed by the warrantor.'"  *Ackerman*, 2010 U.S. Dist. LEXIS 73156 at *23 (quoting *Cipollone*, 505 U.S. at 525-26).

To state a claim for breach of express warranty, Plaintiff need only allege that the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Bohac v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41454, *28-29 (N.D. Cal. Mar. 26, 2014) (*quoting Rodarte v. Philip Morris, Inc.*, 2003 U.S. Dist. LEXIS 25067, 2003 WL 23341208, *7 (C.D. Cal, June 23, 2003)).

Plaintiffs state a claim for breach of warranty.  Plaintiffs allege Defendant makes false, inflated affirmations of fact regarding the complete protein content of their Products, that they relied on such representations, and that they were injured as a result.  (*E.g.*, SAC ¶¶ 27-48, 65.) This claim should not be dismissed.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety.  If the Court finds the SAC deficient in any way, Plaintiffs respectfully request leave to further amend the complaint.

Dated: July 13, 2015                          Respectfully submitted,

**AHDOOT & WOLFSON, PC**

/s/ Theodore Maya
Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
Theodore Maya, SBN 223242
tmaya@ahdootwolfson.com
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

18

1

2   Nick Suciu III (*Pro Hac Vice*)
    **BARBAT, MANSOUR & SUCIU PLLC**
3   434 West Alexandrine #101
    Detroit, MI 48201
4   Tel: (313) 303-3472
    Email: nicksuciu@bmslawyers.com
5

6   Jonathan Shub
    **KOHN, SWIFT & GRAF, PC**
7   Philadelphia, PA 19107
    Tel: (215)
8   Email: jshub@kohnswift.com

9   Jordan L. Chaikin (*Pro Hac Vice*)
    **Parker Waichman LLP**
10  27300 Riverview Center Blvd., Suite 101
    Bonita Springs, FL 34134
11  Telephone: (239) 390-1000
    Facsimile: (239) 390-0055
12  Email:  jchaikin@yourlawyer.com

13  Counsel for Plaintiffs,
14  MARTIN MEE and JUNIOR HERMIDA

15

16

17

18

19

20

21

22

23

24

25

26

27

28