United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MARTIN MEE and JUNIOR HERMIDA,          No. C-14-5006 MMC

12              Plaintiffs,          **ORDER GRANTING IN PART AND**
                                     **DENYING IN PART DEFENDANT'S**
13      v.                           **MOTION TO DISMISS; AFFORDING**
                                     **PLAINTIFFS LIMITED LEAVE TO**
14   I A NUTRITION, INC.,            **AMEND**

15              Defendant.
     _____/

16

17          Before the Court is defendant I A Nutrition, Inc.'s Motion to Dismiss, filed June 22,

18   2015.  Plaintiffs Martin Mee and Junior Hermida have filed opposition, to which defendant

19   has replied.  Having read and considered the papers filed in support of and in opposition to

20   the motion, the Court rules as follows.[1]

21                              **BACKGROUND**

22          In the operative complaint, the Second Amended Complaint ("SAC"), plaintiffs, who

23   seek to proceed on behalf of a class, allege they each purchased four of defendant's

24   "dietary supplements," specifically, "Mass-Peak Whey Hydrolysate Enhanced," "Nitro Peak

25   Protein Whey Hydrolysate Enhanced," "Casein Peak Premium Micellar Casein Complex,"

26   and "Super Quad Protein."  (See SAC ¶¶ 1, 27, 33, 39, 44.)  The SAC contains six causes

27

28
     _____

          [1]By order filed August 5, 2015, the Court took the matter under submission.

of action, each arising under California or Florida law,[2] and each of which is based on the allegation that defendant made "numerous false and misleading statements on the labels" of the above-referenced dietary supplements (see SAC ¶ 3) and made one "false and misleading statement" on its website (see SAC ¶ 42).

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

**DISCUSSION**

By order filed May 13, 2015, the Court dismissed plaintiffs' First Amended Complaint ("FAC"), in which plaintiffs had challenged certain allegedly false and misleading statements on the labels of the above-referenced four dietary supplements, as well as on

---

[2]Martin Mee is a California resident who allegedly purchased the subject products in a retail establishment located in San Francisco, California (see SAC ¶ 14), and Junior Hermida is a Florida resident who allegedly purchased the subject products in a retail establishment located in Estero, Florida (see SAC ¶ 15).

1  the label of a fifth product.  Specifically, the Court found each claim to be preempted by the

2  Food, Drug and Cosmetic Act ("FDCA"), and afforded plaintiffs leave to amend to allege, if

3  they could do so, claims that were not preempted.

4       By the instant motion, defendant argues that each claim in the SAC is preempted by

5  the FDCA, is subject to dismissal for failure to state a cognizable claim under state law,

6  and/or fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure.

7  **A. Claims Based on Protein Content Statements in Supplement Facts Section**

8       The SAC includes two claims alleging that the Supplement Facts section of a label

9  falsely lists the amount of protein in the product.

10      First, plaintiffs allege that the Supplement Facts section of the Mass-Peak Whey

11 Hydrolysate Enhanced label lists the product as having "50g" of protein (see SAC ¶ 28),

12 which statement, plaintiffs allege, is false and misleading, as the "claimed total protein

13 count of 50 grams . . . includes . . . several free form amino acids including Alanine,

14 Trytophan, L-Glycine, and Taurine" (see SAC ¶ 29) "that simply are not protein" (see SAC

15 ¶ 30).

16      Second, plaintiffs allege that the Supplement Facts section of the Nitro Peak Whey

17 Protein Hydrolysate Enhanced label lists the product as having "24g" of protein (see SAC

18 ¶ 34), which statement, plaintiffs allege, is false and misleading, as the "claimed total

19 protein count" is "not derived exclusively from whey proteins but also includes . . . several

20 free form amino acids," including Alanine, Trytophan, L-Glycine and Taurine" (see SAC

21 ¶ 35), that "are not protein" (see SAC ¶ 36).

22      Defendant argues both claims are preempted.

23      "The [FDCA] governs the labeling of food, drugs, cosmetic products and medical

24 devices."  Lilly v. ConAgra Foods, Inc., 743 F.3d 662, 664 (9th Cir. 2014).  Under the

25 FDCA, the Food and Drug Administration ("FDA") is required to "establish[ ] uniform food

26 labeling requirements," see id. at 664-65, and states are prohibited from imposing "any

27 requirement for the labeling of food that is not identical to the federal requirements."  See

28 id. at 664-65 (internal quotation and citation omitted).  As one district court has observed,

"[t]o avoid preemption under [the FDCA], the plaintiff must be suing for conduct that violates the FDCA."  See Trazo v. Nestle USA, Inc., 2013 WL 4083218, at *5 (N.D. Cal. August 9, 2013) (emphasis omitted).

Plaintiffs included both of the above-referenced claims in the FAC (see FAC ¶¶ 24-28, 31-34), which claims, as defendant correctly observes, were, by the Court's order of May 13, 2015, dismissed as preempted.  Specifically, the Court found the claims preempted because plaintiffs did not allege any facts to support a finding that the subject statement was in violation of 21 C.F.R. § 101.9(c)(7), which regulation sets forth the manner in which a manufacturer is to calculate the amount of protein for purposes of stating the protein content in the Supplement Facts section.  (See Order, filed May 13, 2015, at 4:20 - 5:17.)  The Court, however, afforded plaintiffs leave to amend to allege, if they could do so, a violation of § 101.9(c)(7).

In the SAC, plaintiffs have included no facts to support a finding that either of the two subject statements was in violation of § 101.9(c)(7).  Indeed, as plaintiffs confirm in their opposition, they "do not allege that [d]efendant uses an improper testing method to calculate its protein content as displayed in the Supplement Facts section."  (See Pls.' Opp., filed July 13, 2015, at 2:5-6.)

Accordingly, to the extent the SAC is based on the above-referenced challenges to statements in the Supplement Facts sections, the SAC will be dismissed without further leave to amend.

**B.  Claims Based on Protein Content Statements Not in Supplement Facts Section**

The SAC includes four claims alleging that a declaration on the label, other than in the Supplement Facts, falsely states the amount of protein in the product.

First, plaintiffs allege that a declaration on the front of the label of Nitro Peak Whey Protein Hydrolysate Enhanced stating the product has "48g Protein" is false and misleading, as the "claimed total protein count" is "not derived exclusively from whey proteins but also includes . . . several free form amino acids," including Alanine, Trytophan, L-Glycine and Taurine" (see SAC ¶ 35), that "are not protein" (see SAC ¶ 36).

4

1        Second, plaintiffs allege that a declaration on the front of the label of Casein Peak

2 Premium Micellar Casein Complex stating the product has a "claimed total protein count of

3 24 grams" (see SAC ¶ 40)[3] "misleads consumers" (see SAC ¶ 41), as the claimed amount

4 "is not exclusively derived from casein products but also includes . . . several free form

5 amino acids, including Glycine and Taurine, and the non-amino acid creatine monohydrate"

6 (see SAC ¶ 40).

7        Third, plaintiffs allege that the Casein Peak Premium Micellar Casein Complex label

8 includes the phrase "24 grams of Micellar Alpha, Beta, and Kappa Caseins" (see SAC

9 ¶ 42),[4] and that such statement is false and misleading, as the claimed amount "is not

10 exclusively derived from casein products but also includes  . . . several free form amino

11 acids, including Glycine and Taurine, and the non-amino acid creatine monohydrate" (see

12 SAC ¶ 40).

13        Fourth, plaintiffs allege that a declaration on the front of the label of Super Quad

14 Protein stating the product has a "total protein count of 27 grams" (see SAC ¶ 45)[5] is false

15 and misleading, as the claimed amount "is not derived exclusively from the 'Quad' proteins

16 but also includes . . . several free form amino acids, including Taurine, L-Glutamine, L-

17 Leucine, and L-Isoleucine" (see SAC ¶ 48).

18        Defendant argues the above-referenced claims are preempted.

19        In the FAC, plaintiffs included claims challenging statements made outside the

20 Supplement Facts section as to the amount of protein in various products (see FAC ¶¶ 31-

21 34, 36-39, 48-51), which claims, as defendant correctly observes, were dismissed in the

22 Court's order of May 13, 2015.  The Court found the claims preempted because the claims

---

24        [3]The statement, located to the right of the name of the product, is "24g Protein."

25 (See SAC ¶ 39.)

26        [4]Although the SAC does not indicate where on the label such statement is made, it is
not included in the Supplement Facts section of the image provided in the SAC.  (See SAC

27 ¶ 39 (illustrating content of Supplement Facts section).)

28        [5]The statement, located to the right of the name of the product, is "27g Protein."
(See SAC ¶ 44.)

were based on the results of scientific tests that had not been conducted in the manner required by the FDCA.  Specifically, the Court found that, in order to establish a violation of the FDCA premised on a nutrient content statement, a plaintiff, to demonstrate falsity, must use the procedure set forth in the FDCA, which requires testing a "composite of 12 subsamples" of the product.  See 21 C.F.R. § 101.9(g)(2).  Although plaintiffs argued they are not required to plead the details of the tests on which they rely, the Court found it unnecessary to consider that issue, as plaintiffs had attached the test results to the FAC and, in so doing, demonstrated the results had not been obtained in the manner required by § 101.9(g)(2).  The Court did, however, afford plaintiffs leave to amend to allege, if they could do so, that additional test results on which they could rely had been conducted in compliance with § 101.9(g)(2).

In the SAC, plaintiffs have included no such facts.  Rather, plaintiffs have simply deleted from the SAC any reference to the testing on which they rely, thus tacitly acknowledging they are unable to cure the deficiency identified in the Court's prior order.

Accordingly, to the extent the SAC is based on the above-referenced challenges to statements as to the amount of protein in a product, where such statements are made outside the Supplement Facts section, the SAC will be dismissed without further leave to amend.

**C. Claims Based on Product Names in Light of Protein Content Statements**

The SAC includes four claims alleging that the name of each challenged product, when read in connection with the protein content represented on the label, misled the plaintiffs into believing that the claimed protein content did not include amino acids.

First, plaintiffs allege that the Supplement Facts section of the Mass-Peak Whey Hydrolysate Enhanced label and the front of the label both state that the product contains a specified number of "grams of protein" (see SAC ¶¶ 28-29), and that they "look[ed] at the name and label of the Mass-Peak Whey Hydrolysate Enhanced [p]roduct [and] believe[d] that the protein content of the [p]roduct [was] solely derived from the complete proteins listed, not free-form amino acids that simply are not protein" (see SAC ¶ 30).

1    Second, plaintiffs allege that the Supplement Facts section of the Nitro-Peak Whey

2    Protein Hydrolysate Enhanced label and the front of the label both state the product

3    contains a specified number of "grams of protein" (see SAC ¶¶ 34-35), and that they

4    "look[ed] at the name and label of the Nitro-Peak Whey Protein Hydrolysate Enhanced

5    [p]roduct and believe[d] that the [p]roduct's claimed protein content [was] derived solely

6    from the complete proteins listed, not free-form amino acids that are not protein" (see SAC

7    ¶ 36.)

8    Third, plaintiffs allege that the Supplement Facts section of the Casein Peak

9    Premium Micellar Casein Complex lists the product's protein content as "24g" (see SAC

10   ¶ 39), that the front of the label likewise states the product has a "total protein count of 24

11   grams" (see SAC ¶ 40), and that "the [p]roduct's name, along with the '24g' protein claim[,]

12   misleads consumers to believe that the product's protein content is derived exclusively

13   from Casein proteins" (see SAC ¶ 41), when said claimed content, in actuality, "includes

14   . . . several free form amino acids, including Glycine and Taurine, and the non-amino acid

15   creatine monohydrate" (see SAC ¶ 40).

16   Fourth, plaintiffs allege that the Supplement Facts section of the Super Quad Protein

17   label states the product has "24 grams of protein per serving" (see SAC ¶ 45) and identifies

18   "four complete proteins" (see SAC ¶ 46), and that "[a] reasonable consumer would believe,

19   by looking at the name of the [p]roduct and the Supplement Facts section of the label, that

20   the four complete proteins listed by [d]efendant were the sole proteins comprising the

21   'Quad Protein' [p]roduct" (see SAC ¶ 47), when, in fact, the "stated protein content is only

22   fractionally composed of such complete protein(s)" (see SAC ¶ 53).

23   Lastly, in support of all four of the above-referenced claims, plaintiffs allege:

24   Although the back labels of the [p]roducts mention by name some free form amino
     acids, such as Glycine and Taurine, as well as the non-amino acid Creatine
25   Monohydrate, [d]efendant does not explain that these ingredients make up a large
     portion of the claimed protein content.  Rather, by its misleading naming of the
26   [p]roducts and representation of protein content without revealing the inclusion of
     protein spiking ingredients, [d]efendant purposely misleads the consumer into
27   thinking that the entire claimed protein content is derived from complete proteins.

28   (See SAC ¶ 49.)

7

1    Defendant argues each of said claims is preempted for the reasons discussed in the

2    immediately preceding section, specifically, plaintiffs' failure to allege the testing on which

3    they rely was conducted in the manner required by the FDCA.

4    Plaintiffs respond that such claims nonetheless are not preempted, citing 21 C.F.R.

5    § 101.18(b), which provides that "[t]he labeling of a good which contains two or more

6    ingredients may be misleading by reason (among other things) of the designation of such

7    food in such labeling by a name which includes or suggests the name of one or more but

8    not all such ingredients, even though the names of all such ingredients are stated

9    elsewhere in the labeling."  See 21 C.F.R. § 101.18(b).  Here, however, plaintiffs do not

10   allege they were misled into believing the products did not contain any amino acids.  (See

11   SAC ¶ 55 (alleging plaintiffs read the "Supplement Facts sections"); SAC ¶¶ 34, 39, 44;

12   Ferguson Decl. Ex. A at 2) (Supplement Facts sections listing amino acids as ingredients).)

13   Rather, plaintiffs allege they were misled into believing said amino acids did not make up

14   part of the specified protein content.  (See SAC ¶ 49.)

15   Accordingly, to the extent the SAC is based on the above-referenced challenges to

16   product names read in connection with protein content statements, the SAC will be

17   dismissed without further leave to amend.

18   **D.  Claims Based on Statements That Allegedly Mislead as to Amount of Protein Per**

19   **Serving Size**

20   The SAC includes four claims alleging that certain statements, made outside the

21   Supplement Facts section, would mislead a reasonable person as to the amount of protein

22   provided in a serving.  Defendant argues each such claim is preempted and, further, that

23   plaintiffs fail to sufficiently plead a cognizable claim under state law.  The Court next

24   addresses each of the four claims in turn.

25   **1.  Mass-Peak Whey Hydrolysate Enhanced:  66g Protein Statement**

26   Plaintiffs allege that the front of the label of Mass-Peak Whey Hydrolysate

27   Enhanced states the product has "66g Protein" (see SAC ¶¶ 27-28), and that such claim is

28   misleading as "the product in fact does not contain 66 grams of protein per serving"; rather,

1    the product, according to the Supplement Facts section, has 66 grams of protein per

2    serving only when "the consumer adds 2 cups of whole milk" (see SAC ¶ 31).[6]

3         Defendant first argues the claim is preempted.  As discussed below, the Court

4    disagrees.

5         Pursuant to federal regulations, the "declaration of nutrient information on the label"

6    must include "the number of grams of protein in a serving," see 21 C.F.R. § 101.9(c)(7),

7    and, for "dietary supplements," such declaration must be made in the "Supplement Facts,"

8    see 21 C.F.R. § 101.36(e).  Federal regulations also provide that where a declaration must

9    be included in the Supplement Facts, the label "may not" otherwise include a "claim that

10   expressly . . . characterizes the level of [such] nutrient" unless the claim is made "in

11   accordance" with 21 C.F.R. § 101.13(i)(3), which requires such claim "not [be] false or

12   misleading in any respect," see 21 C.F.R. §§ 101.13(b), 101.13(i)(3).

13        Here, the "66g Protein" statement expressly characterizes the amount of protein in

14   the product.  See 21 C.F.R. § 101.13(i)(3) (providing "5 grams of fat" as example of

15   statement expressly characterizing nutrient).  Consequently, the FDCA does not preempt

16   plaintiffs' state law claim that the "66g Protein" statement is false or misleading, as such

17   claim, if established on its merits, would constitute a violation of § 101.13(i)(3).  See Reid v.

18   Johnson & Johnson, 780 F.3d 952, 962-63 (9th Cir. 2015) (holding state law claim based

19   on express nutrient statement on front of label not preempted where plaintiff alleged such

20   statement was "misleading" in violation of § 101.13(i)(3)).

21        The Court finds unpersuasive defendant's argument that the claim nonetheless is

22   preempted in light of a statement made by the FDA in the Federal Register in 1993.  In that

23   statement, the FDA set forth the reasons why it declined to adopt a regulation to "require

24   nutrition information on an 'as prepared' basis."  See 58 Fed. Reg. 2229-01, 2284.  After

25

26        [6]For purposes of this claim and the other three claims discussed in this section,
     plaintiffs' allegation is, in essence, that the challenged statement is misleading in light of an
27   arguably conflicting statement made by defendant elsewhere on the label.  Under such
     circumstances, it would not appear plaintiffs are required to establish falsity under the
28   testing method required by § 101.9(g)(2), and defendant has not argued plaintiffs would be
     required to do so.

setting forth its reasons for so declining, the FDA made the following statement, on which

defendant relies:

> However, FDA recognizes that it would be helpful to make comparisons of foods in their prepared state (e.g., prepared package salad dressing and bottled salad dressing). Therefore, for the benefit of the consumers who follow the package directions in preparing these products, the agency continues to encourage manufacturers to voluntarily provide nutrient information on their products on an as prepared basis, using the package directions in preparing the food, and, in the case of multiple directions, using the directions that represent the major usage of the product. The agency agrees that such voluntary information may provide an incentive for manufacturers to develop methods of preparation that support dietary recommendations.

See id.

Although the above-referenced statement by the FDA might support an argument

that a state law cannot prohibit a manufacturer from setting forth on a label the nutrient

information for a product when used as directed, such as when the manufacturer

recommends the product be used with milk, nothing in the above-referenced

"encourage[ment]" by the FDA suggests or implies that such information may be set forth in

a manner that violates the regulations the FDA has promulgated, such as § 101.13.

Defendant next argues the claim is subject to dismissal for failure to allege a

cognizable claim under state law.  In support thereof, defendant argues, and plaintiffs do

not disagree, that plaintiffs must sufficiently allege the challenged statement is likely to

mislead a reasonable consumer of the product.  Plaintiffs do, however, disagree with

defendant's further argument that the "66g Protein" statement is not likely to mislead a

reasonable consumer into believing the product contains 66 grams of protein per serving.

Although, as defendant points out, the Supplement Facts section of the label explains that

the statement pertains to a serving when mixed with two cups of whole milk, the Ninth

Circuit, as plaintiffs point out, has rejected essentially the same argument, namely, that

"reasonable consumers should be expected to look beyond misleading representations on

the front of the box to discover the truth from the ingredient list in small print on the side of

the box."  See Williams v. Gerber Products Co., 552 F.3d 934, 939-40 (9th Cir. 2008)

(reversing judgment of dismissal; finding "district court erred in determining as a matter of

1   law that [product's] packaging was not deceptive").[7]

2   Accordingly, to the extent the SAC is based on the above-referenced challenge to

3   the "66g Protein" statement, defendant has not shown the SAC is subject to dismissal.

4   **2. Mass-Peak Whey Hydrolysate Enhanced:  24g Glutamine & BCAAs Statements**

5   Plaintiffs allege that "on multiple areas on the [Mass-Peak Whey Hydrolysate

6   Enhanced] label," the label states that the product contains "24g Glutamine & BCAAs."

7   (See SAC ¶ 32.)  The images of the product in the SAC show such statement is made

8   twice, once on the front of the label above the name of the product (see SAC ¶ 27), and,

9   additionally, on the back of the label, the latter statement being set forth above the

10  Supplement Facts in a type size larger than the Supplement Facts section (see SAC ¶ 28).

11  Plaintiffs allege such statements are false and misleading because the product does not

12  have 24 grams of Glutamine and BCAAs per serving; rather, plaintiffs allege, the label

13  discloses "in fine print located below the Supplement Facts section" that "the '24 gram'

14  claim is for two servings with the addition of 2 cups of whole milk."  (See SAC ¶ 32.)

15  Defendant argues the "24g Glutamine & BCAAs" claim is preempted for the reasons

16  stated above with respect to the "66g Protein" claim.  For the reasons stated above, the

17  Court disagrees.

18  Defendant also argues that a reasonable person would not be misled by the

19  challenged statement because "[t]he amount of protein, per serving and with the suggested

20  base liquid (water or milk) is clear from the Supplement Facts section."  (See Def.'s Mot. at

21  10:2-3.)  As in Williams, this Court declines to find at the pleading stage that a reasonable

22  consumer should be required to review the entirety of the label to determine if a statement,

23

24  _____

25  [7]The Court notes, however, that, in the instant case, plaintiffs allege they did read
    the Supplement Facts.  (See SAC ¶ 55.)  Consequently, it is unclear how plaintiffs can
26  establish they relied to their detriment on the "66g Protein" statement on the front of the
    label.  See, e.g., Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 326-27 (2011) (holding
27  plaintiff "proceeding on claim of misrepresentation as the basis of his or her UCL claim
    must demonstrate actual reliance on the alleged deceptive or misleading statements").
28  Defendant, however, has not raised the issue of reliance, and, consequently, the Court
    does not further address it herein.

1   indeed, a statement repeated twice, might be clarified in smaller print.  See Williams, 552

2   F.3d at 938 (noting "whether a business practice is deceptive will usually be a question of

3   fact").

4           Accordingly, to the extent the SAC is based on the above-referenced challenge to

5   the "24g Glutamine & BCAAs" statements, defendant has not shown the SAC is subject to

6   dismissal.

7           **3. Nitro Peak Whey Protein Hydrolysate Enhanced: 48g Protein Statement**

8           Plaintiffs allege that the "front of the label" of Nitro-Peak Whey Protein Hydrolysate

9   Enhanced states "48g Protein" (see SAC ¶ 33), and that "[d]irectly above the '48g Protein'

10  claim on the front of the label, [d]efendant states that there are 50 servings per container"

11  (see SAC ¶ 38).  Plaintiffs further allege that "[a] reasonable consumer, looking at these

12  two claims in such close proximity[,] would believe that the product contained 48 grams per

13  serving" (see SAC ¶ 38), whereas, according to the Supplement Facts section, a "[s]erving

14  size," defined therein as "1 scoop," contains only 24 grams of protein (see SAC ¶ 34).

15          Defendant argues the "48g Protein" claim is preempted because, according to

16  defendant, "[n]othing in federal law requires [defendant] to limit its statement of nutrient

17  amount to the 'per serving' number in the manner suggested by [plaintiffs]."  (See Def.'s

18  Mot. at 6:7-9.)   Plaintiffs' claim, however, is not based on an assertion that nutrient content

19  statements on a label must be in reference to a single serving.  Rather, plaintiffs' claim is

20  that, in this instance, the placement of the "48g Protein" statement on the label would lead

21  a reasonable consumer to understand the statement to refer to one serving, whereas it is,

22  in fact, a reference to two servings.  As discussed above, a cause of action based on an

23  allegation that an express nutrient content claim made outside the Supplement Facts

24  section is false and misleading is not preempted.

25          Defendant also argues that the challenged statement is not deceptive, as the per

26  serving information is set forth in the Supplement Facts section.  As discussed above,

27  however, a reasonable consumer "should [not] be expected to look beyond misleading

28  representations on the front of the box to discover the truth from the ingredient list in small

12

1   print on the side of the box."  See Williams, 552 F.3d at 939.

2       Accordingly, to the extent the SAC is based on the above-referenced challenge to

3   the "48g Protein" statement, defendant has not shown the SAC is subject to dismissal.

4       **4.  Super Quad Protein:  27g Protein Statement**

5       Plaintiffs allege that "[d]efendant represents [Super Quad Protein] to contain 27

6   grams of protein on the front of the label, but states on the back label, in the Supplement

7   Facts section, that it contains 24 grams of protein."  (See SAC ¶¶ 44-45.)  As a

8   consequence, plaintiffs allege, Super Quad Protein is "misbranded."  (See SAC ¶ 58.)

9       Defendant contends the claim is preempted in light of 21 C.F.R. § 101.9(g)(4)(ii),

10  which subsection defendant describes as a "safe harbor."  (See Def.'s Mot. at 10:27-28.)[8]

11      Section 101.9(g), as discussed above, sets forth the procedure by which a

12  manufacturer's "compliance" with nutrient content disclosure requirements may be tested.

13  See 21 C.F.R. § 101.9(g).  In particular, § 101.9(g)(2) requires that, when testing for

14  compliance, "[t]he sample for nutrient analysis shall consist of a composite of 12

15  subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping

16  cases, to be representative of a lot."  See 21 C.F.R. § 101.9(g)(2).  After the nutrient

17  analysis set forth in § 101.9(g)(2) has been completed, § 101.9(g)(4) sets forth how the

18  results are used to determine whether food containing protein is "misbranded":

19      A food with a label declaration of . . . protein . . . shall be deemed to be misbranded
20      under [the FDCA] unless it meets the following requirements:

21      (i)  Class I . . . protein . . . .  The nutrient content of the composite is at least equal to
        the value for that nutrient declared on the label.

22      (ii)  Class II . . . protein . . . .  The nutrient content of the composite is at least equal
23      to 80 percent of the value for that nutrient.  *Provided*, That no regulatory action will
        be based on a determination of a nutrient value that falls below this level by a factor
        less than the variability generally recognized for the analytical method used in that
24      food at the level involved.

25  See 21 C.F.R. § 101.9(g)(4) (emphasis in original).

26

27      [8]Defendant concedes the "27g Protein" statement is "inconsistent with the back of
28  the label" and asserts the statement was an "error [that] has been corrected on the
    labeling."  (See Def.s' Mot. at 9:23-28.)

1    Defendant argues that because the declaration in the Supplement Facts, i.e., 24

2  grams of protein, is at least equal to 80 percent of the value declared on the front of the

3  label, i.e., 27 grams of protein, plaintiffs' claim is preempted under § 101.9(g)(4).  The

4  Court is not persuaded.

5    First, plaintiffs are not alleging, at least for purposes of this particular claim, that the

6  statement defendant made in the Supplement Facts section is false.  Rather, plaintiffs are

7  alleging that the "27g Protein" statement on the front of the label is false, in light of the

8  statement in the Supplement Facts section indicating the product has 24 grams of protein

9  per serving.  Under such circumstances, as discussed above, it would not appear

10  necessary for plaintiffs to establish falsity under the testing method required by

11  § 101.9(g)(2), nor has defendant argued that plaintiffs would be required to do so.

12  Consequently, defendant has not shown how § 101.9(g)(4) has any bearing on the instant

13  claim.

14    Second, assuming, <u>arguendo</u>, § 101.9(g)(4) could nonetheless be a defense to the

15  instant claim, defendant's reliance thereon is, at best, premature.  As noted, the eighty

16  percent differential on which defendant relies only pertains to "Class II" proteins, <u>see</u> 21

17  C.F.R. § 101.9(g)(4)(ii), which are defined as "[n]aturally occurring (indigenous) nutrients,"

18  <u>see</u> 21 C.F.R. § 101.9(g)(3)(ii).  By contrast, with respect to "Class I" proteins, which are

19  defined as "[a]dded nutrients in fortified or fabricated foods," <u>see</u> 21 C.F.R. § 101.9(g)(3)(i),

20  an eighty percent differential is not allowed; rather, as noted, "the nutrient content of the

21  composite [must be] at least equal to the value for that nutrient declared on the label," <u>see</u>

22  21 C.F.R. § 101.9(g)(4)(i).  Nothing in the SAC, or in any document as to which either party

23  has requested the Court take judicial notice, suggests the "protein" referenced on the front

24  of the label of Super Quad Protein is a Class II protein.

25    Defendant next argues that plaintiffs fail to allege a cognizable claim under state law

26  because, defendant contends, the "error" was "harmless" and "unintentional."  (<u>See</u> Def.'s

27  Mot. at 10:27-28.)  Defendant fails to explain how the "error" was "harmless," and the Court

28  cannot summarily conclude that no reasonable consumer would find the difference

14

1   between 24 grams of protein and 27 grams of protein to be of consequence.  Further, to

2   the extent a defendant's mental state may be a defense, see, e.g., Cortez v. Purolator Air

3   Filtration Products Co., 23 Cal. 4th 163, 179-81 (2000) (holding, with respect to unlawful

4   business practice claims under California law, "equitable considerations," such as "good

5   faith" of defendant, "may enter into the court's disposition of [the claims]"), the Court cannot

6   conclude at the pleading stage that any allegedly misleading statement was made in good

7   faith, see Baker v. McNeil Island Corrections Center, 859 F.2d 124, 127 (9th Cir. 1988)

8   (holding, in considering motion to dismiss, court's "review is limited to the contents of the

9   complaint").

10       Accordingly, to the extent the SAC is based on the above-referenced challenge to

11  the "48g Protein" statement, defendant has not shown the SAC is subject to dismissal.

12  **E.  Claim Based on Statement on Website**

13       Plaintiffs allege that defendant's "website" states that Casein Peak Premium Micellar

14  Casein Complex has "24 grams of Micellar Alpha, Beta, and Kappa Caseins" (see SAC

15  ¶ 42), which statement is alleged to be "false and misleading" (see id.), as the "claimed

16  total protein count of 24 grams  . . . is not exclusively derived from casein products but also

17  includes  . . . several free form amino acids, including Glycine and Taurine, and the non-

18  amino acid creatine monohydrate" (see SAC ¶ 40).

19       Defendant argues that said claim is subject to dismissal under Rule 9(b), for the

20  reason that plaintiffs fail to allege any facts to support their allegation that the statement is

21  false, i.e., that the product does not contain 24 grams of the caseins identified on the

22  website.  In particular, defendant notes that plaintiffs do not allege "any testing, data, or

23  authority to substantiate that the [p]roduct does not contain the state[d] amount of protein."

24  (See Def.'s Mot. at 7:20-21); In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir.

25  1994) (holding Rule 9(b) requires plaintiff to allege "why the statement . . . complained of

26  was false or misleading").

27       At the outset, the Court finds the claim is subject to Rule 9(b), and plaintiffs have not

28  argued to the contrary, as plaintiffs allege defendant made the "24 grams" statement with

1  the intent to "purposefully mislead[ ] the consumer into thinking that the entire claimed

2  protein content is derived from complete proteins."  (See SAC ¶ 49); Kearns v. Ford Motor

3  Co., 567 F.3d 1120, 1125-27 (9th Cir. 2009) (holding claims brought under consumer

4  protection statutes subject to Rule 9(b) where claims "sound in fraud").  The Court next

5  considers whether the claim is alleged in conformity with Rule 9(b).

6          Plaintiffs appear to base their allegation as to the product's true composition on

7  "information and belief," as nothing in the SAC suggests plaintiffs have any personal

8  knowledge about the product's composition.  (See SAC at 1:3.)  Allegations based on

9  "information and belief usually do not satisfy the degree of particularity required under Rule

10  9(b)."  See Wool v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

11  Although the "particularity requirement may be satisfied if the allegations are accompanied

12  by a statement of the facts upon which the belief is founded," see id., here, as defendant

13  correctly observes, the SAC does not set forth the basis for plaintiffs' belief as to the

14  product's composition.

15          Accordingly, to the extent the SAC is based on the "24 grams" statement on

16  defendant's website, the SAC will be dismissed.

17          As the above-noted deficiency was not previously identified by the Court, and

18  plaintiffs may be able to allege the claim in conformity with Rule 9(b), the Court will afford

19  plaintiffs leave to amend.  Should plaintiffs chose to amend the claim, however, plaintiffs

20  must also allege sufficient facts to support a finding that plaintiffs have standing to

21  challenge the statement in question, as nothing in the SAC suggests plaintiffs were aware

22  of the statement, or even the website, prior to purchasing Casein Peak Premium Micellar

23  Casein Complex.  See Mazza v. American Honda Motor Co., 666 F.3d 581, 595 (9th Cir.

24  2012) (holding plaintiff has standing to challenge false statement made in connection with

25  product where plaintiff alleges that, acting in reliance on the statements, he "bought [the

26  product] when [he] otherwise would not have done so").

27  //

28  //

**F. Fifth Cause of Action: Unjust Enrichment**

Defendant argues that the Fifth Cause of Action, titled "Unjust Enrichment," is subject to dismissal in its entirety, for the asserted reason that, under California law, no such cause of action exists and, further, that the cause of action is duplicative of plaintiffs' other causes of action.

Although defendant is correct that "unjust enrichment" itself is "not a cause of action" recognized in California, see McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004) (noting "[u]njust enrichment" is a "general principle, underlying various legal doctrines and remedies") (internal quotation and citation omitted), the term is "synonymous with restitution," see id., and "[c]ommon law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient," see Munoz v. MacMillan, 195 Cal. App. 4th 648, 661 (2011). "[A] typical cause of action involving such remedy is 'quasi-contract.'" Id. Although such cause of action is not expressly pleaded in the SAC, the Fifth Cause of Action, to the extent it is brought under California law, may, as plaintiffs request, proceed under a quasi-contract theory. See, e.g., Khasin v. Hershey Co., 2012 WL 5471153, at *9 (N.D. Cal. November 9, 2012) (denying motion to dismiss "unjust enrichment" claim based on defendant's having made false representations on food label; construing such claim as one for "quasi-contract" given "absence of a valid and enforceable contract" between parties).

Additionally, as plaintiffs note, defendant's motion does not address the Fifth Cause of Action to the extent brought under Florida law, which, plaintiffs argue, recognizes unjust enrichment as an equitable cause of action and, further, as a cause of action not subject to dismissal merely because the plaintiff has an adequate remedy at law. In its reply, defendant disputes the latter of those contentions. The Court, however, finds plaintiffs' argument persuasive in both respects. Although Florida courts follow "the general rule" that "equitable remedies are not available" where "adequate legal remedies exist," such "doctrine does not apply to claims for unjust enrichment"; rather, "[i]t is only upon a showing that an express contract exists that the unjust enrichment . . . count fails." See

17

1  Williams v. Bear Stearns & Co., 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998) (internal
2  quotation and citation omitted).

3         Accordingly, to the extent any of the claims on which it is based are not subject to
4  dismissal, the Fifth Cause of Action is not subject to dismissal.

5  **G.  Sixth Cause of Action: Breach of Express Warranty**

6         Defendant argues the Sixth Cause of Action, titled "Breach of Express Warranty," is
7  subject to dismissal in its entirety, because, according to defendant, plaintiffs, for the
8  reasons set forth elsewhere in defendant's motion, cannot establish a breach.  (See Def.'s
9  Mot. at 11:26-27.)  As set forth above, however, certain of the claims upon which plaintiffs
10 base each cause of action, including the Sixth Cause of Action, are not subject to
11 dismissal.

12        Accordingly, to the extent any of the claims on which it is based are not subject to
13 dismissal, the Sixth Cause of Action is not subject to dismissal.

14 **H.  Primary Jurisdiction**

15        In its reply, defendant argues the Court should dismiss or stay the action under the
16 doctrine of primary jurisdiction.  As such argument was not made in the moving papers,
17 plaintiffs have not had the opportunity to respond, and, consequently, the issue has not
18 been properly presented for resolution.

19        The Court notes, however, that the doctrine of primary jurisdiction is a "prudential
20 doctrine under which courts may, under appropriate circumstances, determine that the
21 initial decisionmaking responsibility should be performed by the relevant agency rather than
22 the courts," in particular, where there is "an issue of first impression or "a particularly
23 complicated issue that Congress has committed to a regulatory agency."  See Syntek
24 Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 780 (9th Cir. 2002) (internal
25 quotation and citation omitted).  Here, plaintiffs' remaining claims do not appear to present
26 the type of unusual or technical issues appropriate for initial consideration by the FDA, and
27 there is no showing or suggestion that the FDA has particular expertise in analyzing false
28 advertising claims.  See Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 296–97, 305–06

18

1   (1976) (holding, where plaintiff alleged airline made fraudulent representation with respect

2   to its overbooking policy, doctrine of primary jurisdiction not properly invoked even though

3   Civil Aeronautics Board had statutory authority to investigate whether airlines engage in

4   deceptive practices; explaining, "standards to be applied in an action for fraudulent

5   misrepresentation are within the conventional competence of the courts, and the judgment

6   of a technically expert body is not likely to be helpful in the application of these standards to

7   the facts of this case").

8                                                    **CONCLUSION**

9          For the reasons stated above, defendant's motion to dismiss the Second Amended

10  Complaint is hereby GRANTED in part and DENIED in part, as follows:

11         1.  To the extent the SAC is based on the claims addressed above at pages 3:7 -

12  8:17, the motion is GRANTED and the SAC is DISMISSED without further leave to amend.

13         2.  To the extent the SAC is based on the claim addressed above at pages 15:12 -

14  16:26, the motion is GRANTED and the SAC is DISMISSED with leave to amend.

15         3.  In all other respects, the motion is DENIED.

16         4.  If plaintiffs wish to file a Third Amended Complaint for purposes of curing the

17  deficiencies identified as to the claim addressed above at pages 15:12 - 16:26, any such

18  Third Amended Complaint shall be filed no later than September 2, 2015.  Plaintiffs may

19  not, however, add new causes of action, new plaintiffs, or new defendants without leave of

20  court.  See Fed. R. Civ. P. 15(a)(2).  If plaintiffs do not file a Third Amended Complaint

21  within the time provided, the instant action will proceed on the remaining claims in the SAC.

22         **IT IS SO ORDERED.**

23

24  Dated:  August 13, 2015

25                                                          MAXINE M. CHESNEY
                                                            United States District Judge

26

27

28

                                                    19